# EXHIBIT 4

LAW OFFICES
# GIBBS & HOLMES
171 CHURCH STREET, SUITE 110
POST OFFICE BOX 938
CHARLESTON, SOUTH CAROLINA 29402-0938

ALLAN R. HOLMES
PARTNER
CERTIFIED SPECIALIST IN LABOR
AND EMPLOYMENT LAW

November 11, 2016

TELEPHONE (843) 722-0033
TELECOPIER (843) 722-0114
E-MAIL
aholmes@gibbs-holmes.com

Shelley Z. Green
General Counsel
National Board of Medical Examiners
3750 Market St
Philadelphia, PA 19104

Catherine Farmer
Director, Disability Services
National Board of Medical Examiners
3750 Market St.
Philadelphia, PA 19104

   Re: Denial of Request for Test Accommodation
   Justin Silverman, USMLE ID#: 5-304-197-6

Dear Ms. Green and Ms. Farmer:

  I am writing on behalf of Justin Silverman regarding the denial of his request for an accommodation on the USMLE Step-I Exam. Mr. Silverman has retained me as counsel for the purpose of assisting him in obtaining an accommodation on the Step I Exam. I am writing this letter as a follow-up to my first letter seeking a reconsideration for an accommodation for Mr. Silverman that was sent on September 30th. We have received no response to this first letter, despite the fact that over a month has now passed. I am enclosing a copy of this earlier letter for your reference.

  We again ask that you reconsider your refusal to provide the accommodation of additional time, time and one-half, on the exam to enable Mr. Silverman to take the exam in December 2016. Mr. Silverman faces irreparable harm if he is not permitted to take the exam with the appropriate accommodations for his disability before the end of this year, as his enrollment at the College of Medicine at the Medical University of South Carolina depends on passing this exam at the end of his second year. The Progress Committee at the College of Medicine at MUSC has required Mr. Silverman to take the exam by the end of this year or face expulsion. The timeliness of the decision of whether or not an accommodation will be granted on the USMLE Step I is therefore critical to allow Mr. Silverman to continue his education without any further long-term disruptions. Needless to say, any year that a physician practices is in the public interest, and the needless waste of such a year would be unconscionable.

1

Therefore, if we do not receive a response as to your decision on this matter by Friday, November 18th, Mr. Silverman will be forced to immediately take legal action, seeking injunctive relief allowing him to take the exam with accommodation. We urge you to come to a decision on this manner in a timely fashion and notify our office so that Mr. Silverman can take the exam with an accommodation that befits his disability.

Thank you for your consideration of this request, and I look forward to hearing from you.

With kind regards, I am

Very truly yours,

Allan Holmes

Enclosure(s) as stated.

LAW OFFICES
## GIBBS & HOLMES
171 CHURCH STREET, SUITE 110
POST OFFICE BOX 938
CHARLESTON, SOUTH CAROLINA 29402-0938

ALLAN R. HOLMES
PARTNER
CERTIFIED SPECIALIST IN LABOR
AND EMPLOYMENT LAW

TELEPHONE (843) 722-0033
TELECOPIER (843) 722-0114
E-MAIL
aholmes@gibbs-holmes.com

September 30, 2016

Shelley Z. Green, Esq.
General Counsel
National Board of Medical Examiners
3750 Market St
Philadelphia, PA 19104

Ms. Catherine Farmer
Director, Disability Services
National Board of Medical Examiners
3750 Market St.
Philadelphia, PA 19104-3102

  Re: Denial of Request for Test Accommodation
   Justin Silverman, USMLE ID#: 5-304-197-6

Dear Ms. Green and Ms. Farmer:

  I am writing on behalf of Justin Silverman regarding the denial of his request for an accommodation on the USMLE Step-I Exam. Mr. Silverman has retained me as counsel for the purpose of assisting him in obtaining an accommodation on the Step I Exam. Specifically, we ask that you reconsider your refusal to provide the accommodation of additional time, time and one-half, on the exam to enable Mr. Silverman to take the exam in November 2016. As a matter of public policy, because the National Board of Medical Examiners (NBME) is the nation's leading organization responsible for medical licensure, the NBME should be committed to meaningfully engaging with disabled medical students in their requests for accommodations as the Americans with Disabilities Act (ADA) requires. Denying even reasonable requests from a student with a clear record of disability both frustrates the purpose of the ADA and prevents Mr. Silverman from taking the examination on an equal footing with his contemporaries. Because Mr. Silverman is disabled within the meaning of the ADA and his request for accommodation is reasonable and supported by law, we urge the NBME to grant his accommodation as requested.

## FACTS

  Justin Silverman is a second year medical student at the College of Medicine at the Medical University of South Carolina (MUSC). Mr. Silverman has been diagnosed with a reading developmental disorder, (learning disorder), and ADHD. As a result of his

1

with a reading developmental disorder, (learning disorder), and ADHD. As a result of his disabilities, Mr. Silverman has struggled in his reading assignments for the entirety of his academic career, dating back even from his years in grade school. These disorders cause Mr. Silverman a great deal of frustration in his everyday life, as his reading speed is substantially limited as compared to his contemporaries. His reading disability is so pervasive that even everyday tasks, such as reading road signs, can be a challenge for him. Mr. Silverman's ADHD similarly impairs his ability to focus on current tasks and process stimuli, among other symptoms.

Mr. Silverman was first provided with formal accommodations for his disabilities in college, although he has suffered from their symptoms for almost his entire life. Because he attended a small private school in both grade and high school, he never formally requested accommodations from the administrators. Instead, his teachers granted him informal accommodations to allow him to complete his work, such as allowing him to complete his assignments after class and turning them in at a later time. He received these informal accommodations throughout his early academic career. Without an accommodation on the SAT, in 2002 Mr. Silverman managed to obtain an above average score, a 1420, despite having left significant portions of the exam unfinished. Mr. Silverman continued to struggle with his coursework in undergraduate school, until he received formal academic accommodations, including extended test time and a private exam setting, after he underwent a neuropsychological evaluation in 2005. After receiving these necessary formal accommodations, Mr. Silverman flourished in his studies.

Mr. Silverman again sought formal accommodations in medical school. These were not granted until March of 2012, roughly halfway through his second semester at MUSC. As a result, he failed one of his classes during this semester. Upon psychological testing completed at MUSC's student counseling center, Drs. Shantee Foster, PhD and Alice Libet, PhD confirmed the well-established diagnosis of Mr. Silverman's learning disability and ADHD. Mr. Silverman was thereafter granted the accommodations of time and one-half on exams and private testing, and has successfully completed his first three semesters at MUSC with these necessary accommodations being continuously provided to him.

Mr. Silverman has not sought accommodation for any earlier standardized tests, such as the SAT or MCAT, out of fear that his scores would be flagged and this would have reduced his competitiveness for undergraduate and medical school. However, because written accommodations have become vital to the completion of his medical degree, he has sought an accommodation for the USMLE Step I Exam, which is necessary for him to continue his coursework at MUSC. Mr. Silverman first sought an accommodation from the NBME in May of 2016. Disability Services denied his request for extended time on the exam on August 30, 2016.

2

## DISCUSSION

The NBME's obligation to provide reasonable accommodations to disabled examinees under the ADA is clearly established. *See* 42 U.S.C. § 12189. The relevant provision of Title III of the ADA states that "[a]ny person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." *Id.* The Department of Justice, the agency with the authority to issue regulations pertaining to licensing examinations, has specified that private entities, such as the NBME, offer examinations in a manner that "accurately reflects the individual's aptitude or achievement level or whatever factor the examination purports to measure, rather than reflecting the individual's impair[ment]." 28 C.F.R. § 36.309(b)(i).

In order for an examinee to be entitled to reasonable accommodations under the ADA, he must qualify as a disabled individual. As the Board's letter notifying Mr. Silverman of the denial of his request recited, the ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1). However, the NBME's decision appears to have failed to take into account that the definition of "disability" was substantially broadened in 2008 by the ADA Amendments Act (ADAA). *See Jenkins v. Nat'l Bd. of Med. Examiners*, 2009 U.S. App. LEXIS 2660, at *9 (6th Cir. 2009). In fact, subsequent to the amendments, "substantially limits" is no longer interpreted to be "a demanding standard," nor should it require extensive analysis. 29 C.F.R. § 1630.2(j)(1) Now, an impairment does not need to "prevent, or significantly or severely restrict a person from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. at at §1630.2(j)(1)(ii). The ADAA amendments were "intended to provide for more generous coverage" and application of the ADA in a way that is "predictable, consistent, and workable . . . ." *Id.* at § 1630.2(j)(3)(i). The Board has failed to recognize this mandate inasmuch as it has denied Mr. Silverman's request for accommodation despite his well-documented history of impairment which, *inter alia*, "substantially limits" his major life activities of learning, reading, concentrating and communicating. *See,* 42 U.S.C. § 12102(2)(A).

The NBME's decision was based largely on the assertion that Mr. Silverman was not substantially limited in his ability to take standardized tests, because he had scored well above average on the SAT and MCAT without accommodations. This reasoning takes too narrow a view of what it means to be disabled under the ADAA, particularly in Mr. Silverman's case. Mr. Silverman has a well-documented history of struggling with his disabilities in his studies, from grade school onward. He has thus far provided documentation of these diagnoses from Dr. Freedy, the Associate Dean of Student Affairs at MUSC, as well as physicians from undergraduate school. His high school transcript, also provided to the Board, demonstrates the difficulty that Mr. Silverman had without formal accommodations. Although the Board's denial characterized his past successes

3

during this period as earning "A/Bs," it failed to take into account the "C/Ds" he earned that are very uncharacteristic of someone with Mr. Silverman's native intellect. I am providing additional documentation to this effect that I urge you to take into consideration in reevaluating Mr. Silverman's request.

I should add that the ability to perform a particular intellectual task at an above average level does not negate the existence of an impairment that places a substantial limitation on a major life activity. The genius of Beethoven's Ninth Symphony does not negate the fact that Beethoven's hearing was substantially limited when he wrote it. The ADAA and the cases decided under it consistently embrace an overarching principle. Insofar as possible, accommodations are intended to free the disabled from the burdens of their impairments so that they will be able to realize every opportunity that could have been realized absent those impairments. This is why when we determine whether a disability is substantially limiting, the ADAA requires us to make that determination "without regard to the ameliorative effects of mitigating measures." 42 U.S.C. § 12102(4)(E)(i). "Mitigating measures" include "learned behavioral or adaptive neurological modifications," that the individual has developed to compensate for his disability. 28 C.F.R. § 35.108(d)(4)(iv). For example, it is perfectly clear that Mr. Silverman is substantially limited in his ability to read. Consequently, he is entitled to accommodation of this disability. Whether or not his academic performance meets or exceeds the average level of others in the public is irrelevant to this duty to accommodate. Testing requires reading, and his reading is substantially limited. The fact that Mr. Silverman may have adapted his reading habits to obtain above average grades and testing scores is a mitigating measure that may not be taken into consideration. Hence, accommodation must be provided.

As you are likely well aware, the Department of Justice has implemented extensive regulations on post-secondary education and professional licensing under the ADA. While numerous testing entities have made efforts to more reasonably accommodate examinees, testing accommodation remains an area of major concern for the Disability Rights Section of the Justice Department, as "the Department continues to receive ... complaints relating to excessive and burdensome documentation demands and failures to provide needed testing accommodations." ADA Requirements, Testing Accommodations, https://www.ada.gov/regs2014/testing_accommodations.html (last visited September 12, 2016). In fact, the 2011 Settlement Agreement between the Department of Justice and the NBME was intended to make this process easier for disabled examinees seeking accommodations, but this has not turned out to be the case for Justin Silverman. I'd like to bring to your attention several key regulatory provisions that seem to be at odds with the Board's denial of Mr. Silverman's request for accommodation.

The Justice Department advises that when an applicant has demonstrated a consistent history of a diagnosis of a disability, the testing entity should generally accept the documentation provided by a qualified professional "who has made an individualized assessment of the applicant and generally should grant the requested accommodation," *without further inquiry.* 28 C.F.R. pt. 36, app. A (emphasis added). Mr. Silverman's

4

request has demonstrated a consistent history of a diagnosis of a learning disability and ADHD that has been affecting him for most of his life and has been diagnosed by at least three separate physicians at different stages of his academic career. Because these diagnoses were provided to the NBME along with his request, the NBME should therefore defer to the judgment of these three physicians in their determination of his disabilities and grant his request for accommodation. As the regulation states, these physicians are in a better position to diagnose Mr. Silverman than the Board is, as they have performed individualized assessments of his symptoms. Not only should the Board have granted Mr. Silverman's request, but it should have done so without making any further inquiries to Mr. Silverman. Instead, the NBME's decision rationalizes that a "diagnostic label, in and of itself, does not establish coverage under the ADA." While it is true that such a prior diagnosis does not *guarantee* an accommodation from a private testing entity, the regulations mandate that the entity give weight to any prior diagnoses and not merely shrug off such a determination as a mere "diagnostic label."

The Board in its decision also cited to the fact that Mr. Silverman has received above average scores on prior standardized tests, as well as As and Bs throughout his life. It reasoned that because Mr. Silverman had consistently scored above average on many of these tasks, that he wasn't substantially limited in his ability to take standardized tests. However, the Justice Department has explicitly rejected this line of reasoning in its recent guidelines on the subject. These guidelines state in part that, "[a] person with a history of academic success may still be a person with a disability who is entitled to testing accommodations under the ADA." ADA Requirements, Testing Accommodations, *supra*. The guidelines go on to specifically state that "someone with a learning disability may achieve a high level of academic success, but may nevertheless be substantially limited in . . . the major life activit[y] of reading . . . because of the additional time or effort he or she must spend to read . . . compared to most people in the general population." *Id.* Therefore, while the Board was correct when it stated that Mr. Silverman did score higher than the general population on many of these standardized exams, he must nevertheless still be considered disabled under the ADA because his disabilities cause him to require additional time to complete the same task.

Moreover, although Mr. Silverman has received above average scores on previous standardized exams without an accommodation, the Department of Justice instructs testing entities to consider the length of time it takes an individual to complete a major life activity in comparison to the general population, not just the completion of the task with a satisfactory score. ADA Requirements, Testing Accommodations, *supra*. Mr. Silverman has submitted numerous records to the NBME that sufficiently document his inability to read and comprehend text at average speeds. In his personal statement, Mr. Silverman attested to the fact that he never even came close to completing the SAT and MCAT. It is therefore not material that Mr. Silverman scored above average on his previous standardized exams, because his slower reading rate caused him to complete the task in a much longer time frame than he was allotted.

The Board's decision also failed to give the proper consideration to prior accommodations of extended time and private exam settings granted to Mr. Silverman in

5

college and medical school that the regulations mandate. Any private testing entity must assure that "the entity gives considerable weight to documentation of past modifications, accommodations, or auxiliary aids or services received in similar testing situations." 28 C.F.R. § 36.309(b)(v). Justice's guidelines further specify that "[p]roof of past testing accommodations in similar test settings is generally sufficient to support a request for the same testing accommodations for a current standardized exam or other high-stakes test." ADA Requirements, Testing Accommodations, *supra*. Mr. Silverman has provided ample documentation of the accommodations that he has received for high-stakes final exams in both college and at MUSC, including the diagnoses and recommendation of Dr. Freedy that he receive the same accommodation on the Step I exam—time and one-half. Although Mr. Silverman has never received a formal accommodation on a prior standardized test before, he is not required to have received such accommodations in order to receive one here. Providing documentation of accommodations on prior high-stakes exams, including final exams, should be sufficient for the Board to grant Mr. Silverman the very same accommodation that he has been granted on exams since college.

Finally, Mr. Silverman should not be penalized for the lack of documentation of formal accommodations from his grade and high school, because he received informal accommodations throughout. As the guidelines state, "[in] the absence of documentation of prior testing accommodations, testing entities should consider the entirety of a candidate's history, including informal testing accommodations, to determine whether that history indicates a current need for testing accommodations." ADA Requirements, Testing Accommodations, *supra*. In fact, the guidelines provide an example of an examinee that is strikingly similar to Mr. Silverman: "[a] student with a diagnosis of ADHD and an anxiety disorder received informal, undocumented testing accommodations throughout high school, including time to complete tests after school or at lunchtime . . . may nevertheless be entitled to extended time for the standardized exam." *Id.* The Board's decision incorrectly reasoned that because Mr. Silverman had not provided any early records showing a developmental history of problems with reading or learning, he couldn't have been limited in his academic functioning to the extent required under the ADA. The Board should have considered the entirety of Mr. Silverman's history, including any informal accommodations he had received in making this determination, instead of using the lack of records as a factor against granting his request.

There should be no dispute that Mr. Silverman is disabled within the meaning of the ADAA, as he is substantially limited in the major life activity of reading and comprehending. Mr. Silverman's own personal statement to the NBME sets forth, in great detail, how limited he is in attempting to read and stay focused on even small pieces of text at a time. He has demonstrated persistent difficulty with learning foundational academic skills, including those ongoing difficulties in reading and taking exams throughout his academic career. Justin's is a classic case of receiving both formal and informal academic accommodations throughout his life. The Board's assertion that Justin hasn't demonstrated a chronic and pervasive problem with inattention, impulsivity, behavioral regulation, or distractibility is simply not true. Mr. Silverman provided records from MUSC's Dr. Freedy that specifically addressed Mr. Silverman's academic needs in

6

light of his ADHD. Additionally, Mr. Silverman's own his personal statement explicitly complains of the hallmark symptoms of ADHD, which continue to challenge him even now. In fact, without the accommodation of extended exam time his first year of medical school, Mr. Silverman failed a course at the MUSC College of Medicine. His need for this accommodation is current, well established, and pronounced. The Board's assertion that an individual with such a clear history of learning disabilities, such as Mr. Silverman, is not disabled flies in the face of both common sense and the broad coverage of the ADAA.

> In determining whether an individual has a disability under the "actual disability" or "record of" prongs of the definition of disability, the focus is on how a major life activity is substantially limited, and not on what outcomes an individual can achieve. For example, someone with a learning disability may achieve a high level of academic success, but may nevertheless be substantially limited in the major life activity of learning because of the additional time or effort he or she must spend to read, write, or learn compared to most people in the general population.

29 CFR Section 1630.2

Even when courts are presented with the issue of whether examinees with learning disabilities and ADHD are disabled under the meaning of the ADAA for test-taking purposes, they have consistently found the examinee to be substantially limited in the major life activity of test taking. *See Doe v. St. Louis Univ. Sch. of Med.*, 2013 U.S. Dist. LEXIS 44492, at * 23 (E.D. Mo. Mar. 28, 2013) (finding there to be "no dispute" as to the issue of whether the plaintiff was "disabled" within the meaning of the ADAA). *See also Rush v. Nat'l Bd. of Med. Examiners*, 268 F. Supp. 2d 673, 678 (N.D. Tex. 2003) (granting preliminary injunction against the NBME to allow plaintiff with a reading disability extended time to take the USMLE Step I); *Jenkins*, 2009 U.S. App. LEXIS 2660, at *9. As the court in *Rush* explained, not granting an accommodation of extended time to an examinee with a reading disability, such as Mr. Silverman, is tantamount to "increasing the difficulty of the test." *Rush*, 268 F. Supp. 2d. at 678. The result for Mr. Silverman would be, without an accommodation, that "the exam [would] not test the person's mastery of the subject but instead test the level of disability," which is the very result the Justice Department sought to avoid in implementing its regulations on the subject. *Id.* Mr. Silverman's reading disorder, combined with his ADHD, make him substantially impaired in his ability to take a standardized test such as the Step I. Thus, because Mr. Silverman is unquestionably disabled under the ADAA, his request for accommodation should be granted.

Alternatively, the NBME should have granted Mr. Silverman an opportunity to provide additional documentation of his disabilities before the Board made the decision to deny the request. Even the NBME's own guidelines for accommodations on the Step I Exam provide that an examinee will be given the chance to provide additional records, should Disability Services find that the records submitted are lacking. However, Mr.

7

Silverman wasn't given this opportunity. The Board simply denied his request without making any requests for additional documentation in contravention of its own guidelines.

## CONCLUSION

Mr. Silverman's request for time and one-half testing on the USMLE Step I Exam is reasonable and should be granted as he qualifies as a "disabled individual" under the ADA. The denial of Mr. Silverman's request for accommodations constitutes disparate treatment on the basis of disability in violation of federal law and ignores Mr. Silverman's medical needs. Mr. Silverman is faced with the choice of taking the examination without the accommodation and risking a low score that could drastically affect the choice of residencies that are available to him or taking a substantial leave of absence from medical school while he seeks an accommodation on the Step I, thereby postponing his graduation by at least a year and losing that year's income in the process.

Therefore, should Mr. Silverman's request ultimately be denied, he may have an actionable claim under the ADA and he will further seek to enjoin the NBME from denying him an accommodation on the exam by filing suit in the United States District Court for the District of South Carolina. Accordingly, we ask that the decision made by the NBME to deny Mr. Silverman's accommodation be reversed and the requested accommodation be granted in a timely fashion. Although Mr. Silverman has already been granted a leave of absence from medical school while he awaits the NBME's decision, any unnecessary delay could cause Mr. Silverman considerable harm in delaying his studies any further.

Thank you for your consideration of this request, and I look forward to your decision.

With kind regards, I am

Very truly yours,

Allan Holmes

| Key: | | | |
|---|---|---|---|
| AP = Advanced Placement | | A = 93-100 | |
| H = Honors | | A- = 90-92 | |
| CP = College Prepatory | | B+ = 87-89 | |
| VHS = Virtual High School | | B = 83-86 | |
| | | B- = 80-82 | |
| WP = Withdraw Pass | | C+ = 77-79 | |
| WF = Withdraw Fail | | C = 73-76 | |
| A = Audit | | C- = 70-72 | |
| | | D = 65-69 | |
| | | F = Below 65 Failing | |

**Dover-Sherborn Regional High School**
9 Junction Street    P.O. Box 190
Dover MA  02030
(508) 785-0624
School Code: 220695

Student Name: Silverman, Justin            Common Name:              Gender: Male
SS#: 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 (redacted)                 Birthdate: 9/12/84

Parent or Legal Guardian   Mr. Howard Silverman
Address                    11 Shattner Lane                          GPA 6 Sem: 3.60
                           Dover, MA 02030                           GPA 7 Sem: 3.55
Entry  9/00    Withdrawal            Reentry            Graduation  6/12/03

| School Yr | Courses | Marks | Credit | School Yr | Courses | | Marks | Credit |
|---|---|---|---|---|---|---|---|---|
| 9 1999 | MEDFIELD HIGH SCHOOL Medfield, MA | | | 11 2001 | Myth H* | | A | 3.00 |
| | | | | | Am Lit H* | | B- | 3.00 |
| | English 9 H | B- | 6.00 | | PreCalculus H | | B | 6.00 |
| | Geometry H | B+ | 6.00 | | PreCalc Lv I CP | | WP | 0.00 |
| | Biology H | B | 6.00 | | Student Tech Ldrshp | | P | 1.00 |
| | Wld History I H | A- | 6.00 | | AP Biology H | AP | A- | 6.00 |
| | Spanish II | A- | 6.00 | | Sci & Tech H | | A- | 6.00 |
| | Eng Draw 5 | B+ | 6.00 | | Am Hist CP | | A- | 6.00 |
| | Wellness | A | 6.00 | | Spanish IV H | | B | 6.00 |
| | | | | | Wood I/II CP* | | A | 3.00 |
| | | | | | Phys Ed 11&12 F | | A | 0.75 |
| | | | | | Phys Ed 11&12 S | | A- | 0.75 |

UNOFFICIAL TRANSCRIPT

| School Yr | Courses | Marks | Credit | School Yr | Courses | | Marks | Credit |
|---|---|---|---|---|---|---|---|---|
| 10 2000 | DOVER-SHERBORN H.S. Dover, MA | | | 12 2002 | Modern Drama H* | | D | 3.00 |
| | | | | | Family of Man CP* | | B- | 3.00 |
| | Gr Thms H* | C+ | 3.00 | | AP Calc AB H | AP | B | 6.00 |
| | Sph Writ H* | B+ | 3.00 | | Virtual HS H* Vis Bas 6.0 | | B- | 3.00 |
| | Alg 11 H | C+ | 6.00 | | Virtual HS H* Vis Bas 6.0 | | B- | 3.00 |
| | Chemistry H | B+ | 6.00 | | Physics H | | B | 6.00 |
| | Wld Hist II H | B- | 6.00 | | Adv Topics in Bio H | | A | 6.00 |
| | Spanish III H | B- | 6.00 | | Sci & Tech II H | | A | 6.00 |
| | Art I Adv Stud CP | A | 6.00 | | Astronomy H* | | B | 3.00 |
| | Phys Ed 10 CP | A | 1.25 | | AP Spanish V H | | WP | 0.00 |
| | Cont Ad Issues CP | A | 2.50 | | Spanish V CP | | B- | 6.00 |
| | | | | | Team Sports* | | B+ | 0.75 |

*One semester course



**MEDICAL UNIVERSITY**
*of* **SOUTH CAROLINA**

College of Medicine
Dean's Office

96 Jonathan Lucas Street
CSB 601
MSC 617
Charleston SC 29425
Tel 843 792 2081
Fax 843 792 2967

www.musc.edu/com

May 12, 2016

Mr. Justin Silverman
45 Sycamore Ave., Apt. 1315
Charleston, SC 29407

Dear Mr. Silverman:

The Progress Committee met on May 10, 2016 to review the progress of year two students. We discussed a recent professionalism issue that was reported concerning your tardiness to the Block 12 exam. You met with the Professional Standards Subcommittee in January of 2015 because there have been issues with tardiness and failing to complete assignments in a timely fashion. You will be placed on professionalism probation and are required to meet with Dr. John Freedy to develop a new behavioral monitoring contract. In particular the committee urges you to work on your time management and organizations skills with CAPS. As you begin clinical studies you will be expected to be prompt, well-organized and demonstrate a skill set to manage time. These are all required traits for a successful career as a physician. If these issues are not adequately addressed the committee predicts problems with your clinical rotations.

It was noted that you have already used 4 of the 6 years allowed for completion of degree requirements of the medical degree, so you will have to continue to progress without delay. Students who have repeated a year are advised to read the College of Medicine Degree Completion Policy, which states, "students enrolled in the College of Medicine will have six (6) years from the date of matriculation to complete their degree for Doctor of Medicine. Students who are pursuing a combined degree of Doctor of Medicine and Doctor of Philosophy will have eight (8) years in which to complete that dual degree. If a student fails to complete their degree within the specified time, they will be recommended for dismissal by the Progress Committee."

I strongly recommend that you comply with all terms which will be set forth in the behavioral monitoring contract that will be developed.

Please refer to the College of Medicine section of the MUSC Bulletin for additional information regarding guidelines for student progress http://www.musc.edu/bulletin/medicine/progress.html

Sincerely,

Sally Self, MD
Associate Dean for Student Progress

Cc:  Donna Kern, MD, Senior Associate Dean for Medical Education
     Nora Siwarski, Office of Student Financial Aid
     Pat Cassano, Office of Enrollment Management

*"An equal opportunity employer, promoting workplace diversity."*

```
Key:                                                                                    A  = 93-100
AP  = Advanced Placement        Dover-Sherborn Regional High School                     A- = 90-92
H   = Honors                                                                            B+ = 87-89
CP  = College Prepatory         9 Junction Street     P.O. Box 190                      B  = 83-86
VHS = Virtual High School                                                               B- = 80-82
                                    Dover  MA   02030                                   C+ = 77-79
WP  = Withdraw Pass                                                                     C  = 73-76
WF  = Withdraw Fail                   (508) 785-0624                                    C- = 70-72
A   = Audit                                                                             D  = 65-69
                                   School Code: 220695                                  F  = Below 65
                                                                                            Failing
```

Student Name    Silverman, Justin            Common Name              Gender  Male
SS#             [redacted]                   Birthdate    9/12/84

Parent or Legal Guardian   Mr. Howard Silverman
Address                    11 Shattner Lane                         GPA 6 Sem:  3.60
                           Dover, MA  02030                         GPA 7 Sem:  3.55
Entry   9/00        Withdrawal            Reentry                   Graduation  6/12/03

| School Yr | Courses | Marks | Credit | School Yr | Courses | Marks | Credit |
|---|---|---|---|---|---|---|---|
| 9 | MEDFIELD HIGH SCHOOL | | | 11 | | | |
| 1999 | Medfield, MA | | | 2001 | Myth H* | A | 3.00 |
| | | | | | Am Lit H* | B- | 3.00 |
| | English 9 H | B- | 6.00 | | PreCalculus H | B | 6.00 |
| | Geometry H | B+ | 6.00 | | PreCalc Lv I CP | WP | 0.00 |
| | Biology H | B | 6.00 | | Student Tech Ldrshp | P | 1.00 |
| | Wld History I H | A- | 6.00 | | AP Biology H    AP | A- | 6.00 |
| | Spanish II | A- | 6.00 | | Sci & Tech H | A- | 6.00 |
| | Eng Draw 5 | B+ | 6.00 | | Am Hist CP | A- | 6.00 |
| | Wellness | A | 6.00 | | Spanish IV H | B | 6.00 |
| | | | | | Wood I/II CP* | A | 3.00 |
| | | | | | Phys Ed 11&12 F | A | 0.75 |
| | | | | | Phys Ed 11&12 S | A- | 0.75 |

UNOFFICIAL TRANSCRIPT

| School Yr | Courses | Marks | Credit | School Yr | Courses | Marks | Credit |
|---|---|---|---|---|---|---|---|
| 10 | DOVER–SHERBORN H.S. | | | 12 | | | |
| 2000 | Dover, MA | | | 2002 | Modern Drama H* | D | 3.00 |
| | Gr Thms H* | C+ | 3.00 | | Family of Man CP* | B- | 3.00 |
| | Sph Writ H* | B+ | 3.00 | | AP Calc AB H    AP | B | 6.00 |
| | Alg 11 H | C+ | 6.00 | | Virtual HS H* Vis Bas 6.0 | B- | 3.00 |
| | Chemistry H | B+ | 6.00 | | Virtual HS H* Vis Bas 6.0 | B- | 3.00 |
| | Wld Hist II H | B- | 6.00 | | Physics H | B | 6.00 |
| | Spanish III H | B- | 6.00 | | Adv Topics in Bio H | A | 6.00 |
| | Art I Adv Stud CP | A | 6.00 | | Sci & Tech II H | A | 6.00 |
| | Phys Ed 10 CP | A | 1.25 | | Astronomy H* | B | 3.00 |
| | Cont Ad Issues CP | A | 2.50 | | AP Spanish V H | WP | 0.00 |
| | | | | | Spanish V CP | B- | 6.00 |
| | | | | | Team Sports* | B+ | 0.75 |

*One semester course



**MEDICAL UNIVERSITY**
*of* **SOUTH CAROLINA**

College of Medicine
Dean's Office

96 Jonathan Lucas Street
CSB 601
MSC 617
Charleston SC 29425
Tel 843 792 2081
Fax 843 792 2967

www.musc.edu/com

May 12, 2016

Mr. Justin Silverman
45 Sycamore Ave., Apt. 1315
Charleston, SC 29407

Dear Mr. Silverman:

The Progress Committee met on May 10, 2016 to review the progress of year two students. We discussed a recent professionalism issue that was reported concerning your tardiness to the Block 12 exam. You met with the Professional Standards Subcommittee in January of 2015 because there have been issues with tardiness and failing to complete assignments in a timely fashion. You will be placed on professionalism probation and are required to meet with Dr. John Freedy to develop a new behavioral monitoring contract. In particular the committee urges you to work on your time management and organizations skills with CAPS. As you begin clinical studies you will be expected to be prompt, well-organized and demonstrate a skill set to manage time. These are all required traits for a successful career as a physician. If these issues are not adequately addressed the committee predicts problems with your clinical rotations.

It was noted that you have already used 4 of the 6 years allowed for completion of degree requirements of the medical degree, so you will have to continue to progress without delay. Students who have repeated a year are advised to read the College of Medicine Degree Completion Policy, which states, "students enrolled in the College of Medicine will have six (6) years from the date of matriculation to complete their degree for Doctor of Medicine. Students who are pursuing a combined degree of Doctor of Medicine and Doctor of Philosophy will have eight (8) years in which to complete that dual degree. If a student fails to complete their degree within the specified time, they will be recommended for dismissal by the Progress Committee."

I strongly recommend that you comply with all terms which will be set forth in the behavioral monitoring contract that will be developed.

Please refer to the College of Medicine section of the MUSC Bulletin for additional information regarding guidelines for student progress http://www.musc.edu/bulletin/medicine/progress.html

Sincerely,

Sally Self, MD
Associate Dean for Student Progress

Cc: Donna Kern, MD, Senior Associate Dean for Medical Education
Nora Siwarski, Office of Student Financial Aid
Pat Cassano, Office of Enrollment Management

*"An equal opportunity employer, promoting workplace diversity."*