IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| JUSTIN SILVERMAN | ) | |
| | ) | |
| | ) | Civil Action No. 2:16-cv-03686-RMG |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **PLAINTIFF'S MEMORANDUM** |
| | ) | **IN SUPPORT OF MOTION FOR** |
| NATIONAL BOARD OF MEDICAL | ) | **PRELIMINARY INJUNCTIVE** |
| EXAMINERS | ) | **RELIEF** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTIVE RELIEF

As a result of Defendant National Board of Medical Examiners ("NBME") unlawful failure to provide reasonable accommodations to the Plaintiff on the United States Medical Licensing Examination ("USMLE") Step I Exam as required under Title III of the Americans with Disabilities Act of 1990 ("ADA"), this Court should issue a temporary restraining order and preliminary injunction in favor of the Plaintiff, ordering the Defendant to allow Plaintiff to take the USMLE Step 1 with accommodations, namely extended time and one half and reduced distraction test environment before December 31, 2016. Without such relief from this Court, there is a substantial threat of immediate and irreparable harm to the Plaintiff. Specifically, without such relief, Plaintiff faces expulsion from the College of Medicine at the Medical University of South Carolina ("MUSC"), and Plaintiff will be unable to meet the program requirements necessary for graduation from medical school.

1

## **FACTS**

Justin Silverman is a second year medical student at the Medical University of South Carolina. Silverman is required to take and pass the USMLE Step I Exam in order to proceed with his third-year "clinical clerkships" at MUSC and thereafter obtain his medical degree. Affidavit of Justin Silverman ["Silverman affidavit"]. MUSC's Progress Committee has been monitoring Plaintiff's medical education and is requiring that he complete the Step I Exam by the end of the calendar year 2016 in order to continue to be enrolled as a medical student. *Id.*

The NBME is a private, non-profit organization that is responsible for sponsoring the USMLE "component" exams, of which the Step I comprises the first exam a medical student must take. The USMLE is a timed, multiple-choice examination that is used to evaluate a person's mastery of the basic science underlying medicine and one's ability to utilize that knowledge. State medical licensing boards around the United States and its territories rely upon an applicant's successful completion of the USMLE component exams in order to obtain a license to practice medicine. In addition to being a perquisite to continuing medical studies, the scores an applicant receives on the USMLE Step I are a primary factor for deciding where a candidate may qualify and be accepted for residency training. *Rush v. Nat'l Bd. Of Med. Examiners*, 268 F. Supp. 2d 673, 676 (N.D. Tex. 2003).

Plaintiff has a long, well-documented history of learning disabilities. To date, Plaintiff has been diagnosed with a developmental reading disorder, (learning disorder) DSM/ICD[1] (315.00), attention deficient hyper-activity disorder, combined-type ("ADHD") DSM/ICD (314.01), anxiety disorder NOS (300.00), and mathematics disorder DSM/ICD (315.10). *See*

---

[1] DSM (Diagnostic Statistical Manual of Mental Disorders, American Psychiatric Association)/ICD (International Statistical Characteristics of Diseases and Related Health Problems, World Health Organization).

Complaint, Neurological Evaluation, Exhibit 1, at 8. Plaintiff has received both formal and informal accommodations for his learning disabilities throughout his academic career, dating all the way back to his early years in grade school. The instructors in his small, private grade, middle, and high schools allowed Silverman to complete assignments on his own time, as a form of informal accommodation, so severely restricted was the Plaintiff in his ability to read and comprehend on par with his contemporaries. These teachers recognized the extreme difficulty that Silverman had with finishing his assignments and examinations in the same manner as his classmates. As a result, Plaintiff never had to seek formal accommodations in his studies until after he graduated from high school. *See* Complaint, Personal Statement, Exhibit 1 at 2. Plaintiff did not seek an accommodation on the Scholastic Aptitude Test ("SAT"), and his scores were significantly lower than expected, given his grade point average in school and his native intellect, due to the fact that significant portions of the exam were left blank by Plaintiff after he ran out of time. *See id.*

His difficulties with timed assignments continued in undergraduate school, at Skidmore College, until he sought formal accommodations for his disabilities there. Plaintiff was evaluated by a clinical neuropsychologist and licensed psychologist in December 2005 and January 2006, who determined that Plaintiff met the criteria for the learning disabilities described above and that accommodations of extended time on exams and a reduced distraction environment should be provided to Plaintiff at Skidmore College. *See* Complaint, Neuropsychological Evaluation, Exhibit 1 at 8. After receiving the necessary formal accommodations, the Plaintiff flourished in his studies and applied to medical school. *See* Complaint, Personal Statement, Exhibit 1 at 3.

The Plaintiff again sought formal accommodations of extended time on testing and reduced distraction environment once he matriculated to MUSC. However, these

accommodations were not provided to him until roughly halfway through his second semester of his first year and as a result, he failed one of his classes during this first semester. *Id.* The Plaintiff was once again evaluated for learning disabilities in 2012 upon applying for accommodations at MUSC, and the licensed clinical psychologist who serves as the MUSC Director of Counseling and Psychological Services similarly concluded that the Plaintiff's ability to read and comprehend were so severely limited that formal accommodations of extended test time by one-half their length and reduced distraction environment must be provided. *See* Complaint, Testing Report, Exhibit 1 at 4. Since receiving these accommodations in his first year at MUSC, the Plaintiff has successfully completed his all of his coursework requirements. *See* Silverman Affidavit.

       The evaluations performed in 2005, 2006, and 2012 have all conclusively demonstrated that Plaintiff is substantially limited in his ability to learn, read, and comprehend. *See* Complaint, Exhibit 1. These reports confirm the diagnosis of significant learning disabilities, including developmental reading disorder and ADHD. In particular, these evaluations concluded and established that Plaintiff's developmental disorder prohibits the Plaintiff from processing information and the written word in the same manner as most people. *See id.* As a result, the speed at which Plaintiff can read the written word is greatly decreased. Reading even small segments of text is a slow, painful, and laborious process for the Plaintiff. Plaintiff's reading disorder is so pervasive that even everyday tasks, such as reading road signs or subtitles to a movie is next to impossible for him. *See* Complaint, Personal Statement, Exhibit 1 at 2. Plaintiff's reading and visual processing skills are well below average such that his ability to read and process written information is substantially limited and is below average in comparison

to the general population as well as persons of his age and comparable education level. *See* Complaint, Testing Report, Exhibit 1 at 2.

The Plaintiff's diagnosis of ADHD further compounds his ability to read and process the written word. ADHD is a well-recognized learning disability that causes individuals to have difficulty maintaining focus on matters for extended periods of time and these individuals may be easily distracted from the task at hand through no fault of their own. *See* DSM/ICD (314.01). In a timed test environment where intensive focus for extended periods is required, the mental and physical makeup of those affected by ADHD makes it nearly impossible to maintain the amount of focus required for that length of time. *See* Complaint, Personal Statement, Exhibit 1 at 2. Combined with Plaintiff's reading disorder that causes him to read at much slower speeds, his ADHD prevents the Plaintiff from concentrating on the task at hand for the length of time required for him to process the information. *See* Complaint, Neuropsychological Evaluation, Exhibit 1 at 2.  Thus, the Plaintiff is severely disadvantaged in reading and concentrating, and therefore in taking timed exams.

The Plaintiff first sought an accommodation on the USMLE Step I exam from the Defendant in May of 2016, in order to satisfy the requirements set for Plaintiff by MUSC's Progress Committee and enroll in third-year clinical studies. *See* Complaint, Exhibit 1. Plaintiff sought an accommodation of extension of timed test periods by one half their length and reduced distraction test environments. *Id.* In support of his request for reasonable accommodation, Plaintiff submitted: the 2005 and 2006 neurological reports confirming his diagnosis of specific learning disabilities, the testing report performed by Dr. Freedy determining the need for accommodations for Plaintiff's disabilities, a personal statement from the Plaintiff describing in detail the many ways in which these disabilities adversely affect his daily life, certification of

5

prior test accommodations from both MUSC and Skidmore College, a letter supporting the request for accommodation from the MUSC Associate Dean for Student Affairs, among other documentation that demonstrated his need for the accommodation. *Id.*

Despite having submitted all of the required documentation, the Defendant unduly delayed in responding to Plaintiff's request for over three months. Given the fact that Plaintiff only had until December 31, 2016 to complete the exam or face expulsion from medical school and the Defendant still had not rendered a decision on his request, Plaintiff retained counsel in August of 2016. It was not until a day after Plaintiff's counsel telephoned the office of Defendant's general counsel to inquire as to the status of Plaintiff's request on August 29, 2016, that the Defendant reached a decision denying Plaintiff's request for accommodation on the exam. *See* Complaint, Letter Denying Request, Exhibit 2 at 3. The Defendant summarily denied Plaintiff's request for reasonable accommodation without any personal examination, evaluation, or interview of him.

By letter dated September 30, 2016, Plaintiff's counsel sought a reconsideration of the denial for accommodation, outlined the erroneous conclusions that the NBME denial had come to regarding Plaintiff's disability, provided additional documentation in support, and emphasized that Plaintiff would face irreparable injury if the denial were not quickly reversed. *See* Complaint, Counsel for Plaintiff's Letter, Exhibit 3 at 8. After receiving no response to this letter, Plaintiff's counsel again advised the NBME by letter dated November 11, 2016, of the irreparable injury faced by Plaintiff if an accommodation was not quickly granted. *See* Complaint, Counsel for Plaintiff's Second Letter, Exhibit 4 at 1. On November 14, 2016, the Defendant by email refused to overturn its denial of Plaintiff's request without providing any further explanation or rationale for its decision. *See* Complaint, Letter of November 14, Exhibit 5

6

at 1. Plaintiff thereafter immediately filed suit in this Court on November 18, 2016, alleging violations of Title III of the ADA, 42 U.S.C. § 12189 and its implementing regulations, 28 C.F.R. § 36.309.

The Defendant has not challenged the credibility of any of the Plaintiff's submissions, and the Defendant has not obtained any information whatsoever independent of the Plaintiff's submissions. Rather, the Defendant has made its decision without considering any documentation related to the Plaintiff's disability or its effects on the Plaintiff other than the documentation submitted by the Plaintiff. The Defendant has not questioned the credibility of that documentation and this appears to be the standard NBME practice[2]. *See* Complaint, Exhibits 2 and 5.

## ARGUMENT

### I. The Court Should Grant the Plaintiff the Requested Equitable Relief.

A plaintiff seeking a preliminary injunction must establish: (1) he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, (4) and than an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Real Truth About Obama v. FEC*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010). The courts within the Fourth Circuit no longer recognize a "flexible interplay" among these criteria and instead, each requirement must be fulfilled as articulated. *Occupy Columbia v. Haley*, 866 F. Supp. 2d 545, 552 (D.S.C. 2011). These same requirements of preliminary relief also apply to a temporary restraining order. *See Simkins v. Gressette*, 495 F. Supp. 1075, 1079 (D.S.C. 1980).

---

[2] These circumstances make it especially appropriate for this Court to follow the holding of *G. G. v. Gloucester Cnty. Sch. Bd.*, 822 F.3d 709, 725-26 (4th Cir. Va. 2016), and consider hearsay evidence supportive of the Plaintiff's Motion for Preliminary Injunction.

The ADA specifically includes the remedies set forth in 42 U.S.C. § 2000a-3(a) for any violation of § 12189, including preliminary and permanent injunctive relief. 42 U.S.C. § 12188(a)(1). Section 2000a-3(a) specifically provides that temporary or permanent injunctive relief is available as a remedy to individuals aggrieved and to prevent further violations of the statute. 42 U.S.C. § 2000a-3(a). The Plaintiff is entitled to a temporary restraining order and preliminary injunction as the facts demonstrate that the Plaintiff has satisfied the requirements for injunctive relief.

### A. The Plaintiff is Likely to Succeed on the Merits of His Claim.

The ADA was enacted in part, to provide "a clear and comprehensive national mandate for the elimination of discrimination . . . and to provide clear, strong, consistent, enforceable standards addressing discrimination . . . ." 42 U.S.C. §12101(b)(1) and (2). The relevant provision of Title III of the ADA provides:

> Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

42 U.S.C. § 12189. The Defendant, NBME, is a private non-profit organization that is responsible for designing and administering the USMLE Step I Examination that is "related to" licensing in the medical profession and is therefore indisputably subject to the requirements of 42 U.S.C. § 12189. An entity subject to 42 U.S.C. §12189 discriminates against a disabled individual in violation of the ADA when it fails to make a reasonable accommodation for a known physical or mental impairment. 42 U.S.C. §12112(b)(5)(A).

Congress has explicitly vested the Department of Justice with the authority to promulgate regulations implementing Title III of the ADA. 42 U.S.C. § 12186(b). As specified in these

regulations, the purpose of testing accommodations is to ensure that the "examination results accurately reflect the individual's aptitude or achievement level or whatever other factor that the examination purports to measure, rather than reflecting the individual's impaired sensory, manual or speaking skills." 28 C.F.R. § 36.309(b)(1)(i). Additionally, the regulations implementing Title III of the ADA specifically state that changes in the length of time permitted for completing an examination may be an appropriate accommodation. 28 C.F.R. § 36.309(b)(2).

### 1. The Plaintiff is a Disabled Individual under the ADA.

The Defendant refuses to provide Plaintiff with an accommodation, asserting that he has not provided sufficient evidence to show he is disabled, but the Defendant's refusal is not based upon any challenge to the Plaintiff's evidentiary submissions. Rather, the refusal is based upon the Defendant's misapprehension of its legal obligations under the ADA. As discussed below, the facts show that Plaintiff is substantially impaired in the major life activities of reading and learning and therefore qualifies as a disabled individual under the ADA.

For purposes of the ADA, a person is disabled if he suffers from "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1). In deciding whether an individual has a disability under the ADA, courts have created a three-step inquiry: (1) whether the individual suffers from a physical or mental impairment, (2) whether the life activity is a "major life activity," and (3) whether the impairment substantially limits that major life activity. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998). The regulations implementing Title III of the ADA specifically defines physical or mental impairments as including "specific learning disabilities." 28 C.F.R. §36.104. Additionally, courts to consider the question have had no difficulty in finding that learning disabilities constitute "impairments" for purposes of the ADA. *See Rush*, 268 F. Supp. 2d at 678

(reading disability); *Price v. Nat'l Bd. of Med. Examiners*, 966 F. Supp. 419, 424 (S.D. W. Va. 1997) (ADHD and reading disability).

The NBME also cannot refute that the activities of reading and learning constitute "major life activities" under the ADA. The statute further defines major life activity as including "learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). *See also Scheibe v. Nat'l Bd. of Med. Examiners*, No. 05-C-180-C, 2005 U.S. Dist. LEXIS 8725, at *8 (W.D. Wis. May 10, 2005) (concluding that reading is a major life activity under the ADA); *Bartlett v. New York State Bd. of Law Examiners*, 226 F.3d 69, 80 (2nd Cir. 1998) (same).

Contrary to the Defendant's assertions, the Plaintiff is substantially limited in the major life activities of reading and learning. The Department of Justice's regulations provide that in determining whether an individual is substantially limited in a major life activity, a person is considered to be disabled when the individual's important life activities are restricted as to "the conditions, manner, or duration" under which they can be performed in comparison to most people. 28 CFR 36.105 § 36.105(d)(ix)(3)(i). This threshold of "substantially limits" was not meant to be an unduly demanding one, however. In fact, the Defendant seems to have forgotten that the definition of "disability" was substantially broadened by the ADA Amendments Act (ADAA) of 2008. *See Jenkins v. Nat'l Bd. of Med. Examiners*, No. No. 08-5371, 2009 U.S. App. LEXIS 2660, at *9 (6th Cir. 2009). Subsequent to the ADAA, "substantially limits" is no longer interpreted to be "a demanding standard," nor should it require extensive analysis. 28 CFR 36.105 § 36.105(d)(ii). Now, an impairment "does not need to prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.* § 36.105(d)(v).

The evidence presented in this case shows that the Plaintiff has a mental impairment, specifically developmental reading disorder and ADHD, that substantially limits him in the major life activities of reading and learning. The test and evaluation data compiled by Dr. Shantee Foster in 2012 dramatically illustrates the scope of the Plaintiff's learning disability. The results of the test show that the Plaintiff's reading and processing skills, speed, and abilities are far below those of other 32 year old individuals and far below those expected of persons with his academic background. For example, when the Plaintiff took the Nelson Denny Reading Comprehension Test under standard time conditions, Silverman obtained a Total Score of 189, placing him in the 2nd percentile range[3]. On the Comprehension section of the exam, he also scored a 169, which placed him in the 1st percentile and at a 6.3 grade equivalent. *See* 2012 Testing Report, Complaint, Exhibit 1 at 2. When given extended time on the Nelson Denny, the Plaintiff's scores dramatically rose from a total score of 189 to 245, placing him in the 70th percentile or 18.1 grade equivalent. *Id.* The neuropsychological evaluations performed on Plaintiff in 2005 and 2006 similarly concluded that Silverman's impairment made "sustaining attention, copying numbers and letters, accessing and organizing auditory and visual aspects of language," so difficult such that "learning and expressing his ideas in a traditional academic setting [are] enormously challenging." *See* Neuropsychological Evaluation, Complaint, Exhibit 1 at 7. These test results conclusively establish that the Plaintiff's reading and comprehension speed is "substantially limited" in comparison with the general population. The duration that it takes the Plaintiff to accomplish reading a particular passage must be taken into account in this determination. *See* 28 CFR 36.105 § 36.105(d)(ix)(3)(i).

---

[3] This percentile range indicates that the Plaintiff scored as well or better than only 2% of the qualified group participants who took the exam.

The test data, coupled with his history of reading difficulties, establishes that, as compared to most people, Plaintiff is restricted as to the conditions, manner and duration under which he can perform the skills related to reading and learnings. Accordingly, he has a disability that substantially limits a major life activity and he is entitled to reasonable accommodation in accordance with Title III of the ADA. The fact that Silverman's learning disabilities were not recognized early in life is not uncommon. The full extent of Plaintiff's disability, which has always existed, is now being manifested in his inability to process information as most people would. The Plaintiff is substantially limited in his ability to read and learn, and as the USMLE requires both in a timed environment, he is entitled to the reasonable accommodations he seeks.

The Board's decision to reject Plaintiff's request for a reasonable accommodation rests upon fundamentally unsound interpretations of the statute that Congress has explicitly rejected. First, the Board reasoned in its letter to Plaintiff notifying him of their decision to reject his request, the lack of documentation of a disability from Plaintiff's early academic career was not consistent with a diagnosis of learning disabilities, which often manifest during the formative years. *See* Complaint, Letter Denying Request, Exhibit 2 at 2. Plaintiff had previously explained, however, that he had received informal accommodations in his small, private schools, throughout grade and high school[4]. *See* Complaint, Letter from Plaintiff's Counsel, Exhibit 3 at 2.

At the same time that the Defendant appeared to penalize Plaintiff for failing to have formal accommodations early on, the Board simultaneously appeared to disregard the formal accommodations Plaintiff *had* received at MUSC – the very same accommodations that Plaintiff

---

[4] Not only did the Defendant fail to take this fact into account initially, but counsel for Plaintiff also provided additional evidence of the Plaintiff's informal accommodations before college to the NBME by letter dated September 30, 2016. *See* Complaint, Letter from Plaintiff's Counsel, Exhibit 3. However, the Defendant failed to consider this fact yet again in its refusal to reevaluate its position.

12

was requesting on the USMLE Step I. The Defendant ignored the evidence of Plaintiff's MUSC accommodations in contravention of a clear mandate from the Department of Justice on the issue: "Any private entity offering an examination covered by this section must assure that . . . when considering requests for modifications, accommodations, or auxiliary aids or services, the entity gives considerable weight to documentation of past modifications, accommodations, or auxiliary aids or services received in similar testing situations." 28 CFR § 36.309(b)(v).

The NBME has taken the position in its refusal to grant the Plaintiff an accommodation that because Plaintiff has achieved academic success without formal accommodations on previous standardized tests and his earlier coursework, he has not shown sufficient evidence of being disabled and therefore is not entitled to an accommodation on the USMLE Step I. This argument has been explicitly rejected both by Congress in passing the ADAA and by relevant case law addressing the question. The legislative history of the ADAA repeatedly references Congress' desire to reject the Defendant's position on prior academic success that was articulated in *Price v. Nat'l Bd. of Med. Examiners*, 966 F. Supp. 419, 424 (S.D. W. Va. 1997). In *Price*, the court concluded that there was "a history of significant scholastic achievement reflecting a complete absence of any substantial limitation on learning ability." *Price*, 966 F. Supp. at 427-28. The Plaintiff's "superior intellectual capability" allowed him to compensate for his disability and read and learn in comparison with an average person and therefore he could not be considered disabled under the ADA. *Id.  Cf. Bartlett*, 226 F.3d at 81, 84 (finding that because the plaintiff read "slowly, haltingly, and laboriously," and given the remedial purpose of the ADA, the plaintiff was substantially impaired in the activity of reading).

However, in passing the ADAA in 2008, Congress explicitly expressed its desire to reject the line of reasoning from *Price* that the Defendant appears to rely upon and to support the

finding of disability in *Bartlett*. H.R. REP. NO. 110-730, pt. 1, at 10 (2008). The Congressional record and the Report of the House Committee on Education and Labor, for example, both conclude that "it is critical to reject the assumption that an individual who performs well academically or otherwise cannot be substantially limited in activities such as learning, reading, writing, thinking, or speaking." *Id.* The Committee also instructed courts to carefully analyze the condition, manner, or duration in which an individual with a specific learning disability performs a major life activity. *Id.*

> For the majority of the population, the basic mechanics of reading and writing do not pose extraordinary lifelong challenges; rather, recognizing and forming letters and words are effortless, unconscious, automatic processes. Because specific learning disabilities are neurologically-based impairments, the process of reading for an individual with a reading disability . . . is word-by-word, and otherwise cumbersome, painful, deliberate and slow—throughout life. The Committee expects that individuals with specific learning disabilities that substantially limit a major life activity will be *better protected* under the amended Act.

*Id.* at 10-11 (emphasis added).

The first requirement of the test for a preliminary injunction, that the plaintiff clearly show that he is likely to succeed on the merits of his claim has been satisfied here. *Winter*, 129 S. Ct. at 374, 374-75. The process of reading for the Plaintiff is "cumbersome, painful, deliberate and slow," and despite struggling with his impairments his entire life, he has managed to succeed in his coursework both with and without accommodations. His prior success on the SAT, for example, on which he obtained a 1420 without an accommodation cannot preclude a finding of disability where Plaintiff's ability to process the written word is undisputedly and significantly impaired compared to most people. *See Bartlett*, 226 F.3d at 81. A finding that Plaintiff is not disabled despite having these severe learning disabilities flies in the face of both common sense

and the remedial purpose of the ADAA. Accordingly, Plaintiff has made a clear showing that the Defendant has unlawfully denied him reasonable accommodations on the USMLE Step I exam.

## B. The Plaintiff is Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief

In order to be entitled to a preliminary injunction, the Plaintiff must make a clear showing that he is likely to suffer irreparable harm in the absence of an injunction. *Real Truth*, 575 F.3d at 347. To demonstrate irreparable harm a party must establish that the harm is "certain and great," "actual and not theoretical," and so "imminen[t] that there is a clear and present need for equitable relief to prevent irreparable harm;" and (2) "the harm must be beyond remediation." *N.C. State Conf. of the NAACP v. N.C. State Bd. of Elections*, No. 1:16CV1274, 2016 U.S. Dist. LEXIS 153249, at *32 (M.D.N.C. Nov. 4, 2016) (citation omitted). An injury is deemed irreparable when monetary damages are inadequate or difficult to ascertain. *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994), *abrogated on other grounds by* Winter, 555 U.S. 7 (2008).

Plaintiff can make the required showing of irreparable harm as he is nearly certain to be dismissed from the College of Medicine at MUSC if he is not granted the preliminary relief that would allow him to complete the USMLE Step I by December 31, 2016. *See* Silverman Affidavit, Complaint, Letter from Plaintiff's Counsel, Exhibit 3 at 8. The harm for Plaintiff if he does not take the exam with accommodations is both "actual and imminent" as his continued enrollment in medical school depends upon completion of the exam by the end of the year, a requirement that MUSC's Progress Committee has set for him. This is not an instance where the harm Plaintiff faces is a mere postponement of his graduation. *See Rothberg v. Law Sch. Admission Council*, 102 Fed. App'x 122, 125 (10th Cir. 2004) (finding that the mere delay of

15

educational opportunities does not constitute irreparable harm). Unlike the plaintiff in *Rothberg*, Plaintiff faces the near certainty that he will be dismissed from MSUC and will never be permitted thereafter to obtain his medical degree from any other institution. *See* Silverman Affidavit, *Rush*, 268 F. Supp. 2d at 676. Additionally, Plaintiff cannot be compensated for the permanent loss of the opportunity to obtain his medical license and practice medicine through mere monetary damages.

The Plaintiff's dilemma is nearly identical to the plaintiff in *Rush v. Nat'l Bd. Of Med. Examiners. Rush v. Nat'l Bd. Of Med. Examiners*, 268 F. Supp. 2d at 678. In *Rush*, the court granted plaintiff a preliminary injunction against the National Board of Medical Examiners, ordering them to grant the plaintiff who had a reading disability an accommodation of double testing time. *Id.* at 279. The court in *Rush* recognized the irreparable harm that would result to the plaintiff if he were not allowed to take the USMLE Step I with the appropriate accommodation. The court concluded that because a typical question on the USMLE Step I requires an average medical student about forty-five seconds to read with understanding and the plaintiff's ability to rapidly read and efficiently process the written materials was so severely impaired, not granting an accommodation would be "tantamount to increasing the difficulty of the test." *Id.* at 678. In explaining why irreparable injury would result to the plaintiff without preliminary relief, the court stated:

> The score a medical student achieves on the Step I examination is a major factor in determining into which medical speciality or third year training program a student will be accepted. . . Students who do not display mastery by passing the Step I exam at the normal point in their medical school career . . . suffer a disadvantage in comparison to future residency and medical training options afforded other medical school students . . . Students behind in their studies normally will not be offered the range and quality of residency or medical speciality options their peers will be offered. They will normally not be offered interviews for further study in the more competitive medical specialities, will not have the usual range of geographic or location (city and school) choices for

16

> remaining medical school programs which may be available, and will be delayed in completion of their medical training. There is no good way to remedy this injury. Timely Step I testing and passage is required.

*Id.* at 676.

Like the Plaintiff in *Rush*, Silverman faces the Hobson's choice of not taking the exam at all or taking it without an accommodation. Both options would result in irreparable harm to the Plaintiff. On the one hand, if Plaintiff chose not to take the exam before the end of the calendar year 2016, it is a certainty Plaintiff would be dismissed from MUSC by the Progress Committee and it is extremely unlikely that he would be admitted into another medical school afterwards. However, if Plaintiff chose to take the Step I Exam without an accommodation before the end of the year to satisfy the Progress Committee and made a low score on the exam, the opportunity to enter into a desirable residency program will be closed to him forever. *See Rush*, 268 F. Supp. 2d at 676. Additionally, because no cause of action for compensatory damages is available to private parties under Title III of the ADA, should injunctive relief be denied, Plaintiff will be without a remedy at law to make him whole. *See Proctor v. Prince George's Hosp. Ctr.,* 32 F. Supp. 2d 820, 824 (D. Md. 1998). The only way to afford Plaintiff relief and to avoid the loss of his opportunity to pursue a career as a practicing physician is to grant Plaintiff the opportunity to take the USMLE before December 31, 2016 with the accommodations he is entitled to under the ADA.

### C. The Balance of Equities Tips in Favor of the Plaintiff.

The Plaintiff should be granted the preliminary relief requested as the balance of the equities tips heavily in his favor. Generally, this inquiry consists of a balance of the hardships imposed on the defendant if the injunction is granted versus the hardships imposed on the plaintiff is the injunction is denied. *Safeway Inc. v. CESC Plaza Ltd. P'ship*, 261 F. Supp. 2d 439,

472 (E.D. Va. 2003). As explained above, the potential for harm to the Plaintiff absent injunctive relief would be enormous. In comparison to the devastating loss that Plaintiff would suffer if the relief requested is not granted, the NBME will suffer very little, if any hardship if the injunction is granted.

The NBME is a nationwide organization that administers the USMLE to medical students around the United States. The Plaintiff is requesting accommodations, time and one half and a reduced distraction environment, that the Defendant already purports to provide as part of its normal practices to other individuals with learning disabilities. Providing Plaintiff with preliminary injunctive relief here would do nothing to reduce the NBME's ability to administer the USMLE Step I as it always has to future students. In fact, granting the preliminary injunction would have no significant impact at all on the Defendant or its ongoing operations. Accordingly, the balance of equities tips heavily in favor of the Plaintiff, who stands to lose the opportunity to pursue his career if preliminary relief is not granted.

### D. Granting Preliminary Relief is in the Public Interest.

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 129 S. Ct. at 376-77. (citation omitted). The clear legislative mandate behind enactment of the ADA indicates that protection of rights recognized by the ADA is in the public interest. See 42 U.S.C. § 12101(b)(1) and (2). The public interest in the ADA is furthered by ordering those who refuse to provide accommodations to disabled individuals to provide reasonable accommodations and comply with the law. In fact, courts have explicitly recognized that the public interest is served where the National Board of Medical Examiners has been ordered to provide appropriate

accommodations on the USMLE Step I exam and comply with the ADA. *See Rush*, 268 F. Supp. 2d at 679.

The NBME is the primary organization responsible for designing and administering these standardized tests required for medical licensure. The public interest is served by the courts ensuring that this organization is complying with its obligations as an entity that offers licensing examinations under Title III of the ADA. The NBME's refusal to provide Plaintiff with the accommodations constitutes a particularly egregious violation of the ADA in this case, especially in light of the 2008 ADAA amendments that were explicitly intended to provide broader protection for students with learning disabilities. *See* H.R. REP. NO. 110-730, pt. 1, at 10-11 (2008). The NBME has a history of attempting to deny individuals with learning disabilities accommodations on the USMLE, and the public interest is further served by ensuring that it complies with its ADA obligations. In fact, the United States Department of Justice, Civil Rights Division, Disability Rights Section entered into a Settlement Agreement with the NBME in 2011 to ensure its compliance on this very issue. *See* Complaint, Settlement Agreement, Exhibit 6[5]. As the NBME has so clearly failed to uphold its obligations under this Agreement as they pertain to the Plaintiff, it is certainly in the public interest to ensure in this instance that the Plaintiff "be tested on his medical and science knowledge and not his disability." *Rush*, 268 F. Supp. 2d at

---

[5] As a part of this Settlement Agreement, the NBME agreed in the future to, *inter alia*:
1). Provide reasonable testing accommodations to persons with disabilities who seek to take the USMLE, in accordance with the requirements of 42 U.S.C. § 12189 and the implementing regulations, 28 C.F.R. § 36.309.
2). Carefully consider all evidence indicating whether an individual's ability to read is substantially limited within the meaning of the ADA, including the extent to which it is restricted as to the conditions, manner, or duration as compared to the reading ability of most people.
3). Consider bona fide, reasonably supported reasons for the late diagnosis as well as academic records and other objective evidence relating to the individual's reading ability.

678. Accordingly, it is in the public interest that Plaintiff be granted the preliminary relief sought against the Defendant.

WHEREFORE, Plaintiff prays for relief from the Court as follows:

a) Enter its declaratory judgment that the Defendant has violated its obligations to the Plaintiff under the ADA as described above;

b) Enter temporary and preliminary injunctions which enjoin the Defendant from its continued violation of the ADA and from failing to provide the Plaintiff with the reasonable accommodations of extension of timed test periods by one half their length, and reduced distraction test environment, so that he might take the USMLE Step I prior to December 31, 2016; and

c) Grant such other and further relief as this Honorable Court deems necessary, proper and just.

All of which is respectfully submitted.

S/Allan R. Holmes
Allan R. Holmes, Federal I.D. #1925
Cheryl H. Ledbetter, Federal I.D. #11446
Suite 110, 171 Church Street
Charleston, South Carolina 20401
Phone: (843) 722-0033
Facsimile: (843) 722-0114

ATTORNEYS FOR PLAINTIFF

November _____, 2016
Charleston, South Carolina