# TAB B

Page 1

## Review of Accommodation Request

**Applicant Name:** Justin Silverman
**Date of Birth:** September 12, 1984
**Date of Review:** June 13, 2016
**Reviewer:** Benjamin J. Lovett, Ph.D.

This review concerns Justin Silverman, who has requested extended time testing accommodations (50% additional time) on Step 1 of the USMLE. He reports having ADHD and a learning disability in reading.[1] He also reports receiving formal accommodations in medical school and college,[2] but not before that, and never on standardized tests. In a personal statement, he reports pervasive problems with reading that affect him beyond testing situations, carrying over into occupational and everyday life settings (e.g., being unable to read information on road signs). More specifically, he describes himself as a slow, laborious reader, leading him to need extended time on Step 1 of the USMLE.

In support of his request, Mr. Silverman has submitted the following documents:
- A score report from the MCAT
- Reports from diagnostic evaluations completed in 2005/6 and 2012, as well as additional test score data from the 2012 evaluation
- Verification of his eligibility for accommodations in medical school and college
- A supportive letter from an administrator at his medical school

This documentation review has three purposes: to evaluate the evidence for the reported disability conditions, to determine if the conditions (if present) cause a substantial limitation in any major life activities, and to determine if the requested accommodations are appropriate for Mr. Silverman.

Evidence of a Learning Disability in Reading
There is insufficient evidence to demonstrate a learning disability in reading. Admittedly, during his 2012 evaluation, Mr. Silverman did obtain below-average scores on multiple timed reading tests. Indeed, on one test in particular, the timed reading comprehension task from the Nelson-Denny Reading Test (NDRT), his score was in the bottom 1% for college seniors, and his performance was estimated to be at the level of a sixth grader. On this test, he needed to read passages and answer multiple-choice questions about each passage, all under a strict time limit. However, on the verbal reasoning section of the MCAT, which has an extremely similar format, Mr. Silverman's score was at the 95th percentile, *compared to other medical school applicants*. Therefore, I do not believe that scores such as the NDRT score are an accurate representation of Mr. Silverman's skills. The 2012 evaluation was explicitly completed by Mr. Silverman because he was seeking testing accommodations, and research has shown that a significant minority of students being evaluated for learning and attention problems will exaggerate their symptoms

---

[1] Those are Mr. Silverman's current diagnoses. In his personal statement, he also reports having a learning disability in mathematics and an anxiety disorder, and in 2005/6 he did receive those diagnoses, but he reports that those problems are "less applicable" to his current request.
[2] Mr. Silverman received accommodations at Skidmore College. However, it appears that he took classes at two other colleges, where he does not appear to have received accommodations.

Page 2

during such evaluations. There are specialized assessment measures that can be used to detect a lack of full effort on diagnostic tests, but unfortunately, Mr. Silverman's evaluators did not employ such measures.

Beyond the data in the 2012 evaluation, if Mr. Silverman had a learning disability in reading, we would expect to see evidence of below-average reading skills from earlier in his life. Learning disabilities are neurodevelopmental disorders that start in childhood, but it is not even clear that Mr. Silverman *claims* to have had poor reading skills as a child, except in comparison to his sister, who he describes as a "prolific reader." Certainly, there is no objective evidence of poor reading skills (such as low grades in language arts) in childhood. The lack of any real-world, objective evidence of reading problems leads me to conclude that there is insufficient evidence of a learning disability in reading.[3]

Evidence of ADHD
We know very little about how Mr. Silverman was initially diagnosed with ADHD in high school, and what evidence was used to make that determination. We also have no objective evidence from before his diagnosis, attesting to his ADHD symptoms (evidence such as teacher narrative comments in report cards). In the 2005/6 and 2012 evaluations, Mr. Silverman reported high levels of ADHD symptoms on standardized rating scales, but the only other symptom ratings (which were from his mother) suggested that he had very low levels of ADHD symptoms by 2012. His performance on diagnostic tests measuring attention and executive functioning (planning, organization, etc.) was mixed. Finally, we have no objective evidence of his being impaired by ADHD in real-world settings, either now or in the past. Adults with valid diagnoses of ADHD can point to objective documentation of negative life consequences of their ADHD symptoms, relative to the life phenomena experienced by most people in the general population; we have no objective evidence of such negative consequences in Mr. Silverman's case. Of course, he has been taking medication for some years, so we cannot rule ADHD out, but there is clearly insufficient evidence to support the diagnosis, based on the present documentation.

Functional Limitations, Accommodation Needs, and Conclusions
The same factors in Mr. Silverman's documentation that undermine his diagnoses also undermine any claims of functional limitations. We lack credible, objective evidence that Mr. Silverman is limited in his ability to read or concentrate, or to engage in any other major life activities. Similarly, we lack credible, objective evidence showing that he cannot access tests as well as most people under standard time limits. Indeed, the one real-world test that we have a record of (the MCAT) showed that on all of the reading-based sections (i.e., the sections where timed reading comprehension was an *access skill*, just as it is on Step 1 of the USMLE), his performance was well above the average range—better than most people applying to medical school—without any accommodations.

---

[3] I should note that Mr. Silverman's evaluators have supported the learning disability diagnosis by comparing his reading scores to his IQ score. This technique has been shown to be unreliable and invalid, and the current official diagnostic criteria for learning disabilities do not permit such a technique to be used. In addition, I would note that the 2012 evaluation measured Mr. Silverman's reading skills by comparing him to educational peers rather than age peers, and the current criteria for diagnosing learning disabilities require that the latter be used. Interestingly, when he was compared to age peers (in the 2005/6 evaluation), Mr. Silverman did not obtain any below-average reading scores.

Page 3

Despite Mr. Silverman's remarkably high performance on the MCAT, and his achievements more generally, he does not seem satisfied, and indeed, one of his evaluators commented on his high level of self-criticism. He reports that his performance would be better if he had additional time to complete tests, and he might be correct—research shows that many nondisabled individuals improve performance on time-pressured tests when they are given additional time. However, there is clearly no credible, objective evidence that Mr. Silverman requires any accommodations to access Step 1 of the USMLE as well as most people can; those of Mr. Silverman's self-reports and diagnostic test scores that seem to suggest otherwise are simply *not* credible.

Benjamin J. Lovett, Ph.D.