# TAB A



National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3102

215-590-9500 phone
www.nbme.org

**Confidential**

August 30, 2016

102890          5-304-197-6
'enial -Decision Letter (

Justin R. Silverman
45 Sycamore Ave, Apt 1315
Charleston, SC 29407

RE: USMLE Step 1                    USMLE ID#: 5-304-197-6

Dear Mr. Silverman:

We have thoroughly reviewed the documentation provided in support of your request for test accommodations for the United States Medical Licensing Examination (USMLE) Step 1. We conducted an individualized review of your request in accordance with the guidelines set forth in the amended Americans with Disabilities Act (ADA).

In your personal statement you write, *"I have a developmental reading disorder and ADHD, in addition to other conditions less applicable to this accommodations request (e.g., math disorder, anxiety disorder). Because my reading impairment so strongly and single-handedly necessitates extended test time, it will be my focus in this statement...I have repeatedly found myself unable to complete exams within time limits and spend far more than the average student on written or reading assignments...While my total [SAT] score of 1420 was respectable, I have always resented looking less intelligent for having run out of time. It was not until years later in college that I discovered accommodations at the suggestion of a professor...I had been multiply advised against applying for accommodations by my Skidmore College Premedical Advisory Board, my mentor, Dr. Peter Moley, MD, and both my father and sister--two Washington University School of Medicine graduates. While my MCAT practice scores fell between 39 and 42(>99th percentile), I heeded their advice for my first attempt and managed to achieve a 35 (95th percentile) without accommodations, despite having left a substantial percentage of the exam blank. While this difference in score likely came into play with my father and sister's alma mater, I was fortunate that it did not prevent my acceptance at MUSC. Upon arriving at medical school, I did not begin the months-long process of evaluation for accommodations at MUSC until the end of the first semester when the need became obvious. However, they were approved until halfway through the second semester with insufficient time to rescue one of my failing class grades. Since their enactment, I have had to work hard but I am capable of finishing my exams-usually with just seconds to spare after~10 hours of testing! In structured academic environments with ever-increasing workloads, formal accommodations have become a matter of survival."*

In a February 2012 report of testing conducted when you were a 27-year-old first year medical student, Shantee Foster, Ph.D. and Alice Libet, Ph.D. write that you self-referred for re-evaluation of learning difficulties and medication management. Drs. Foster and Libet conclude, *"Take [sic] together, Mr. Silverman's performance indicates difficulties in the area of reading comprehension and reading speed. In addition, he has demonstrated difficulty completing tasks within a time limit. These results are consistent with a diagnosis of Reading Disorder and Attention Deficit-Hyperactivity Disorder, Combined Type."*

According to the *Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5)*, a specific learning disorder is a neurodevelopmental disorder that first manifests during the years of formal schooling (i.e., the developmental period) and is characterized by persistent and impairing difficulties with learning foundational academic skills. In adults, persistent difficulty refers to ongoing difficulties in literacy skills that manifest during childhood or adolescence, as indicated by cumulative evidence from school reports, evaluated portfolios of work,

or previous assessments. No school records were provided to show a developmental history of problems with reading or learning that impacted your academic functioning or limited a major life activity. Your evaluators write, *"He stated that he did not need accommodations during his freshman year because it was a review of high school, but noted that his sophomore year was more difficulty due to new information. He stated that he did not have accommodations in grade school and earned A/B's."*

A key diagnostic feature of a specific learning disability is that the individual's performance of the affected academic skill(s) is well below average for age (*DSM-5* Criterion B). The conclusions of your evaluators notwithstanding, your overall performances on a range of cognitive and academic tasks administered in 2006 and 2012 are well within the range of average functioning and do not demonstrate impairments that limit any major life activity.

Like learning disorders, ADHD is a neurodevelopmental disorder that begins in childhood. Even if not formally diagnosed in childhood, the essential feature of ADHD is a persistent pattern of inattention and/or hyperactivity-impulsivity that interferes with functioning or development. Your documentation does not demonstrate a record of chronic and pervasive problems with inattention, impulsivity, behavioral regulation, or distractibility that impaired your functioning during your development or currently. No records were provided via formal faculty/supervisor feedback, job performance evaluations, or through other sources of information verifying that you have shown pervasive problems managing daily demands for attention, concentration, or organization.

Regarding your performances on timed standardized tests, your evaluators report that you earned an Above Average range SAT score of 1420 under standard conditions. The records provided show that you earned an MCAT Total score of 35M under standard conditions in 2010, better than 96% of a national sample of medical school applicants. Your MCAT Verbal Reasoning score of 11 is better than 95% of individuals who took the MCAT that year. Overall, these data do not demonstrate impaired functioning or that standard testing conditions are a barrier to your access to the USMLE.

The ADA defines disability as a physical or mental impairment that substantially limits one or more major life activities. Accommodations are intended to provide access to the USMLE testing program for individuals with a documented disability as defined by the ADA. A diagnostic label, in and of itself, does not establish coverage under the ADA, nor does prior receipt of accommodations for a particular activity guarantee that identical accommodations are indicated or will be available in all future settings and circumstances. The ADA covers individuals who are substantially limited in a major life activity. Determination of whether an individual is substantially limited in functioning as compared to most people is based on assessment of the current impact of the identified impairment.

Your documentation does not demonstrate a substantial limitation in a major life activity as compared to most people or that the requested accommodations are an appropriate modification of your USMLE Step 1 test administration. Therefore, after a thorough review of all of your documentation, I must inform you that we are unable to provide you with the requested accommodations.

Sincerely,

*Catherine Farmer*

Catherine Farmer, Psy.D.
Director, Disability Services
ADA Compliance Officer, Testing Programs