IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

|  |  |  |
|---|---|---|
| JUSTIN SILVERMAN | ) | |
| | ) | |
| | ) | Civil Action No. 2:16-cv-03686-RMG |
| Plaintiff, | ) | |
| | **)** | |
| vs. | ) | **PLAINTIFF'S REPLY MEMORANDUM** |
| | ) | **IN SUPPORT OF MOTION FOR** |
| NATIONAL BOARD OF MEDICAL | ) | **PRELIMINARY INJUNCTIVE** |
| EXAMINERS | ) | **RELIEF** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTIVE RELIEF

The Plaintiff, Justin Silverman, replies to the Defendant National Board of Medical Examiners ("NBME") as follows:

### I. The Defendant's Decision to Deny Plaintiff Accommodation Ignores Implementing Regulations Directly on Point

The Defendant's Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction fails to account for the fact that the Department of Justice has promulgated specific regulations that govern accommodations for disabled individuals on licensing examinations. These regulations speak directly to the Defendant's failure to comply with its statutory obligations to Plaintiff.

Congress has explicitly vested the Department of Justice with the authority to promulgate regulations implementing Title III of the ADA that the Defendant is subject to. 42 U.S.C. § 12186(b); 42 U.S.C. § 12189 (stating that "[A]ny person that offers examinations or courses related to . . . licensing . . . shall offer such examinations or courses in a place and manner

1

accessible to persons with disabilities or offer alternative accessible arrangements for such individuals."). As specified in these regulations, the purpose of testing accommodations is to ensure that the "examination results accurately reflect the individual's aptitude or achievement level or whatever other factor that the examination purports to measure, rather than reflecting the individual's impaired sensory, manual or speaking skills." 28 C.F.R. § 36.309(b)(1)(i). Additionally, the regulations implementing Title III of the ADA specifically state that changes in the length of time permitted for completing an examination may be an appropriate accommodation. 28 C.F.R. § 36.309(b)(2).

The Justice Department advises in its guidance on the subject that when an applicant has demonstrated a consistent history of a diagnosis of a disability, the testing entity should generally accept the documentation provided by a qualified professional "who has made an individualized assessment of the applicant and generally should grant the requested accommodation," *without further inquiry*. 28 C.F.R. pt. 36, App. A (emphasis added). In explaining its inclusion of this language, the Department specifies:

> The Department's view is that applicants who submit appropriate documentation, e.g., documentation that is based on the careful individual consideration of the candidate by a professional with expertise relating to the disability in question, should not be subjected to unreasonably burdensome requests for additional documentation. While some testing commenters objected to this standard, it reflects the Department's longstanding position. When an applicant's documentation demonstrates a consistent history of a diagnosis of a disability, and is prepared by a qualified professional who has made an individualized evaluation of the applicant, there is little need for further inquiry into the nature of the disability and generally testing entities should grant the requested modification, accommodation, or aid . . . .
> [T]here is no justification for repeatedly subjecting people to expensive testing regimens simply to satisfy a disbelieving industry. This is particularly true for adults with, for example, learning disabilities such as dyslexia, a persistent condition without the need for retesting once the diagnosis has been established and accepted by a standardized testing agency . . . [T]hese additions to the regulation are necessary because the Department's position on the bounds of

>appropriate documentation . . . has not been implemented consistently and fully by organizations that administer tests.

*Id.*

Despite the Defendant's unfounded assertions otherwise, the Plaintiff has provided documentation and credible, objective evidence that demonstrates a consistent history of a diagnosis of a disability. In fact, Plaintiff has provided documentation to the Defendant from several qualified professionals that have expertise diagnosing and treating Plaintiff's disabilities, ADHD and developmental reading disorder. The inclusion of one such evaluation by a qualified professional should have been sufficient for the Defendant's assessment of Plaintiff's request and it was required to grant the requested accommodation without further inquiry. *See id.* Instead, however, the NBME refused to grant the Plaintiff time and one-half on the USMLE Step I in the face of multiple neuropsychological evaluations and assessments dating back more than a decade, in a particularly egregious violation of the Department of Justice's mandate.

The Defendant asserts that Mr. Silverman has presented no objective credible evidence either that he "struggled with reading and learning during his formative years" or that he suffers from any "current functional impairments." Def. Memo in Opp. 2, ECF No. 14. This is a remarkable statement that completely ignores the results and conclusions of the numerous reports, scores, evaluations, and assessments that the Plaintiff has already provided to both the Court and the Defendant – not to mention Mr. Silverman's own sworn testimony that he suffers from these disabilities. *See* Affidavit of Justin Silverman at 1, ECF No. 6-2 ("Silverman Aff.").

The Plaintiff has provided to the NBME a 2005 and 2006 neuropsychological evaluation performed by Dr. Danforth, which explicitly includes a diagnosis of both ADHD, Combined Type and Reading Disorder. *See* Complaint, Exhibit 1 at 11. Mr. Silverman also provided the results of a 2012 testing report performed by Dr. Shantee Foster and supervised by Dr. Alice

3

Libet, the Director of Counseling and Psychological Services at MUSC. *See* Complaint, Exhibit 1 at 16. Like the evaluation performed by Dr. Danforth, this report concluded that Mr. Silverman's comparative scores indicated that he had a "significant learning disability." Affidavit of Dr. Alice Libet, Exhibit 1 at 2 ("Libet Aff."). The 2012 evaluation performed while the Plaintiff was a medical student at MUSC clearly demonstrates that his abilities to read and learn are substantially limited. His abilities in these two major life activities are so profoundly impacted that the results of the Nelson-Denny test in this report showed that Mr. Silverman placed in the 1st percentile for the time comprehension score and in the 3rd percentile for his reading rate score. *See* Libet Aff. at 2-3. At the same time, Mr. Silverman placed in the 99th percentile on Wechslet Adult Intelligence Scale (WAIS) administered, which placed him in the "very superior range." *Id.* at 2.

The Defendant relies on the opinion of Dr. Benjamin Lovett to explain away that these low scores on the Nelson-Denny were "anomalous, given Mr. Silverman's very high score on the MCAT verbal reasoning test, which measures similar skills." Def. Memo in Opp. at 23; Declaration of Dr. Benjamin Lovett at 5-6, ("Lovett Decl."). However this line of reasoning is fundamentally flawed and has been expressly rejected by the Department of Justice:

> In determining whether an individual has a disability under the "actual disability" or "record of" prongs of the definition of disability, the focus is on how a major life activity is substantially limited, and not on what outcomes an individual can achieve. For example, **someone with a learning disability may achieve a high level of academic success, but may nevertheless be substantially limited in the major life activity of learning because of the additional time or effort he or she must spend to read, write, or learn compared to most people in the general population**.

29 C.F.R. § 1630(j)(4)(iii) (emphasis added); *Testing Requirements*, *infra,* Exhibit 2 at 4. The fact that Mr. Silverman obtained a "very high score" on the MCAT while unaccomodated therefore should not preclude his accommodation by the Defendant. Unquestionably, Dr.

4

Lovett's conclusion that the results from the Nelson-Denny "cannot be taken at face value" based upon Mr. Silverman's success on the MCAT, constitutes a clear violation of this regulation. Lovett Decl. at 6. Dr. Steven Zecker, the independent professional reviewer that the NBME relied upon in October to deny Plaintiff's request for reconsideration, also impermissibly uses Mr. Silverman's previous unaccomodated SAT and MCAT scores to discount the results on the Nelson-Denny test[1]. *See* Def. Memo in Opp., Tab B at 5, ECF No. 14-3. This regulation explicitly recognizes that it is not inconsistent with a diagnosis of a learning disability or ADHD for a student to still display superior levels of achievement. 29 C.F.R. § 1630(j)(4)(iii). *See also* Libet Aff. at 3; *Testing Requirements*, *infra,* Exhibit 2 at 4. Thus, these "independent professional reviewers" that the NBME relies upon in opposing the Plaintiff's request for a preliminary injunction rely upon standards that did not survive the passage of the Americans with Disabilities Act Amendments of 2008 ("ADAAA"), violate applicable regulations, and cannot stand upon review by this Court[2].

---

[1] Additionally, Plaintiff's decision to not seek accommodations on earlier standardized exams, such as the SAT and MCAT, should not preclude him from obtaining such an accommodation here, even if the USMLE Step I is the first standardized test for which he has ever sought accommodations. *See ADA Requirements: Testing Accommodations*, U.S. Dep't of Justice, Civil Rights Division, Disability Rights Section, *available at* https://www.ada.gov/regs2014/testing_accommodations.html, Exhibit 2 hereto at 6.

[2] It is also noteworthy that one of the "independent professional reviewers" used by the NBME, Dr. Lovett, has openly criticized the Department of Justice's regulations implementing the ADAAA as well as their narrative guidance, warning that the Department of Justice places too much trust in the accommodations expertise of prior accommodations and prior clinical professionals' opinions. Benjamin J. Lovett, PhD, *Testing Accommodations Under the Amended Americans with Disabilities Act: The Voice of Empirical Research*, J. of Disability Pol. St. at 1, 5, Exhibit 3 hereto. While Dr. Lovett is of course free to criticize the regulations and guidance, his opinion in reviewing Mr. Silverman's request obviously failed to apply any of the Department of Justice standards that he very clearly disagrees with. Dr. Lovett has also expressed the view in one of his articles, that he clearly followed here, that giving extended time on exams may not truly even be a valid or effective way to accommodate disabled individuals. Lovett et al., *Extended Time as a Testing Accommodation for Students with Reading Disabilities: Does a Rising Tide Lift All Ships?*, J. of Psychoeducational Assesment 222-23 (2008), Exhibit 4

Additionally, the views expressed by Drs. Lovett and Zecker that dispute Plaintiff's abilities to read and learn should be viewed as suspect, at best, by the Court. There is no evidence to indicate that the NBME actually relied upon either professional reviewer's report in its initial August 30, 2016 decision to deny the Plaintiff an accommodation. *See* Def. Memo in Opp., Denial Decision Letter, ECF No. 14-8. Neither reviewer's declaration asserts that they reviewed Plaintiff's request for the specific purpose of this initial decision. On the contrary, Dr. Zecker was consulted only after the request for reconsideration of the denial of Plaintiff's request was made in October, while Dr. Lovett prepared a report in June of 2016. *See* Def. Memo in Opp., Letter from Dr. Steven Zecker at 1, ECF No. 14-3; Lovett Decl. at 5. The inclusion of the two reviewers' reports and the opinions expressed therein are *post hoc* rationalizations used for the purpose of explaining the Defendant's unlawful conduct after it has already been haled into court.

Additionally, the NBME completely discounts the findings of a need for accommodation in the form of extended test time found by the multiple physicians who actually interviewed Mr. Silverman, while relying upon two reviewers' opinions that have not even met the Plaintiff. The Department of Justice guidelines heavily favor an individualized assessment or evidence that a "qualified professional *has individually and personally evaluated the candidate* as opposed to simply considering scores from a review of documents." 28 C.F.R part 36, Appx. A. The guidelines also state that this need for an individualized evaluation is "particularly important in

---

hereto. Although time and space constraints prevent an extensive review of this article, even a cursory review of this article shows that Dr. Lovett is extremely disinclined to *ever* favor granting extended time on a timed-test environment in any circumstance – regardless of whether the individual is disabled or not. *See id.* However, the determination of whether granting extended time on an exam is a reasonable or effective accommodation is not Dr. Lovett's to make; the Department of Justice's regulations explicitly state that changes in the length of time permitted for completing an examination may be an appropriate accommodation. 28 C.F.R. § 36.309(b)(2).

the learning disabilities context, where proper diagnosis requires face-to-face evaluation," and that "[r]eports from experts who have personal familiarity with the candidate should take precedence over those from, for example, reviewers for testing agencies, who have never personally met the candidate..." *Id.* The Defendant here chose to discount the diagnoses, accommodations, and recommendations of Drs. Danforth, Foster, and Libet, all of whom performed individualized assessments on Plaintiff in favor of Drs. Lovett and Zecker, neither of whom have ever met the Plaintiff.

The Defendant also incorrectly continues to rely upon the lack of formal accommodations during his formative years to justify its denial of Mr. Silverman's request for accommodation, while at the same time discounting the evidence that he has presented that supports his assertion that he received informal accommodations throughout. Def. Memo in Opp. At 21 ("[T]here is no *objective* evidence of any such accommodations in the record or any functional limitations experienced by Mr. Silverman during this time – not a single report card, or teacher report, or any other indicia that Mr. Silverman experienced significant challenges in reading during his formative years."). However, it was *because* Mr. Silverman's teachers at his grade and middle school allowed him informally to complete assignments on his own time that he was able to succeed so well during these years. *See* Pl.'s Memo in Support of Pr. Inj. at 11, ECF No. 6-1. Naturally, there would be no indication on a report card or notation on a teacher report that Mr. Silverman was struggling if these informal accommodations were effective in helping him to cope with his disabilities.

The NBME is no doubt aware that students who suffer from learning disabilities or ADHD "often receive undocumented accommodations such as time to complete tests after school or at lunchtime, or being graded on content and not form or spelling of written work" in

7

lieu of a diagnosis and formal accommodations at an early age. 28 C.F.R. § 36, App. A. *See also* Libet Aff. at 3. Ironically, Dr. Zecker himself notes in an earlier article authored that these disabilities often go undiagnosed in gifted children in their early years. *See Underachievement and Learning Disabilities in Children Who Are Gifted*, Exhibit 5 hereto at 5 ("Due to some of the characteristics of gifted children (most notably their high levels of intelligence), however, gifted children often are not identified as [having] LD or ADHD as accurately or as early in their lives as their non-gifted peers."). Accordingly, the Plaintiff should not be penalized either for failing to be diagnosed at an early age or for obtaining informal accommodations in his formative years.

## II. The Legislative History of the ADAAA Demonstrates that Plaintiff is Entitled to the Reasonable Accommodation Requested.

While the Defendant acknowledges that the ADAAA was intended to broaden the definition and coverage of the term "disability," it continues to fail to correctly apply the more recent standard to Mr. Silverman's case. *See* Def. Memo in Opp. at 15-16. Furthermore, the NBME fails to address the fact that Congress intended to reject the line of reasoning and cases that it relies upon in its opposition to preliminary injunctive relief.

In order to qualify as "disabled" under the ADA, a plaintiff must show that he has a "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). The ADAAA states that "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting," and the "threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis." 29 C.F.R. § 1630.2 (j)(1)(ii-iii). The ADAAA also makes clear that the 2008 amendments require a lower

8

degree of functional limitation than was allowed by the previous "substantially limits" standard. 29 C.F.R. § 1630.2 (j)(1)(iv).

Mr. Silverman suffers a substantial impairment in the major life activities of reading and learning as a result of his reading disorder and ADHD. The Defendant does not dispute that reading and learning constitute major life activities, but instead argues that he has not shown that he is likely to succeed on the merits of his ADA claim because he has not established that he is "disabled" within the meaning of the ADA. Def. Memo in Opp. at 20. Indeed, the Defendant argues that Mr. Silverman's "records affirmatively demonstrate that Mr. Silverman is *not* disabled within the meaning of the ADA." *Id.* In support of this argument, the Defendant asserts that Mr. Silverman is not substantially limited in reading or learning as compared to most people in the general population, relying on Mr. Silverman's success in high school, the SAT and the MCAT. *Id.* at 22.

Again, the Defendant is unlawfully relying on the Plaintiff's past academic successes in order to preclude him from obtaining the accommodation he seeks on the USMLE exam. This approach was explicitly rejected by Congress in the passage of the ADAAA: "[I]t is critical to reject the assumption that an individual who performs well academically or otherwise cannot be substantially limited in activities such as learning, reading, writing, thinking, or speaking." H.R. REP. NO. 110-730, pt. 1, at 10 (2008). The House Committee on Education and Labor further clarified regarding individuals with specific learning disabilities:

> In particular, some courts have found that students who have reached a high level of academic achievement are not to be considered individuals with disabilities under the ADA, as such individuals may have difficulty demonstrating substantial limitation in the major life activities of learning or reading relative to "most people." . . . The Committee believes that the comparison of individuals with specific learning disabilities to ''most people'' is not problematic unto itself, but requires a careful analysis of the method and manner in which an individual's impairment limits a major life activity. For the majority of the population, the

9

> basic mechanics of reading and writing do not pose extraordinary lifelong challenges; rather, recognizing and forming letters and words are effortless, unconscious, automatic processes. Because specific learning disabilities are neurologically-based impairments, the process of reading for an individual with a reading disability . . . is word-by-word, and otherwise cumbersome, painful, deliberate and slow—throughout life. The Committee expects that individuals with specific learning disabilities that substantially limit a major life activity will be *better protected* under the amended Act.

*Id.* at 10-11 (emphasis added).

Therefore, the manner and method in which the Plaintiff reads and learns should be compared to most people. *See id.* Mr. Silverman's own testimony, although predictably deemed by the Defendant as not credible or objective evidence, describes the painstakingly slow manner in which he processes the written language. *See* Pl.'s Memo in Supp. of Prelim. Inj. at 4. *See also* Complaint, Exhibit 1 at 1. Additionally, Dr. Danforth's evaluation report describes this struggle: "Cognitively, Justin has significant difficulty accessing and organizing auditory and visual aspects of language." *Id.* at 9.

The ADAAA and its implementing regulations on licensure testing were introduced precisely to prevent this kind of conduct from a leader of a "disbelieving industry" that unlawfully rejects requests for accommodations while relying on the opinion of "independent" reviewers who use standards more restrictive for "disabled" than the ADAAA contemplates, particularly where individuals with learning disabilities are concerned. *See* 28 C.F.R. § 36, App. A. The NBME has remained steadfast in its refusal to broaden *its* definition of "disabled" following the passage of the ADAAA, often resulting in inappropriate and unwarranted refusals of reasonable accommodation requests in many cases. *See* Libet Aff. at 1 ("It has been my experience while at MUSC that the National Board of Medical Examiners has been resistant to providing accommodations to our medical students with learning disabilities. In my opinion, this resistance has been inappropriate and unwarranted in many of these cases.").

Perhaps the most troubling position adopted by the NBME in its argument that the Plaintiff has not shown that he is "disabled" within the meaning of the ADAAA is that Mr. Silverman's is not even a "borderline case" of being disabled. Def. Memo in Opp. at 20. The Defendant adopts this position even light of the fact that Mr. Silverman included the following in his request for accommodation: psychological results from both undergraduate school and medical confirming the diagnoses of reading disorder and ADHD and the need for extended test time on exams, a lengthy personal statement detailing how his disabilities greatly impact his daily life, and certification of formal accommodations of extended test time in both medical and undergraduate schools. *See* Silverman Aff. at 1-2; Complaint, Exhibit 1. If Mr. Silverman cannot be considered even a "borderline disabled" individual by the NBME, then the error lies not with the Plaintiff, but with the unreasonable and unlawful standards that the NBME continues to apply.

## Conclusion

Therefore, the Plaintiff requests that the Court enter its declaratory judgment that the Defendant has violated its obligations to the Plaintiff under the ADA as described above and enter temporary and preliminary injunctions which enjoin the Defendant from its continued violation of the ADA and from failing to provide the Plaintiff with the reasonable accommodations of extension of timed test periods by one half their length, and reduced distraction test environment, so that he might take the USMLE Step I prior to December 31, 2016.

All of which is respectfully submitted.

S/Allan R. Holmes
Allan R. Holmes, Federal I.D. #1925
Cheryl H. Ledbetter, Federal I.D. #11446

Suite 110, 171 Church Street
Charleston, South Carolina 20401
Phone: (843) 722-0033
Facsimile:  (843) 722-0114

ATTORNEYS FOR PLAINTIFF

December 9, 2016
Charleston, South Carolina