# Exhibit 1

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

AFFIDAVIT

I am Alice Q. Libet. I make this affidavit of my own knowledge, information, and belief.

I obtained a Master's degree in Experimental Psychology and a Ph.D. in Clinical Psychology from the University of Georgia. I have been licensed as a psychologist by the State of South Carolina since 1983. I am employed by the Medical University of South Carolina. I joined the MUSC Department of Psychiatry and Behavioral Sciences in 2000 and became the Director of Counseling and Psychological Services (CAPS) in 2009. I have served on the Executive Committee of the South Carolina Academy of Professional Psychologists and the South Carolina Psychological Association. I have also been the secretary/treasurer and the President of the South Carolina Academy of Professional Psychologists.

Among the services provided by CAPS is evaluation of MUSC students for testing accommodations. I have evaluated many MUSC students with regard to their need for testing accommodations, and my expertise as a psychologist includes evaluating students and determining whether they suffer from learning disabilities. My work requires me to use my expertise to determine the severity of students' learning disabilities, and whether the students should be afforded testing accommodations.

It has been my experience while at MUSC that the National Board of Medical Examiners (NBME) has been resistant to providing accommodations to our medical students with learning disabilities. In my opinion, this resistance has been inappropriate and unwarranted in many of these cases.

1

In keeping with our responsibilities and under my supervision, Counseling and Protective Services evaluated Justin Silverman on the dates of February 14, February 29, and March 21, 2012. Our evaluations resulted in a Testing Report. Portions of this Report are attached as Exhibit One. They are incorporated in this affidavit by reference.

Our evaluation process is in keeping with the standard methodology for diagnosing and assessing learning disabilities.

It is my opinion with reasonable professional certainty that Justin Silverman suffers from the learning disabilities diagnosed by our Report, and that he requires accommodations of the type we have recommended in our Report.

Our Report supports my opinion. We listed therein some of the testing upon which relied. As noted in our report, on the Wechsler Adult Intelligence Scale (WAIS), Mr. Silverman achieved a Full Scale IQ score of 141 (99th percentile), placing him in the very superior range.

We administered the Woodcock-Johnson Tests of Achievement III (WJ-III-Reading subtests). These tests allow us to compare an anticipated performance based upon full scale IQ with a score that is scaled to actual performance. In every test category, Mr. Silverman performed significantly below the anticipated performance based upon full scale IQ.

We administered the Nelson-Denny Reading Test (Form G). Three of the categories allow a comparison between scores obtained with a "Standard Time" and scores obtained with "Extended Time." These comparisons are very strong indicators of students with learning disabilities, and Mr. Silverman's comparative scores indicate that he has a significant learning disability.

For example, Mr. Silverman's standard time comprehension score is in the 1st percentile, and his grade equivalent is indicated at 6.3. This comprehension score is tested by requiring the

2

reading of long passages. His standard time vocabulary score is 12th percentile, and his grade equivalent is indicated at 13.4. The standard time total score is 2nd percentile, and his grade equivalent is indicated at 9.9.

When extended time testing is used, his vocabulary score is in the 80th percentile, and his grade equivalent is indicated at 18.4. His comprehension score is in the 47th percentile, and his grade equivalent is indicated at 16.6. His total score is in the 70th percentile, and his grade equivalent is 18.1.

Mr. Silverman's reading rate score was in the 3rd percentile. This reading rate is a weakness that greatly affected his performance using the standard time administration.

Our diagnosis and recommendations for Mr. Silverman are corroborated and supported by the other information we reviewed. Some of this is discussed in our Report.

That Mr. Silverman did not require formal accommodation during his pre-college education is not inconsistent with his diagnosis or the need for formal accommodations of his disability. Informal accommodations are often provided students during their pre-college years, and some individuals are able to develop mechanisms for coping with, or reducing the apparent effect of, learning disabilities in pre-college environments.

Also, the fact that Mr. Silverman has shown superior levels of achievement is not inconsistent with his diagnosis or the need for formal accommodations of his disability. For example, various testing formats reduce or exacerbate the effects of various reading disabilities. Mr. Silverman's learning disabilities cause him to read and comprehend at an extremely slow rate, as his reading rate score on the Nelson-Denny Reading indicates. This condition is particularly pronounced in a timed test environment such as on the exams the NBME administers. Perhaps more importantly, a standardized test score, e.g., SAT or MCAT, is not

3

determinative of whether Mr. Silverman suffers from a learning disability. Mr. Silverman is of very superior intelligence. His learning disability does not change that fact. Rather, the question is whether his disability significantly affects his ability to embrace and respond to the information upon which he is to be tested. As to that question, his evaluations leave no doubt. Providing accommodations such as time and one-half on an exam is a common and effective way to combat the effects of the learning disabilities that Mr. Silverman has been diagnosed with. He should be provided extended time for the NBME testing, and a reduced distraction environment. Only accommodations will give him the best opportunity to achieve his potential.

Further your deponent sayeth not.

Alice Q. Libet

SWORN before me this 8
day of December, 2016.

_Suzanne W. Smith_ [L.S.]
Notary Public for South Carolina
My Commission expires:

(Notary Seal: SUZANNE W. SMITH, NOTARY PUBLIC, MY COMMISSION EXPIRES 10/21/2019, SOUTH CAROLINA)

4