IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| JUSTIN SILVERMAN | ) | |
| | ) | |
| | ) | Civil Action No. 2:16-cv-03686-DCN |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **PLAINTIFF'S REPLY MEMORANDUM** |
| | ) | **IN SUPPORT OF MOTION TO** |
| NATIONAL BOARD OF MEDICAL | ) | **FILE EXHIBIT ONE TO COMPLAINT** |
| EXAMINERS | ) | **UNDER SEAL** |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO SEAL**

The Plaintiff, Justin Silverman, replies to the Opposition of his Motion to Seal by Defendant National Board of Medical Examiners ("NBME") as follows:

**I. Plaintiff's Motion to Seal Appropriately Complies with ECF filing Rules**

The Defendant's Memorandum in Opposition to Plaintiff's Motion to Seal ignores a controlling Rule set out within the ECF filing Rules. Rule 13.4.3[1], Protection of Other Sensitive Information, requires medical records to be filed in redacted form or "be presented for 'in

---

[1] 13.4.3 Protection of Other Sensitive Information
Attorneys and parties shall exercise caution and shall consider redaction or consider filing a motion to seal if any of the following information is referenced in a document to be filed: (a) any personal identifying number, such as driver's license number; (b) **medical records, treatment records, or diagnoses**; (c) employment history; (d) individual financial information; (e) proprietary or trade secret information; (f) information regarding an individual's cooperation with the government; (g) information regarding the victim of any criminal activity; (h) national security information; or (i) sensitive security information as described in 49 U.S.C. § 114(s). (j) information or materials which would otherwise be inappropriate for display or distribution through the PACER or ECF System (including materials with graphic, pornographic, obscene, or scandalous content.) Items (a) through (d) and (j) above must be afforded maximum protection from public dissemination. A document containing this information **shall** be filed electronically in a redacted version with all the protected information removed or be presented for "in camera" review with a motion to seal. (emphasis added)

1

camera' review with a motion to seal." The medical records in Exhibit 1 to the Complaint fall under the protection in 13.4.3(b) and thereby must either be redacted or sealed. Redaction of these particular records would be nonsensical. Each line on every page of the documents contains information that would require redaction. Therefore, plaintiff made a motion to seal the records.

Reading the ECF Rule in conjunction with Local Rule 5.03[2], plaintiff determined that the ECF Rule is a "governing rule" pertaining to the filing of medical records. Rule 5.03 only requires the following of the mandatory procedure prescribed therein in the absences of "a governing rule, statute, or order…" Consequently, plaintiff was not required to follow the procedure of Rule 5.03 in moving to file the medical records under seal. The ECF Filing Rules specifically state that they are not meant to supersede the Federal Rules of Civil Procedure or the Local Rules of this district. See ECF Filing Rule 2.6. However, nothing in ECF Rule 13.4.3 supersedes Local Rule 5.03 in any way. Instead, it is, as Rule 5.03 contemplates, an outside "governing rule" that alters how Local Rule 5.03 is applied.

Plaintiff filed a Motion and Memorandum to seal Exhibit 1 to the Complaint. The memorandum refers to the documents within the Exhibit as "confidential medical records" and states that the Complaint and accompanying Memorandum support the Motion. Because there is a governing rule that requires the submission of medical records under seal, plaintiff was not required to follow the procedure in Local Rule 5.03.

Other courts have deemed medical records confidential and appropriate for filing under seal. *Wright v. Darby*, No. 4:16-218-TLW-TER, 2016 U.S. Dist. LEXIS 138291, at *2 (D.S.C.

---

[2] 5.03: Filing Documents Under Seal. Absent a requirement to seal in the governing rule, statute, or order, any party seeking to file documents under seal shall follow the mandatory procedure described below…

Oct. 5, 2016); *Cumberland Cnty. Hosp. Sys. v. Burwell*, No. 5:15-CV-317-D, 2016 U.S. Dist. LEXIS 49273, at *3 (E.D.N.C. Apr. 11, 2016); *Roberson v. Paul Smith, Inc.*, No. 5:07-CV-284-F, 2011 U.S. Dist. LEXIS 16553, at *34 (E.D.N.C. Feb. 18, 2011). While there is discussion and reliance upon the Health Insurance Portability and Accountability Act (HIPAA) within these decisions, the sealing of medical records does not require a party to show that not sealing the records would violate HIPAA. Rather, the fact that medical records are considered confidential under HIPAA supports the general proposition that personal medical information should be kept confidential. Thus, in *Roberson v. Paul Smith, Inc.*, the individual plaintiff was allowed to file the medical records under seal even though HIPAA places no prohibition on patient disclosures of their own medical records[3]. *Roberson v. Paul Smith, Inc.*, No. 5:07-CV-284-F, 2011 U.S. Dist. LEXIS 16553, at *34 (E.D.N.C. Feb. 18, 2011).

With that said, plaintiff acknowledges that *some* of the documents in Exhibit 1 are redactable. Plaintiff has attached a redacted copy of those documents. Plaintiff will serve both redacted and non-redacted copies on counsel for defendant on the date of the filing of this Reply. Plaintiff has filed these redacted materials as a replacement for Exhibit 1 in the ECF system. Contemporaneously with the filing of this Reply, Plaintiff will submit both this replacement Exhibit 1 and the medical records plaintiff seeks to file under seal to the Court for *in camera* review.

Defendant makes an argument that the First Amendment requires these medical records to be filed unsealed. As a general matter, that argument fails. *See Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 122 (D. Md. 2009) (medical records are outside the scope of the First

---

[3] The Health Insurance Portability and Accountability Act (HIPAA) applies, generally, to three types of entities: (1) health care providers, which transmit health information electronically; (2) health plans, such as health insurers and HMOs; and (3) health care clearinghouses. *See* 45 C.F.R. §§ 160.102 and 160.103.

Amendment disclosure requirement), *citing Briggs v. Marriott Int'l, Inc.*, 368 F. Supp. 2d 461, 472 (D. Md. 2005). There are compelling governmental and privacy interests in protecting medical records. *See Mears v. Atl. Se. Airlines, Inc.*, No. 5:12-CV-613-F, 2014 U.S. Dist. LEXIS 142571, at *10 (E.D.N.C. Oct. 7, 2014).

What the Defendant means to contend is that the Plaintiff's medical records are essential to this Court's determination of the Plaintiff's Motion for a Preliminary Injunction, and thus must be a part of the public record to assure compliance with the First Amendment. This contention again evidences the Defendant's misunderstanding of the substantive law which governs a consideration of the merits of the Plaintiff's motion. The Plaintiff's motion is not to be determined by either a word by word review of the Plaintiff's medical records, or by the Defendant's word by word critique those records. Rather, Plaintiff's motion is to be determined on the basis of whether the Plaintiff has done what is required to obtain disability accommodation under the legal requirements of the ADAAA and the accompanying regulations of the United States Department of Justice. This Court will decide which portions of the Plaintiff's medical records are pertinent to that determination. The Plaintiff's attempt to file his medical records under seal was intended to preserve the confidentiality of such of the Plaintiff's medical records as are not required for the Court's decision.

This is a case which is specifically governed by the regulations promulgated by the Department of Justice pursuant to its authority under the ADAAA. Those regulations prohibit the NBME from making the wholesale assault on the plaintiff's medical documentation that the NBME is attempting in this case. Insofar as relevant, the Department of Justice regulations were proposed on June 17, 2008 (73 Fed.Reg. 34508), and made final on September 15, 2010, to become effective March 15, 2011 (75 Fed.Reg. 56236). The regulations are entitled to *Chevron*

4

deference. *Bragdon v. Abbott,* 524 U.S. 624, 646 (1998) ("As the agency directed by Congress to issue implementing regulations * * * and to enforce Title III in court, * * * the Department's views [in its regulations] are entitled to deference.") (citing *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 at 844 (1984)).   More particularly, Department of Justice regulation of testing accommodation has been held entitled to *Chevron* deference and enforced against a testing entity defendant.  *Enyart v. Nat'l Conf. of Bar Examiners, Inc*., Inc., 630 F.3d 1153, 1161-1164 (9th Cir. 2011), *cert. den.*, 565 U.S. 929, 132 S. Ct. 366, 181 L. Ed. 2d 232 ( 2011).

After the Department of Justice proposed the regulations relevant to this case, the Defendant submitted extensive comments and objections in the form of a five page letter.  See Exhibit two to this Memorandum - August 18, 2008, Letter from NBME to U.S. Department of Justice Re:  Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities:  [CRT Docket No. 106; AG order No. 2968-2008] 73 Fed. Reg. 34508 (June 17, 2008) available at  www.regulations.gov/document?D=DOJ-CRT-2008-0015-2768. The following NBME comments and objections are especially relevant to the proceeding before this Court:

> The NBME strenuously objects to the following statements in the NPRM[4]:
>
>> Generally, a testing entity should accept without further inquiry documentation provided by a qualified professional who has made an individualized assessment of the applicant.  Appropriate document [*sic*]may include a letter from a qualified professional as [*sic* - "or"] evidence of a prior diagnosis, accommodation, or classification, such as eligibility for a special education program.  When an applicant's documentation is recent and demonstrates a consistent history of [*sic* "a"] diagnosis, there is no need for further inquiry into the nature of the disability.
>
>> *   *   *

---

[4] Notice of Proposed Rulemaking.

> It is inappropriate to suggest that a testing entity should generally "accept without further inquiry documentation provided by a qualified professional who has made an individualized assessment of the applicant." . . .
>
> \*   \*   \*
>
> For the reasons noted above, DOJ should clarify the comments that it made in explaining the reason for the new rule. More specifically, DOJ should:
>
>> Acknowledge that standardized exams play an important role in various contexts, including college admissions, professional licensure and certification.
>>
>> State that it is entirely appropriate for testing organizations to have documentation policies that protect the reliability of their examination scores and the fairness of their examination processes for all examinees, including those with disabilities.
>>
>> Note that the documentation policies and practices of many testing organizations are reasonable and not unduly burdensome.
>>
>> Withdraw the statement that a testing organization should generally "accept without further inquiry documentation provided by a qualified professional who has made an individualized assessment of the applicant."
>>
>> Withdraw the statement that "there is no need for further inquiry into the nature of the disability" if an applicant's "documentation is recent and demonstrates a consistent history of diagnosis."

The final regulations reject each and every one of the NBME objections, and the regulations include none of the NBME recommended acknowledgments. *See* Guidance on Revisions to ADA Regulation on Nondiscrimination on the Basis of Disability by Public Accommodations and Commercial Facilities, 28 C.F.R § 36, App'x A (2011). In particular, the Department of Justice offered the following guidance in response to the NBME objections and requests for withdrawal:

> Commenters including disability rights groups, State governments, professional associations, and individuals made it clear that, in addition to the proposed

6

regulatory change, other significant problems remain for individuals with disabilities who seek necessary modifications to examinations and courses. These problems include detailed questions about the nature of documentation materials submitted by candidates, testing entities' questioning of documentation provided by qualified professionals with expertise in the particular disability at issue, and lack of timeliness in determining whether to provide requested accommodations or modifications. Several commenters expressed enthusiasm for the preamble language addressing some of these issues, and some of these commenters recommended the incorporation of portions of this preamble language into the regulatory text. Some testing entities expressed concerns and uncertainty about the language in the preamble and sought clarifications about its meaning. These commenters focused most of their attention on the following language from the NPRM preamble:

Generally, a testing entity should accept without further inquiry documentation provided by a qualified professional who has made an individualized assessment of the applicant. Appropriate documentation may include a letter from a qualified professional or evidence of a prior diagnosis, or accommodation, or classification, such as eligibility for a special education program. When an applicant's documentation is recent and demonstrates a consistent history of a diagnosis, there is no need for further inquiry into the nature of the disability. A testing entity should consider an applicant's past use of a particular auxiliary aid or service. 73 FR 34508, 34539 (June 17, 2008).

Professional organizations, State governments, individuals, and disability rights groups fully supported the Department's preamble language and recommended further modification of the regulations to encompass the issues raised in the preamble. A disability rights group recommended that the Department incorporate the preamble language into the regulations to ensure that ''documentation demands are strictly limited in scope and met per se when documentation of previously provided accommodations or aids is provided." One professional education organization noted that many testing corporations disregard the documented diagnoses of qualified professionals, and instead substitute their own, often unqualified diagnoses of individuals with disabilities. Commenters confirmed that testing entities sometimes ask for unreasonable information that is either impossible, or extremely onerous, to provide. A disability rights organization supported the Department's proposals and noted that private testing companies impose burdensome documentation requirements upon applicants with disabilities seeking accommodations and that complying with the documentation requests is frequently so difficult, and negotiations over the requests so prolonged, that test applicants ultimately forgo taking the test. Another disability rights group urged the Department to ''expand the final regulatory language to ensure that regulations accurately provide guidance and support the comments made about reducing the burden of documenting the diagnosis and existence of a disability."

Testing entities, although generally supportive of the proposed regulatory amendment, expressed concern regarding the Department's proposed preamble language. The testing entities provided the Department with lengthy comments in which they suggested that the Department's rationale delineated in the preamble potentially could limit them from gathering meaningful and necessary documentation to determine whether, in any given circumstance, a disability is presented, whether modifications are warranted, and which modifications would be most appropriate. Some testing entities raised concerns about individuals skewing testing results by falsely claiming or feigning disabilities as an improper means of seeking advantage on an examination. Several testing entities raised concerns about and sought clarification regarding the Department's use of certain terms and concepts in the preamble, including ''without further inquiry," ''appropriate documentation," ''qualified professional," ''individualized assessment," and ''consider." These entities discussed the preamble language at length, noting that testing entities need to be able to question some aspects of testing applicants' documentation or to request further documentation from some candidates when the initial documentation is unclear or incomplete. One testing entity expressed concern that the Department's preamble language would require the acceptance of a brief note on a doctor's prescription pad as adequate documentation of a disability and the need for an accommodation. One medical examination organization stated that the Department's preamble language would result in persons without disabilities receiving accommodations and passing examinations as part of a broad expansion of unwarranted accommodations, potentially endangering the health and welfare of the general public. Another medical board ''strenuously objected" to the ''without further inquiry" language. Several of the testing entities expressed concern that the Department's preamble language might require testing companies to accept documentation from persons with temporary or questionable disabilities, making test scores less reliable, harming persons with legitimate entitlements, and resulting in additional expense for testing companies to accommodate more test takers.

*It remains the Department's view that, when testing entities receive documentation provided by a qualified professional who has made an individualized assessment of an applicant that supports the need for the modification, accommodation, or aid requested, they shall generally accept such documentation and provide the accommodation.*

* * *

Some testing entities objected to the NPRM preamble's use of the phrase ''without further inquiry." The Department's intention here is to address the extent to which testing entities should accept documentation provided by an applicant when the testing entity is determining the need for modifications, accommodations, or auxiliary aids or services. The Department's view is that applicants who submit appropriate documentation, *e.g.*, documentation that is based on the careful individual consideration of the candidate by a professional

8

      with expertise relating to the disability in question, should not be subjected to unreasonably burdensome requests for additional documentation. While some testing commenters objected to this standard, it reflects the Department's longstanding position. *When an applicant's documentation demonstrates a consistent history of a diagnosis of a disability, and is prepared by a qualified professional who has made an individualized evaluation of the applicant, there is little need for further inquiry into the nature of the disability and generally testing entities should grant the requested modification, accommodation, or aid.*

*Id*. [emphasis added].

      Plaintiff has provided the required documentation by two qualified professionals. Each qualified professional has made an individualized assessment of the Plaintiff that supports the need for the accommodation requested. The Defendant has not, and could not, contest these facts. Rather, the Defendant has submitted affidavits[5] which, at base, attempt to reargue its objections to the Justice Department regulations. The regulations are final and dispositive of those objections. Thus, the Defendant's submissions do not create a material issue of fact regarding the Plaintiff's entitlement to accommodation, and extensive review of the Plaintiff's medical records by this Court is unnecessary for entry of a preliminary injunction.

## II. Appropriate Relief If ECF Rule 13.4.3 Is Deemed Inapplicable

      If the Court should determine that ECF Rule 13.4.3 is inapplicable, and find that the medical records are not protected by that Rule, Plaintiff, in the interests of justice, should be

---

[5] Apart from the irrelevance of these affidavits under the regulatory standards, they would be incompetent even if they were considered to be some sort of "counter assessment" of the plaintiff's disability. "Commenters also sought clarification of the term individualized assessment. The Department's intention in using this term is to ensure that documentation provided on behalf of a testing candidate is not only provided by a qualified professional, but also reflects that the qualified professional has individually and personally evaluated the candidate as opposed to simply considering scores from a review of documents. This is particularly important in the learning disabilities context, where proper diagnosis requires face-to-face evaluation. Reports from experts who have personal familiarity with the candidate should take precedence over those from, for example, reviewers for testing agencies, who have never personally met the candidate or conducted the requisite assessments for diagnosis and treatment." 28 C.F.R § 36, App'x A (2011).

9

allowed to correct his error and be allowed to either resubmit his Motion to Seal or the Court should accept the following as corrective measures:

The documents Plaintiff requests to seal are two sets of medical records. A non-confidential index of those records is attached hereto as Exhibit Three. The first record is a report of Thomas B. Danforth, Ph.D., a clinical neuropsychologist, consisting of nine pages of diagnoses and medical testing results. The second record is a "Testing Report" performed by Shantee Foster, Ph.D. and Alice Q. Libet, Ph.D. consisting of ten pages of medical results. Sealing of these documents is necessary pursuant to ECF Filing Rule 13.4.3 and the regulations codified in 45 C.F.R. §§ 160.102 and 160.103, *et seq*. The documents contain confidential medical records and diagnoses. There is no less drastic alternative to sealing these documents.

Counsel for plaintiff has attached a certification of compliance with Local Rule 5.03 to this Reply as Exhibit Four. Further, counsel will submit a separately sealed attachment labeled "Confidential Information to be Submitted to Court in Connection with Motion to Seal" with this Reply. The cover sheet of that submission is attached as Exhibit Five to this Reply.

## Conclusion

Therefore, Plaintiff requests that the Court enter an Order granting his Motion to Seal Exhibit 1 to the Complaint.

All of which is respectfully submitted.

December 15, 2016                S/Timothy O. Lewis
                                 Allan R. Holmes, Federal I.D. #1925
                                 Cheryl H. Ledbetter, Federal I.D. #11446
                                 Timothy O. Lewis, Federal I.D. #9864
                                 Suite 110, 171 Church Street
                                 Charleston, South Carolina 20401
                                 Phone: (843) 722-0033
                                 Facsimile: (843) 722-0114

                                 ATTORNEYS FOR PLAINTIFF