# EXHIBIT 2

"Note from the U.S. Department of Justice: The text layer associated with this PDF version of the public comment is of poor quality, because the original image of this public comment was also of poor quality. To rectify this problem, U.S. DOJ has corrected the errors in a separate, text-based electronic version of the comment that is accessible and can be read more accurately (e.g., by screen readers). Please refer to the .TXT version of the comment -- uploaded in addition to this PDF-- for this more accurate version."


NBME

National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3102

215-590-9500 phone
www.nbme.org

August 18, 2008

**VIA ELECTRONIC SUBMISSION**
Disability Rights Section
Civil Rights Division
U.S. Department of Justice
1425 New York Avenue, NW
Suite 4039
Washington, D.C. 20005

Re: *Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities; [CRT Docket No. 106; AG order No. 2968-2008], 73 Fed. Reg. 34508 (June 17, 2008).*

The National Board of Medical Examiners ("NBME") is an independent, not-for-profit organization that provides high-quality examinations for the health professions. The NBME was founded in 1915 because of the need for a nationwide examination that medical licensing authorities could accept as the standard by which to judge candidates for medical licensure. Since that time, it has continued without interruption to provide high quality examinations for this purpose and has become a model and a resource of international stature in testing methodologies and evaluation in medicine.

The NBME, together with the Federation of State Medical Boards of the United States, Inc. (FSMB), co-sponsors the United States Licensing Examination ("USMLE"). The USMLE assesses a physician's ability to apply knowledge, concepts, and principles, and to demonstrate fundamental patient-centered skills that constitute the basis of safe and effective patient care.

In order to protect the health and safety of the general public, every state in the United States requires physicians to be licensed before they may practice their profession. Each medical licensing authority sets its own rules and regulations and requires applicants to pass an examination to demonstrate their qualification for licensure. Results of the USMLE are reported to these authorities for their use in granting the initial license to practice medicine. The USMLE provides them with a common evaluation system for applicants for initial medical licensure.

The NBME does not object to the proposed amendment to Section 36.309(b). Indeed, current NBME policies and practices are consistent with the proposed rule. The documentation an examinee is required to submit in support of a request for accommodation on USMLE is reasonable and limited to the need for the accommodation requested.

However, we are concerned about the explanatory notes that accompany the proposed change to Section 36.309(b) (see Federal Register, page 34539). The Department of Justice states, for

1

example, that testing entities "often" make "inappropriate or burdensome" requests for documentation. This suggestion unfairly impugns the many testing organizations that conscientiously perform their obligations under the ADA and could be construed, with other statements in the NPRM, to constrain organizations' reasonable inquiry into the existence and extent of examinees' asserted disabilities.

Unlike most employers and other entities subject to the ADA, which may occasionally encounter an employee, applicant or customer with a disability, testing organizations deal with accommodations issues on a daily basis. The NBME employs numerous full time staff members who conscientiously oversee the process of providing reasonable accommodations to examinees requiring them under the ADA. Requests for testing accommodations, the vast majority of which involve learning disabilities and ADHD, are reviewed by NBME staff trained in clinical psychology at the doctoral level. Further review of the requests and supporting documentation is provided by professionals with expertise in the relevant fields of disability who assist NBME in making determinations regarding the existence of a disability and the appropriate accommodations. The interests at stake when accommodations are requested in the administration of a standardized test are not limited to those of the examinee who is asking for an alteration in the standard test procedures, e.g., by allowing that individual additional testing time. In suggesting that testing organizations should be less rigorous in their documentation requirements, DOJ is not giving sufficient recognition to the important role that standardized examinations play in connection with professional licensure, or to the impact that some accommodations (notably extra testing time) can have on the reliability of the resulting scores or on the overall fairness of the standardized testing process. Score users -- such as state licensing boards -- have a legitimate interest in receiving scores that are valid and reliable.

Likewise, all examinees, including those who test without accommodations, have a legitimate right to fairness; when some examinees inappropriately receive additional testing time or other accommodations, the playing field is not level.

Finally, the general public has a legitimate interest in the competence of licensed professionals; the public should be confident that a physician has not obtained a license with the benefit of testing accommodations to which the individual was not legitimately entitled.

As noted above, USMLE plays a critical role in the licensure of physicians by state medical boards and licensing authorities. In medicine, as elsewhere, the use of standardized examinations as part of the licensure process is often expressly required under state laws. It is therefore important, and entirely appropriate, for the NBME to review carefully all requests by examinees who wish to be exempted from the standard test administration requirements that apply to all other examinees and that help ensure the reliability of exam scores.

The NBME strenuously objects to the following statements in the NPRM:

> Generally, a testing entity should accept without further inquiry documentation provided by a qualified professional who has made an individualized assessment of the applicant. Appropriate document may include a letter from a qualified professional or evidence of a prior diagnosis, accommodation, or classification, such as eligibility for a special education program. When an applicant's

2

documentation is recent and demonstrates a consistent history of diagnosis, there is no need for further inquiry into the nature of the disability.

It is inappropriate to suggest that a testing entity should generally "accept without further inquiry documentation provided by a qualified professional who has made an individualized assessment of the applicant." Our experience since enactment of the ADA shows:

- It is not always clear who is "qualified" to make a given diagnosis. An individual with impressive credentials in one area may have minimal experience with diagnosing certain impairments. Therefore, a testing organization might well be justified in questioning whether a given individual is, in fact, qualified to provide a specific diagnosis, notwithstanding that person's general credentials.

- Even when professionals are qualified, the documentation they provide in support of their diagnoses is often incomplete or otherwise deficient. Often the documentation submitted by examinees fails to support even minimal criteria for assignment of the purported diagnosis. Mechanically accepting a diagnosis without further inquiry in this situation would be an abdication of the testing organization's responsibilities.

- Most of the requests for accommodation we receive are based upon diagnoses of learning disabilities, ADHD, or other cognitive impairments. The literature reflects significant questions about the reliability of the diagnostic models that are commonly used to arrive at diagnoses for some of these impairments. Here, too, it may be entirely appropriate for the testing entity to ask for additional documentation in support of a diagnosis or otherwise to make further inquiry.

- Professionals who recommend that accommodations should be granted for educational/instructional purposes for a particular impairment in an educational setting may not analyze or appreciate the consequences of the recommended accommodation in the context of standardized testing for licensure purposes. Therefore, the accommodation recommended in an academic context should not necessarily be accepted for all purposes without further inquiry.

- Professionals who provide documentation in support of requests for accommodations often serve as advocates for the individuals who have retained them for the specific purpose of providing documentation that would result in accommodations. While we do not suggest that these professionals are necessarily acting in an inappropriate or biased manner, we have observed that some diagnoses and/or recommendations may not reflect a careful and balanced review of all relevant information. Indeed, when we request more complete documentation, we occasionally receive primary documentation revealing that the professional's conclusions initially provided were based on partial information that supports the diagnosis but failed to disclose or address evidence inconsistent with the diagnosis. These situations underscore the need for testing entities to obtain complete documentation, not merely conclusionary diagnoses.

3

- The American Psychiatric Association specifically notes in the Diagnostic Manual of Mental Disorders ("DSM-IV") that the clinical diagnosis of a mental disorder is not sufficient to establish the existence for legal purposes of a mental disorder. The DSM-IV warns that when determining whether an individual meets a specific legal standard (e.g. disability) additional information is usually required beyond that contained in the DSM-IV including information about the individuals' functional impairments and how these impairments affect the abilities in question. The manual further cautions that "It is precisely because impairments, abilities, and disabilities vary widely within each diagnostic category that assignment of a particular diagnosis does not imply a specific level of impairment or disability."

It is also inappropriate to suggest that there is no need for a testing entity to make "further inquiry into the nature of a disability" if an applicant has a "consistent history of a diagnosis." In addition to the concerns noted above, we add the following:

- The comment appears to attach too much weight to diagnoses that were likely obtained in very different settings. A diagnosis obtained for the purpose of determining an appropriate instructional model for a student in K-12 school years or even in college may well be less rigorous than the information a standardized testing organization has a legitimate right to expect before providing accommodations that could affect the reliability of the resulting exam scores or the fairness to other examinees of the testing process.

- A "consistent history of a diagnosis" does not necessarily mean that the individual's impairment at any time was at the level of a disability. It also provides no information about the appropriateness of any specific accommodation in the current circumstances.

- Accepting without further inquiry an individual's history of diagnosis, prior accommodation or eligibility for special education as evidence of a need for accommodation on a standardized licensing examination could easily expand the benefit of accommodations to individuals clearly outside the scope of Congress's original intent.

For the reasons noted above, DOJ should clarify the comments that it made in explaining the reason for the new rule. More specifically, DOJ should:

- Acknowledge that standardized exams play an important role in various contexts, including college admissions, professional licensure and certification.

- State that it is entirely appropriate for testing organizations to have documentation policies that protect the reliability of their examination scores and the fairness of their examination processes for all examinees, including those with disabilities.

- Note that the documentation policies and practices of many testing organizations are reasonable and not unduly burdensome.

4

- Withdraw the statement that a testing organization should generally "accept without further inquiry documentation provided by a qualified professional who has made an individualized assessment of the applicant."

- Withdraw the statement that "there is no need for further inquiry into the nature of the disability" if an applicant's "documentation is recent and demonstrates a consistent history of diagnosis."