IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| JUSTIN SILVERMAN | ) | |
| | ) | |
| | ) | Civil Action No. 2:16-cv-03686-RMG/DCN |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **PLAINTIFF'S MEMORANDUM IN** |
| | ) | **OPPOSITION TO DEFENDANT'S** |
| NATIONAL BOARD OF MEDICAL | ) | **MOTION TO DISMISS** |
| EXAMINERS | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I.

## STATEMENT OF THE CASE AND RELEVANT FACTS

The Plaintiff, Justin Silverman, is a second year medical student at the College of Medicine at the Medical University of South Carolina ("MUSC"). Mr. Silverman is a citizen and resident of Charleston County, South Carolina. *See* Complaint ¶ 1, ECF No. 1. The Defendant, the National Board of Medical Examiners ("NBME") is a private, non-profit organization that is responsible for sponsoring the USMLE exams, which medical students in South Carolina and other jurisdictions around the country are required to pass in order to obtain a license to practice medicine. *See* Decl. of Gerard F. Dillon ("Dillon Decl.") ¶¶ 4-6, ECF No. 12-2.

The NBME's principal place of business is in Philadelphia, Pennsylvania and it is incorporated in Washington, D.C. *See id.* ¶¶ 2-3. The USMLE exams are administered in testing facilities across the United States, including several locations in South Carolina each year. *See* Second Affidavit of Justin Silverman ("Silverman Second Affidavit") ¶ 3, attached hereto as Exhibit 1. The NBME employs a third-party vendor, Prometric, to administer the USMLE exams

1

in testing centers across the United States. *See* Dillon Decl. ¶ 6. Although the NBME itself does not administer the test to examinees, the NBME does exclusively control which applicants are granted accommodations on the USMLE exams, and all requests for accommodations on the USMLE "component" exams must be submitted through the NBME itself, not through Prometric. *See* Complaint ¶¶ 15-19.   Prometric is a for-profit organization based out of Baltimore, Maryland. *See* Dillon Decl. ¶ 6.

Mr. Silverman has been diagnosed with a developmental reading disorder (learning disorder), DSM/ICD1 (315.00), attention deficit hyper-activity disorder, combined type (ADHD), DSM/ICD (314.01), mathematics disorder, DSM/ICD (315.10); Anxiety Disorder NOS (300.00)[1]. *See* Complaint ¶ 8. As a result of these disabilities, the Plaintiff has received accommodations of extended time and one-half on exams throughout both undergraduate and medical school. *See id.* ¶ 12. Mr. Silverman is attending MUSC in order to become a physician, and he is required to pass the first "component" exam that the NBME sponsors, the USMLE Step I exam, in order to proceed with his third year coursework. *See id.* ¶ 5. The Progress Committee at MUSC that monitors Mr. Silverman's medical education is requiring Mr. Silverman to complete the USMLE Step I exam by December 31, 2016 in order for him to continue to be enrolled at MUSC. *See id.* ¶ 7; Affidavit of Justin Silverman ("Silverman Aff.") ¶ 7, ECF No. 6-2.

Mr. Silverman first submitted his request to the NBME for a reasonable accommodation for his disabilities of time and one half on the USMLE Step I exam on March 7, 2016 from his residence in Charleston County to the Defendant NBME. *See* Complaint ¶11; Silverman Second

---

[1] DSM [Diagnostic Statistical Manual of Mental Disorders, American Psychiatric Association]/ ICD [International Statistical Characteristics of Diseases and Related Health Problems, World Health Organization.

Aff. ¶ 4. As a part of this application, Plaintiff submitted the following: a comprehensive neuropsychological report from a clinical neuropsychologist and licensed psychologist conducted on 12/26/2005 and 1/13/2006; a testing report from a licensed clinical psychologist who serves as the MUSC Director of Counseling and Psychological Services; certifications of prior test accommodations from MUSC and Skidmore College, the undergraduate school from which Plaintiff graduated; a completed request for accommodation form furnished by NBME with all requested attachments, including Plaintiff's personal statement describing his disability and its impact on his daily life, and a letter from the M.D., Ph. D, MUSC Associate Dean for Student Affairs supporting Plaintiff's request for reasonable accommodation. *See id.* ¶ 13. Mr. Silverman first registered to take the Step I exam in a testing center in Savannah, Georgia in August, but did not take the test at that time and does not plan to take it in Georgia.  He has now registered for the exam and intends to take it here in South Carolina. *See* Silverman Second Affidavit, ¶ 3.

Plaintiff and the NBME exchanged email correspondence regarding his pending request for accommodation from March through August 2016. *See id.* ¶ ¶ 4-5. The Plaintiff's scheduling permit issued by NBME allowed him to take the Step I exam only up through October 31, 2016. However, because the Plaintiff had not received a decision from the Defendant regarding his request for accommodation by late August, he retained counsel for the purpose of obtaining such an accommodation. *See id.* ¶ 6; Complaint ¶¶ 15-17. It was not until after Plaintiff's counsel Allan Holmes, from his office in Charleston, telephoned NBME's general counsel on August 29, 2016 to inquire as to the status of the request that the Defendant finally reached a decision on the matter. *See* Complaint, Letter Denying Request, Exhibit 2 at 1-2, ECF No. 1-2. The NBME communicated its decision to deny Mr. Silverman's request for an accommodation by way of a

letter dated August 30, 2016 and mailed it to his home address in Charleston County. *See id.* The Defendant simultaneously emailed a copy of this letter to Plaintiff's personal email address and to Plaintiff's counsel. *See* Email of August 31, 2016, attached hereto as Exhibit 2.

By later dated September 30, 2016 and sent to the Defendant's principal place of business from Charleston County, Plaintiff's counsel requested a reconsideration of the denial of Mr. Silverman's request for accommodation. *See* Complaint, Counsel for Plaintiff's Letter, Exhibit 3, ECF No. 1-3. In this letter, counsel for the Plaintiff highlighted the erroneous conclusions of law that the NBME had reached in denying Mr. Silverman's request and emphasized that Mr. Silverman faced irreparable harm to his professional career if the denial was not quickly reversed. *See id.* at 8. Additionally, this letter warned that Mr. Silverman would seek an injunction in the United States District Court for the District of South Carolina if his request were ultimately denied. *See id.* Mr. Silverman included in his request for reconsideration his high school transcript and a May 12, 2016 letter from Dr. Sally Self, Associate Dean for Student Progress at MUSC. *See id.* at 10. The letter from Dr. Self emphasized the fact that Mr. Silverman could not afford any further delays in his academic progress as he had already used four of the six years allowed for completion of his medical degree requirements. *See id.* at 10.

When Mr. Silverman still had not received a response from the Defendant, counsel for the Plaintiff sent the NBME yet another letter on November 11, 2016 asking for a reconsideration of its denial Mr. Silverman's accommodation request. *See* Complaint, Counsel for Plaintiff Second Letter, Exhibit 4, ECF No. 1-4. This letter again warned the NBME of the likelihood of a civil action against them if it continued to unreasonably and unlawfully deny Mr. Silverman's request for a reasonable accommodation. *See id.* The NBME replied by way of letter dated November 14, 2016, stating that no new substantive information had been submitted to

alter its original conclusion that Mr. Silverman's documentation had not demonstrated clear functional impairment. *See* Complaint, Second Rejection Letter, Exhibit 5 at 1, ECF No. 1-5. This letter was mailed to Plaintiff's residence in Charleston County and copied via electronic mail to Plaintiff's personal email address and to Plaintiff's counsel. *See* Email Dated November 14, Exhibit 3 hereto.

The Plaintiff thereafter filed suit in this Court on November 18, 2016, seeking injunctive and declaratory relief for the Defendant's violation of his right to reasonable accommodation on the USMLE Step I exam under Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12189 and its implementing regulations, 28 C.F.R. § 36.309. *See* Complaint ¶3. On December 8, 2016, the Defendant filed with this Court a motion to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and Local Rule 7.01 DSC on the grounds that the Court lacks personal jurisdiction over the NBME. *See* Def. Mot. to Dismiss at 1, ECF No. 12. The Plaintiff submits this response in opposition to the Defendant's motion to dismiss.

## II.

## ARGUMENT

### THIS COURT MAY PROPERLY EXERCISE PERSONAL JURISDICTION OVER THE DEFENDANT NBME

#### A.  Analytical Framework

As this Court has noted before, the plaintiff bears the ultimate burden of proving the existence of personal jurisdiction over a defendant by a preponderance of the evidence.  *See Tuttle Dozer Works, In*c. *v. Gyro-Trac., Inc*., 463 F.Supp. 2d 544, 546 (D.S.C. 2006) (Norton, J.). However, where the court is ruling on a Rule 12(b)(2) motion based upon pleadings and affidavits, the burden on the plaintiff "is simply to make a prima facie showing of a sufficient

5

jurisdictional basis to survive the jurisdictional challenge." *Id., quoting Combs v. Bakker,* 886 F. 2d 673, 676 (4th Cir. 1989).  Moreover, the court "must construe all relevant pending allegations in the light most favorable to the plaintiff, assume credibility and draw the most favorable inferences for the existence of jurisdiction."  *Id.  See also McNeil v. Sherman,* No. 2:09-CV-00979-PMD, 2009 U.S. Dist. LEXIS 93753, at *5 (D.S.C. Oct. 7, 2009) (Duffy, J.) The analysis is fundamentally a factual one, as the question of personal jurisdiction must be resolved upon the facts of each particular case.  *See Combs,* 886 F.2d at 676.

In order for a district court to assert personal jurisdiction over a defendant, two conditions must be satisfied.  *See Christian Sci. Bd. of Dirs. v. Nolan*, 259 F. 3d 209, 215 (4th Cir. 2001). First, the exercise of jurisdiction must be authorized by the long-arm statute of the State, and, second, the assertion of the jurisdiction must be consistent with constitutional due process.  *Id*. The South Carolina Supreme Court has interpreted its long-arm statute to extend to the outer limits of constitutional due process.  *Tuttle DozerWorks*, *Inc.*, 463 F. Supp. 2d at 547, *citing Cockerell v. Hillerich & Bardsby Co.,* 363 S.C. 485, 611 S.E.2d 505 (2005). Because of this interpretation, the sole question for this Court thus becomes whether the exercise of personal jurisdiction would violate due process.  *Id*. Due process requires that the out of state defendant have minimum contacts with the forum state such that the maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Christian Sci. Bd. of Dirs.,* 259 F.3d at 215.  According to this Court:

> A defendant has minimum contacts with a state when "the defendant's conduct and connection with the forum state is such that he should reasonably anticipate being haled into court there…. Minimum contacts must be based "on some act by which defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

*Tuttle Dozer Works, Inc.,* 463 F. Supp. 2d at 547 (internal citations omitted).

6

The legal inquiry for determining the existence of personal jurisdiction over a non-resident defendant is dependent upon whether the defendant's contacts with the forum state also provide the basis for the lawsuit. If the contacts form the basis of the suit, the court must determine if specific jurisdiction may apply. If, however, the contacts by the non-resident defendant do not relate to the cause of action or claims of the plaintiff, then general jurisdiction must arise from the defendant's continuous and systematic contacts with the forum state. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F. 3d 390 (4th Cir. 2003).

**B.  This Court may properly exercise specific jurisdiction over the Defendant**

Under the Supreme Court's ruling in *Daimler AG v. Bauman*, 571 U.S. ____, 134 S. Ct. 746 (2014), general jurisdiction may be exercised only where a corporation is "essentially at home," and only in an "exceptional case" might a corporation's operations in a forum other than its place of incorporation and/or principal place of business. *Id.* at 761 n.19. Under the facts adduced thus far in this matter, prior to the beginning of any discovery in this case, Plaintiff does not assert that general jurisdiction may presently be exercised by this Court. Plaintiff reserves the right, however, to supplement this memorandum at such time as it may become apparent that general jurisdiction may apply in this case. The Court need not, however, rule upon the issue of general jurisdiction, as it is abundantly clear that specific jurisdiction may be exercised by the Court over the Defendant.

Specific jurisdiction is the State's right to exercise personal jurisdiction because the cause of action arises specifically from a defendant's contact with the forum State. The Fourth Circuit has "synthesized" the due process requirements for asserting specific personal jurisdiction to a three-part test: (1) the extent to which the defendant purposely availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arise out of those

activities; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. *Consulting Eng'rs Corp. v. Geometric Ltd*., 561 F.3d 273, 278 (4th Cir. 2009). All three of these inquiries must be answered in the affirmative in this case, thus cementing the jurisdiction of this Court.

The first prong of the test, the extent to which the defendant has purposely availed itself in conducting activities in the forum state, includes such factors as whether the defendant deliberately engaged in significant or long-term business activities in the state, or made in-person contact with residents of the forum in the state, or whether the performance of the contractual duties was to occur in the state, as well as the nature, quality and extent of the parties' communications about the business relationship. *Id*. The Defendant NBME apparently does not dispute the applicability of this first prong, as its Memorandum cites the three prong test and asserts only that the second and third prongs are not met. *See* Def.'s Memo in Support of its Mot. to Dismiss at 7, ECF No. 12-1. Nor could Defendant's counsel make a colorable argument that it has not availed itself of South Carolina's privileges in doing business here. NBME has taken direct action to create a connection with South Carolina by controlling the administration of the USMLE tests that are given to dozens, if not hundreds of medical students at various sites in South Carolina throughout the year. While these tests are given at Prometric testing sites, it is NBME who exercises significant control over the testing sites by directing how they should be administered, including, significantly, the nature of any accommodations that should be provided to students.

In its Memorandum, Defendant challenges this Court's jurisdiction by arguing that all of "NBME activities related to this lawsuit took place outside South Carolina" because it made its decision not to accommodate the Plaintiff's disability in Pennsylvania, the Plaintiff was

8

registered for a test in Georgia and the external experts it relied upon live outside of South Carolina. *Id.* These factual arguments ignore the salient facts that NBME engaged South Carolina by directing and controlling the administration of these tests here. Moreover, it took direct action by corresponding numerous times with the Plaintiff and his attorney in South Carolina. Significantly, the Defendant directed its letters and emails twice denying the requested accommodation to the Plaintiff and his attorney here in South Carolina. Inarguably, the denial of the requested testing accommodations is the very basis of this lawsuit. In an earlier case brought in this Court against NBME, the Defendant argued that the receipt of the denial letter sent to the Plaintiff was the lynchpin in determining when the statute of limitations began to run because the denial of accommodations was "integral" to Plaintiff's claim and was the "very action which is the basis of Plaintiff's claim." *See Memo. in Support of Def.'s Mot. to Dismiss at 7, Densmore v. National Board of Medical Examiners*, No. 2:14-cv-02082-MBS (D.S.C. Aug.8, 2014), ECF No. 17-1, attached hereto as Exhibit 4. Thus, the sending of these letters to, and the receipt of them by the Plaintiff in South Carolina, in addition of the Defendant's other conduct described above, suffices to establish the basis for personal jurisdiction over the Defendant.

Contrary to the Defendant's insistence that the relevant inquiry for jurisdictional purposes is where it reviewed the requests and made its decisions, Pennsylvania, this Court must focus upon where the effects of those decisions were felt. The so-called "effects test" serves to establish jurisdiction where the plaintiff can show that the defendant committed an intentional tort, that the plaintiff felt the brunt of that harm in the forum state such that the state is said to be the focal point of the harm and that the defendant expressly aimed his tortious conduct at the forum. *See Consulting Eng'rs*, 561 F.3d at 280-81. First set forth by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984), the effects test concerned a libelous article written in

Florida about the plaintiff, a well known California actress. The Court upheld the California court's jurisdiction since the article was drawn from California and the brunt of the plaintiff's harm, injury to her reputation and emotional distress, was suffered in California. *Id.* at 788-89. The *Calder* Court thus summarized this test as one conferring jurisdiction where the intentional tortfeasor knew that his actions would harm the plaintiff in a particular forum and the brunt of the harm was felt in that forum. *Id*.

In the specific context of discrimination cases, federal courts have often concluded that the effects test applies to discriminatory decisions made by out-of-forum-state residents concerning forum state residents. One of the first cases to do so was decided by the District of New Jersey, *Wright v. Xerox Corp.,* 882 F. Supp. 399 (D.N.J. 1995). In *Wright*, the plaintiff alleged on ongoing scheme of racial bias and retaliation, culminating in his termination from employment. *Id.* at 405. The scheme was allegedly carried out during his tenure with the Company in New Jersey, although he was not terminated until just after he moved to New York. *Id*. Recognizing that courts have emphasized the special importance of intentional, tortious acts in assessing whether personal jurisdiction over a non-resident is reasonable, the *Wright* court agreed with the plaintiff that the harm to his reputation centered in New Jersey and thus his defamation claim should be heard there. Significantly, while musing that a "statutory, civil rights tort" for race discrimination was not so "inherently mobile," the district court nevertheless reasoned that the fundamental principles of the "effects test" were sound and applied them to the discrimination claim:

> Discrimination by an out-of-state employer against an employee in this state is an act directed at this state. The harm is felt here, as it was in California in *Calder*. Racially biased decisions taken at a foreign corporate headquarters may wreak injustice on New Jersey's citizens and thwart the cardinal policy of their legislature. Non-resident corporate officials can foresee being made to answer here for such a wrong, and requiring them to do so is not constitutionally unreasonable.

*Id.* at 406.

Similarly, in *Tann v. United States Steel Corp*., No. 15-3, 2015 U.S. Dist. LEXIS 73828 (W.D. Pa. June 8, 2105), the district court denied the individual defendants' motion to dismiss based upon personal jurisdiction grounds because they had contacts with a Pennsylvania resident and thus the State during which they were alleged to have committed acts of discrimination. In *Tann*, the plaintiff alleged that discriminatory acts occurred during phone calls into Pennsylvania, including placing him on suspension and criticizing his performance in retaliation for his earlier complaints of discrimination. *Id.* at *17-18. Reasoning that such acts could be characterized as acts "in the nature of a tort," the Tann court ruled that these contacts were sufficient for the out-of-state residents to be haled into Pennsylvania to answer for their discriminatory acts. *Id.* at *21. *See also Jaipaul v. Pliant Corp.,* No. 07-4031, 2008 U.S. Dist. LEXIS 53915, at *9, n.3 (E.D. Pa. July 14, 2008) (recognizing that many courts that have determined that the effects test is applicable to statutory, civil rights torts claims, but declining to find jurisdiction where plaintiff did not allege any discriminatory acts occurred during phone calls and email she received from out-of-state defendants); *Speraneo v. Zeus Tech., Inc.*, No. 4:12-cv-578-JAR, 2012 U.S. Dist. LEXIS 97498 (E.D. Mo. July 13, 2012) (defendant-supervisor's motion to dismiss denied where his allegedly discriminatory communications were transmitted to plaintiff in forum state).

Here, application of the effects test clearly renders NBME subject to this Court's specific jurisdiction. According to the Plaintiff's allegations, which must be construed in the light most favorable to him, the defendant committed intentional, tortious acts by discriminating against him in violation of the ADA. Despite ample warning of the wrongful nature of the Defendant's conduct in denying him the requested accommodations, the Defendant twice refused these

accommodations.   Moreover, the brunt of the harm suffered by plaintiff is felt no where except this State. The Plaintiff lives here, goes to medical school at MUSC and received the communications denying his accommodation requests here. Should NBME's discriminatory refusal to accommodate him result in his failure to successfully complete the USMLE test, it is likely that he will cease to be enrolled at MUSC, thus effectively ending his medical career. Clearly, all significant harms suffered by this Plaintiff occurred in Charleston County, South Carolina.

Finally, for purposes of the effects test, there can be no question but that the Defendant's conduct was expressly aimed at this State. From before the time of its first, discriminatory refusal to accommodate him, NBME was well aware that Mr. Silverman lived here and went to school at MUSC. They were undoubtedly reminded of this fact when Plaintiff's counsel Mr. Holmes called them because they had failed to respond to the Plaintiff's first request for accommodation. They mailed their initial refusal to the Plaintiff at his Charleston County address, as they did their second refusal, two deliberate acts of discrimination aimed at the Plaintiff and this State, both of which form the basis of this action.  To suggest that somehow the Plaintiff's claims do not arise out of these forum-related activities strains credulity.

In its Memorandum, Defendant cites to the fact that the Plaintiff had initially registered to take the test in Savannah, Georgia.  While true and reflective of his initial intent, Plaintiff's plans changed of necessity when the Defendant refused his accommodation request. Presently, he intends to take the test in South Carolina. *See* Silverman Second Aff. ¶ 3.

Having satisfied that first two prongs of the three prong, specific jurisdiction test promulgated by the Fourth Circuit, the sole analysis left is whether this Court's exercise of personal jurisdiction is constitutionally reasonable, or does not offend traditional notions of fair

play and substantial justice. As this Court has observed, a district court making this determination must consider the burden on the defendant, the interests in the forum State, the plaintiff's interest in obtaining relief and the interstate judicial system's interest in obtaining the most efficient resolution of controversies. *See McNeil,* 2009 U.S. Dist. LEXIS 93753 at *17.

All of these factors militate in favor of this Court retaining jurisdiction. Paramount among these factors is the Plaintiff's interest in obtaining relief.  As reflected by the filings with this Court, should he fail to obtain the reasonable accommodations which he has requested and fail this test, his medical career is effectively over. Moreover, the burden to NBME of litigating this case in South Carolina is minimal for an organization which operates its business throughout the country, especially when compared to the burden of the Plaintiff, a medical student who must maintain an active class and study schedule.  Also, as observed by the *Wright* court, this State has a substantial interest in ensuring that its citizens are not subjected to illegal discrimination at the hands of out-of-state persons or organizations, whether it is discrimination prohibited by state law or by federal laws such as the ADA.  *Wright*, 882 F. Supp. at 410.

One final factor in the determination of whether this Defendant has minimum contacts with the forum State that may be considered by this Court is whether it could reasonably anticipate being haled into court in south Carolina. *See Tuttle DozerWorks, Inc*., 463 F. Supp. 2d at 547.  There is no doubt that NBME could have and did in fact anticipate legal action here against it. Two years prior to this lawsuit, NBME was sued in this very Court by another medical student who was similarly denied a testing accommodation for his disability.  *See* Densmore, *supra*.[2]

---

[2] Interestingly, the Defendant did not move to dismiss for lack of personal jurisdiction in that case.

In this matter specifically, NBME was placed on notice that their continuing, unlawful refusal to grant any of the requested accommodations would certainly result in an action filed in this Court by plaintiff's counsel. Mr. Holmes, in his September 30 letter was quite clear about this potential: the [Plaintiff] will further seek to enjoin the NBME from denying him an accommodation on the exam by filing suit in the United States district Court for the District of South Carolina". *See* Complaint, Exhibit 3, ECF 1-3. This warning was again repeated in Mr. Holmes letter of November 11.  *See* Complaint, Exhibit 4, ECF No. 1-4. Despite these warnings from Plaintiff's counsel regarding its unlawful conduct and its implications, Defendant has persisted in its discriminatory conduct, conduct deliberately aimed directly at this State and its citizen, Justin Silverman. Its attempt to escape the consequences of its conduct in South Carolina should not be countenanced by this Court.

### III.

### <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that this Court deny the Defendant's Motion to Dismiss for Lack of Personal Jurisdiction.


<u>/Allan R. Holmes</u>
Allan R. Holmes, Federal I.D. #1925
Cheryl H. Ledbetter, Federal I.D. #11446
Suite 110, 171 Church Street
Charleston, South Carolina 20401
Phone: (843) 722-0033
Facsimile:  (843) 722-0114

ATTORNEYS FOR PLAINTIFF


December 15, 2016

15