

**User Name:** Rebecca Wolfe
**Date and Time:** Dec 15, 2016 12:02
**Job Number:** 40894265

## Document (1)

1. *Jaipaul v. Pliant Corp., 2008 U.S. Dist. LEXIS 53915*
    **Client/Matter:** -None-
    **Search Terms:** 2008 U.S. Dist. LEXIS 53915
    **Search Type:** Natural Language

| About LexisNexis | Privacy Policy | Terms & Conditions | Copyright © 2016 LexisNexis
Rebecca Wolfe

 Cited
As of: December 15, 2016 12:02 PM EST

# *Jaipaul v. Pliant Corp.*

United States District Court for the Eastern District of Pennsylvania

July 14, 2008, Decided; July 15, 2008, Filed

CIVIL ACTION NO. 07-4031

**Reporter**
2008 U.S. Dist. LEXIS 53915 *; 2008 WL 2746291

ROSITA JAIPAUL v. PLIANT CORPORATION, et al.

## Core Terms

contacts, personal jurisdiction, aimed, effects, forum state, allegations, activities, terminated, tortious

## Case Summary

**Procedural Posture**

Plaintiff former home-based employee brought an action against defendants, her former employer and her former supervisor, alleging violations of Title VII of the Civil Rights Act of 1964, the Pennsylvania Human Relations Act, *42 U.S.C.S. § 1981*, and the Pennsylvania Wage and Payment Collection Law. The supervisor filed a *Fed. R. Civ. P. 12(b)(2)* motion to dismiss for lack of personal jurisdiction.

**Overview**

The supervisor contended that he did not "expressly aim" his activities toward Pennsylvania and that he never initiated any calls to the employee in Pennsylvania. The court agreed that the employee had failed to establish that the supervisor expressly "aimed" his activities at Pennsylvania for the court to exercise personal jurisdiction under the Due Process Clause and 42 Pa. Cons. Stat. *§ 5322(b)*. Moreover, the fact that the employee happened to live in Pennsylvania and had the base of her operations there was accidental for jurisdictional purposes, and the mere fact that the supervisor knew that the employee lived in Pennsylvania when he allegedly discriminated against her was not enough to establish that he "aimed" his conduct at Pennsylvania. While the employee cited phone calls and e-mails with the supervisor while she was present in her Pennsylvania office to establish that his alleged actions were "expressly aimed" at Pennsylvania, she did not assert that any alleged discriminatory conduct took place during those calls and e-mails. Without such evidence, those communications did not establish that the supervisor "expressly aimed" discriminatory conduct at the forum state.

**Outcome**

The court granted the supervisor's motion to dismiss and dismissed the supervisor as a party to the action.

## LexisNexis® Headnotes

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Minimum Contacts

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

***HN1*** When a defendant brings a motion to dismiss pursuant to *Fed. R. Civ. P. 12(b)(2)*, the plaintiff bears the burden of establishing the court's jurisdiction. To meet that burden, the plaintiff need only establish a prima facie case of personal jurisdiction and is entitled to have her allegations taken as true and all factual disputes drawn in her favor. However, to defeat a defendant's R. 12(b)(2) motion where the defendant has produced an affidavit or other competent evidence that asserts facts contrary to the jurisdictional allegations of the complaint, the burden is on the plaintiff to make a prima facie showing through sworn affidavits or other competent evidence that the jurisdictional facts exist. In deciding a motion to dismiss for lack of personal jurisdiction pursuant to R. 12(b)(2), the allegations of the complaint are taken as true. However, once a jurisdictional defense is raised, the plaintiff bears the burden of proving, through affidavits, or competent evidence, sufficient contacts with the forum state to establish personal jurisdiction.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In

Personam Actions > Long Arm Jurisdiction

Constitutional Law > ... > Fundamental Rights > Procedural Due Process > Scope of Protection

*HN2* A federal district court sitting in diversity may exercise jurisdiction over a foreign defendant to the extent allowed by the law of the state in which the district court is located. *Fed. R. Civ. P. 4(e)*. Under state law, consideration of personal jurisdiction involves two steps: (1) the court must determine that exercising jurisdiction over the defendant is consistent with the relevant state long-arm statute; and (2) the court must then consider whether exercising jurisdiction would be consistent with the requirements of due process. The Pennsylvania long-arm statute allows courts to exercise personal jurisdiction to the fullest extent allowed by the Constitution. *42 Pa. Cons. Stat. § 5322(b)*.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Minimum Contacts

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Substantial Contacts

Constitutional Law > ... > Fundamental Rights > Procedural Due Process > Scope of Protection

*HN3* Courts have interpreted the Due Process Clause as requiring (1) that the defendant have constitutionally sufficient minimum contacts with the forum and (2) that subjecting the defendant to the court's jurisdiction comports with traditional notions of fair play and substantial justice. Minimum contacts exist when there is some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. A defendant's contacts with the forum state reach the minimum level in one of two ways. When the contacts are "continuous and systematic," the court may exercise "general jurisdiction" over the defendant even if the contacts are unrelated to the plaintiff's cause of action. In contrast, "specific jurisdiction" exists only if the plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum, such that the defendant should reasonably anticipate being haled into court in that forum. It is axiomatic that jurisdiction over individual defendants does not exist simply because they are agents or employees of organizations which presumably are amenable to jurisdiction in a particular forum. Rather, each defendant's contacts with the forum state must be assessed individually.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Purposeful Availment

Constitutional Law > ... > Fundamental Rights > Procedural Due Process > Scope of Protection

*HN4* In an intentional tort case, in order to determine if personal jurisdiction exists, the plaintiff must allege facts sufficient to meet the "effects test" established by the United States Supreme Court in Calder v. Jones for determining personal jurisdiction over non-resident defendants who allegedly commit torts outside the forum. The United States Court of Appeals for the Third Circuit has interpreted the Calder effects test to require a plaintiff to show the following in order to establish personal jurisdiction over a defendant: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; and (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Purposeful Availment

Constitutional Law > ... > Fundamental Rights > Procedural Due Process > Scope of Protection

*HN5* Although originally applied in torts cases, the "effects test" promulgated in Calder v. Jones has been applied in cases involving "statutory, civil rights torts."

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Purposeful Availment

Constitutional Law > ... > Fundamental Rights > Procedural Due Process > Scope of Protection

*HN6* Because a plaintiff's race discrimination claim and wage claims are more similar to tort claims than contract claims, a court analyzes the question of purposeful availment using the tort standard.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Purposeful Availment

Constitutional Law > ... > Fundamental Rights > Procedural Due Process > Scope of Protection

*HN7* Allegations of *42 U.S.C.S. §§ 1981* and *1985* violations are properly understood as "torts" for the purpose of personal jurisdiction analysis.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Long Arm Jurisdiction

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Purposeful Availment

2008 U.S. Dist. LEXIS 53915, *53915

Constitutional Law > ... > Fundamental Rights > Procedural Due Process > Scope of Protection

**HN8** A *42 U.S.C.S. § 1983* or other federal statutory violation constitutes a tort for purposes of a state's long-arm statute.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Purposeful Availment

Constitutional Law > ... > Fundamental Rights > Procedural Due Process > Scope of Protection

**HN9** In order to make out the third prong of the Imo Industries test, a plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum and point to specific activity indicating that the defendant expressly aimed his tortious conduct at the forum.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Purposeful Availment

Constitutional Law > ... > Fundamental Rights > Procedural Due Process > Scope of Protection

**HN10** A court cannot automatically infer that a defendant expressly aimed its tortious conduct at the forum from the fact that the defendant knew that the plaintiff resided in the forum. While knowledge that the plaintiff is located in the forum is necessary to the application of Calder v. Jones, it alone is insufficient to satisfy the targeting prong of the effects test. Otherwise, jurisdiction in intentional tort cases would always be appropriate in the plaintiff's home state since the plaintiff would always feel the impact of the tort there.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Purposeful Availment

Constitutional Law > ... > Fundamental Rights > Procedural Due Process > Scope of Protection

**HN11** Placing a telephone call into the forum might be evidence of an act directed at the forum, but it is the substance of the conversation that counts. A few calls or letters into the forum may be of only marginal import if the dispute is focused outside the forum.

**Counsel:** [*1] For ROSITA JAIPAUL, Plaintiff: SCOTT B. GOLDSHAW, LEAD ATTORNEY, KATIE R. EYER, SALMANSON GOLDSHAW P.C., PHILADELPHIA, PA.

For PLIANT CORPORATION, ANDREW MCLEAN, Defendants: JOHN B. THORNTON, WILLIAM J. RYAN, LEAD ATTORNEYS, SCANDAGLIA & RYAN, CHICAGO, IL; JOHN E. RILEY, WILLIAM J. MURRAY, JR., VAIRA AND RILEY, P.C., PHILADELPHIA, PA.

**Judges:** BRUCE W. KAUFFMAN, J.

**Opinion by:** BRUCE W. KAUFFMAN

## Opinion

### MEMORANDUM AND ORDER

**Kauffman, J.**

Plaintiff Rosita Jaipaul ("Plaintiff") brings this action against Pliant Corporation ("Pliant") and Andrew McLean ("McLean") alleging violations of Title VII of the Civil Rights Act of 1964, *42 U.S.C. §§ 2000e et seq.* ("Title VII") (Count One); the Pennsylvania Human Relations Act, *43 Pa. Cons. Stat. §§ 951, et seq.* ("PHRA") (Count Two); *42 U.S.C. § 1981* ("*Section 1981*") (Count Three); and the Pennsylvania Wage and Payment Collection Law, *43 Pa. Cons. Stat. §§ 260.1, et seq.* ("WPCL") (Count Four). [1] Now before the Court is Defendant McLean's Motion to Dismiss for Lack of Personal Jurisdiction (the "Motion"). For the reasons that follow the Motion will be granted.

### I. BACKGROUND

Accepting the allegations in [*2] the Complaint as true and construing all factual disputes in Plaintiff's favor, the facts pertinent to this motion are as follows: Pliant is a corporation headquartered in Schaumburg, Illinois. Compl. P 5. Plaintiff was hired by Pliant as a National Accounts Manager in 1996. Id. P 17. She was promoted several times during her employment, and in May 2005, she obtained the position of Senior Vice President of Sales for Marquee Accounts. See id. P 18. Throughout her employment, Plaintiff worked from her home office in Pennsylvania. See Declaration of Rosita Jaipaul ("Jaipaul Dec.") at P 5, attached to Plaintiff's Brief in Opposition to the Motion ("Opposition").

As Senior Vice President of Sales for Marquee Accounts, Plaintiff initially reported directly to the Chief Executive Officer, Harold Bevis ("Bevis"). Compl. P 19. However, in February 2006, Pliant hired McLean, a resident of Illinois, as Senior Vice President of Sales, Marketing, and Customer Service. Id. PP 7, 25.

---

[1] Count One names Pliant only. Counts Two through Four name both Pliant and McLean.

2008 U.S. Dist. LEXIS 53915, *2

Thereafter, Plaintiff and several other members of senior management in the Sales, Marketing, and Customer Service Departments reported directly to McLean. Id. P 25.

In February 2006, Plaintiff and McLean's shared administrative [*3] assistant in Illinois arranged an initial meeting to discuss Plaintiff's 2006 annual business plan for the Marquee Accounts Sales department. Id. P 26; Declaration of Andrew McLean ("McLean Dec.") at P 5, attached to Motion at Exh. A. The two met on February 27, 2006 at Pliant's headquarters in Schaumburg, Illinois. See McLean Dec. P 6. Plaintiff alleges that McLean informed her that her position was being eliminated and that if she wanted to stay with the company, she would have to accept a lower-ranking, lower-paying job. Compl. P 27. When she asked for more information regarding the new position, McLean referred her to the Vice President of Human Resources, Trisha Feely ("Feely"). Id. Plaintiff and McLean did not discuss her annual business plan at the February 27 meeting. Id. P 29.

On February 28, 2006, Plaintiff again met with McLean at Pliant's Illinois headquarters at his request, and the two briefly discussed her annual business plan before the meeting turned into a heated discussion about her proposed new position. Id. PP 30-32; McLean Dec. at P 10. Plaintiff suggested tabling the discussion, and met with Feely later that day to obtain more information regarding the new position. [*4] Compl. PP 32-33. Feely was unable to provide details regarding the new position, but told Plaintiff that if she was not interested, she could look into the availability of a severance package. Id. P 34.

On March 2, 2006, Plaintiff contacted Feely to find if McLean's real preference was to terminate her employment, and the next day, Feely called her to let her know that he did wish to terminate her. Id. P 36. Plaintiff attempted to reach McLean by phone on several occasions, but her calls were not returned. Id. P 39. During March 2006, she and Pliant attempted to negotiate a severance package, but on March 22, 2006, Pliant ceased negotiating with her and informed her that she was terminated, effective immediately, with no severance pay. Id. PP 40-41. She was told she was terminated because she had been making disparaging remarks against McLean and had demonstrated her unwillingness to assist in effectuating a smooth transition following her departure. Id. P 42. On March 24, 2006, Pliant announced that a white male, Jim Gallagher, was going to be the new Vice President of Sales for Marquee Accounts, filling Plaintiff's former position. Id. P 45. Plaintiff did not receive severance payments [*5] or a final bonus award under the company's Management Incentive Plan. Id. PP 50-51.

## II. LEGAL STANDARD

**HN1** When a defendant brings a motion to dismiss pursuant to *Rule 12(b)(2)*, the plaintiff "bears the burden of establishing the court's jurisdiction." *Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004)*. To meet that burden, the plaintiff "need only establish a prima facie case of personal jurisdiction and … is entitled to have [her] allegations taken as true and all factual disputes drawn in [her] favor." Id. However, "to defeat a defendant's 12(b)(2) motion where the defendant has produced an affidavit or other competent evidence that asserts facts contrary to the jurisdictional allegations of the complaint, the burden is on the plaintiff to make a prima facie showing through sworn affidavits or other competent evidence that the jurisdictional facts exist." *Corr. Med. Care, Inc. v. Gray, 2008 U.S. Dist. LEXIS 6596, 2008 WL 248977, at *5 (E.D. Pa. Jan. 30, 2008)*; see also *Stevens v. Meaut, 264 F. Supp. 2d 226, 229 (E.D. Pa. 2003)* ("In deciding a motion to dismiss for lack of personal jurisdiction pursuant to *Fed. R. Civ. P. 12(b)(2)*, the allegations of the complaint are taken as true. However, once a [*6] jurisdictional defense is raised, the plaintiff bears the burden of proving, through affidavits, or competent evidence, sufficient contacts with the forum state to establish personal jurisdiction.") (citations omitted).

**HN2** A federal district court sitting in diversity may exercise jurisdiction over a foreign defendant to the extent allowed by the law of the state in which the district court is located. See *Fed. R. Civ. P. 4(e)*. Under state law, consideration of personal jurisdiction involves two steps: (1) the court must determine that exercising jurisdiction over the defendant is consistent with the relevant state long-arm statute; and (2) the court must then consider whether exercising jurisdiction would be consistent with the requirements of due process. *IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998)*. The Pennsylvania long-arm statute allows courts to exercise personal jurisdiction to the fullest extent allowed by the Constitution. See *42 Pa. Cons. Stat. § 5322(b)*. Accordingly, the Court's analysis focuses on federal due process requirements. *Applied Tech. Int'l, Ltd. v. Goldstein, 2004 U.S. Dist. LEXIS 21219, 2004 WL 2360388, at *2 (E.D. Pa. Oct. 20, 2004)*.

**HN3** Courts have interpreted the *Due Process Clause*

[*7] as requiring "(1) that the 'defendant have constitutionally sufficient minimum contacts with the forum . . . and (2) that subjecting the defendant to the court's jurisdiction comports with traditional notions of fair play and substantial justice.'" *Toys "R" Us, Inc. v. Step Two, 318 F.3d 446, 451 (3d Cir. 2003)* (quoting *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985))*. Minimum contacts exist when there is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.* (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., 480 U.S. 102, 109, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987))*. A defendant's contacts with the forum state reach the minimum level in one of two ways. When the contacts are "continuous and systematic," the court may exercise "general jurisdiction" over the defendant even if the contacts are unrelated to the plaintiff's cause of action. See *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co., 75 F.3d 147, 151 n.3 (3d Cir. 1996)*. In contrast, "specific jurisdiction" exists "only if the plaintiff's cause of action is related to or arises out of the defendant's [*8] contacts with the forum," *Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368 (3d Cir. 2002)*, such that the defendant "should reasonably anticipate being haled into court" in that forum. *World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)*. "It is axiomatic that 'jurisdiction over . . . [individual] defendants does not exist simply because they are agents or employees of organizations which presumably are amenable to jurisdiction in' a particular forum." *Moneygram Payment Sys., Inc. v. Consorcio Oriental, S.A., 65 Fed. Appx. 844, 850 (3d Cir. 2003)* (quoting *Nicholas v. Saul Stone & Co., 224 F.3d 179, 184 (3d Cir. 2000))*. "Rather, '[e]ach defendant's contacts with the forum state must be assessed individually.'" Id. (citation omitted). [2]

## III. ANALYSIS

Plaintiff does not contend that McLean's contacts with Pennsylvania [*9] are "continuous and systematic" such that a Pennsylvania court may exercise general jurisdiction over him. Rather, she contends that personal jurisdiction over McLean is proper based upon his Pennsylvania contacts *with her* and his purported intentional discrimination against her, the effects of which she allegedly felt in Pennsylvania. Defendant argues that all of his dealings with Plaintiff were centered in Illinois and that all of his conduct and activities relevant to this case were aimed toward Illinois.

*HN4* "In an intentional tort case, in order to determine if personal jurisdiction exists, the plaintiff must allege facts sufficient to meet the 'effects test' established by the Supreme Court in Calder v. Jones . . . for determining personal jurisdiction over non-resident defendants who allegedly commit torts outside the forum." *Stevens, 264 F. Supp. 2d at 231* (citing *Calder, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804*). [3] The Third Circuit has interpreted the Calder effects test to require a plaintiff to show the following in order to establish personal jurisdiction over a defendant:

> 1) The defendant committed an intentional tort;
>
> 2) The plaintiff felt the brunt of the harm in the forum such that the forum can be [*10] said to be the focal point of the harm suffered by the plaintiff as a result of that tort; and
>
> 3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

---

[2] See also *Calder v. Jones, 465 U.S. 783, 790, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)* ("Petitioners are correct that their contacts with California are not judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually." (citation omitted)).

[3] *HN5* Although originally applied in torts cases, the "effects test" promulgated in Calder has been applied in cases involving "statutory, civil rights tort[s]." *Wright v. Xerox Corp., 882 F. Supp. 399, 406 (D.N.J. 1995)* [*11] (applying the "effects test" in a case involving alleged violations of New Jersey's Law Against Discrimination ("NJLAD")); see also *El-Hakem v. BJY Inc., 2001 U.S. Dist. LEXIS 12613, 2001 WL 34043760, at \*3 & n.1 (D. Or. Aug. 15, 2001)* (*HN6* "Plaintiff's race discrimination claim and wage claims are more similar to tort claims than contract claims. The Court, therefore, analyzes the question of purposeful availment using the tort standard." (applying the Calder effects test) (citation omitted)); c.f. *Scott v. NASCAR, 2008 U.S. Dist. LEXIS 5039, 2008 WL 217049 (S.D.N.Y. Jan. 17, 2008)* (*HN7* "Allegations of *§ 1981* and *§ 1985* violations are properly understood as 'torts' for the purpose of personal jurisdiction analysis."); *Barclay v. Hughes, 462 F. Supp. 2d 314, 317 (D. Conn. 2006)* ("[T]he Court has found other cases from within this Circuit where it is assumed, without discussion, that *HN8* a *§ 1983* or other federal statutory violation constitutes a tort for purposes of a state's long-arm statute." (citations omitted)).

*Imo Indus., 155 F.3d at 265*. McLean's alleged discriminatory conduct, if proven, would satisfy the first factor. Moreover, since Plaintiff worked in Pennsylvania, the brunt of the harm she suffered from the alleged workplace discrimination was felt there, thus satisfying the second factor. Cf. *Remick v. Manfredy, 238 F.3d 248, 258-59 (3d Cir. 2001)* ("[B]ecause [the plaintiff's] professional activities are centered in Pennsylvania and the allegedly defamatory letters question [the plaintiff's] professional ability, [the plaintiff] may reasonably contend that he suffered the burnt of harm in Pennsylvania." (citation omitted)). Therefore, the Court's analysis turns on the third factor -- whether McLean "expressly aimed" his conduct toward Pennsylvania.

**HN9** "In order to make out the third prong of [the Imo Industries] test, the plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity [*12] indicating that the defendant expressly aimed [his] tortious conduct at the forum." *Id. at 266*. McLean does not dispute that he knew Plaintiff worked out of her home office in Pennsylvania. See Defendant's Memorandum of Law in Support of his *Rule 12(b)(2)* Motion to Dismiss Complaint for Lack of Personal Jurisdiction ("Def's Mem.") at 2. However, he contends that he did not "expressly aim" his activities toward Pennsylvania -- he worked in Illinois, supervised Plaintiff from Illinois, had his only meetings with her in Illinois, allegedly discriminated against her from Illinois, and allegedly terminated her employment from Illinois. See id. at 4; McLean Dec. at PP 6, 8, 10, 11, 13, 17. Further, he contends that he never initiated any calls to Plaintiff in Pennsylvania, and denies that he made any calls to her home office in Pennsylvania. See Def's Mem. at 4 (citing McLean Dec. at P 7). Therefore, he argues, any phone calls he had with Plaintiff would not establish that he "aimed" his actions towards Pennsylvania. Id. at 4-5.

The Court agrees that Plaintiff has failed to establish that McLean "expressly aimed" his activities at Pennsylvania. Plaintiff cites Wright v. Xerox Corporation [*13] for the proposition that "[d]iscrimination by an out-of-state employer against an employee in this state is an act directed at this state." Surreply at 2 (citing *Wright, 882 F. Supp. at 406*). However, the *Wright* case was decided before the Third Circuit explicitly prescribed the three elements of the effects test in Imo Industries. Moreover, "[t]he fact that the Plaintiff happens to live in [Pennsylvania], and has the base of her operations there, is accidental for jurisdictional purposes. **HN10** A court cannot automatically infer that a defendant expressly aimed its tortious conduct at the forum from the fact that the defendant knew that the plaintiff resided in the forum." *Walburn v. Rovema Packaging Machs., L.P., 2008 U.S. Dist. LEXIS 25369, 2008 WL 852443, at *7 (D.N.J. Mar. 28, 2008)* (applying the Imo Industries test); see also *Imo Indus., 155 F.3d at 266* ("While knowledge that the plaintiff is located in the forum is necessary to the application of Calder … it alone is insufficient to satisfy the targeting prong of the effects test."). Otherwise, "jurisdiction in intentional tort cases would always be appropriate in the plaintiff's home state since the plaintiff would always feel the impact of the tort there." *Walburn, 2008 U.S. Dist. LEXIS 25369, 2008 WL 852443, at *7*. [*14] Thus, the mere fact that McLean knew that Plaintiff lived in Pennsylvania when he allegedly discriminated against her is not enough to establish that he "aimed" his conduct at Pennsylvania.

Plaintiff also cites phone calls and emails with McLean while she was present in her Pennsylvania office to establish that his alleged actions were "expressly aimed" at Pennsylvania. However, Plaintiff does not assert that any alleged discriminatory conduct took place during those calls and emails. See Jaipaul Dec. P 15. Even the Wright court acknowledged that **HN11** "[p]lacing a telephone call into the forum might be evidence of an act directed at the forum, but it is the substance of the conversation that counts." *Wright, 882 F. Supp. at 407*; see also *Imo Indus., 155 F.3d at 267-68* ("[A] few calls or letters into the forum may be of only marginal import if the dispute is focused outside the forum."). Without evidence that the substance of telephone conversations and emails between Plaintiff and McLean were discriminatory, these communications do not establish that McLean "expressly aimed" discriminatory conduct at the forum state. Accordingly, the Court will not exercise jurisdiction over McLean, and [*15] the Motion will be granted.

## IV. CONCLUSION

For the above reasons, Defendant Andrew McLean's Motion will be granted. An appropriate Order follows.

## ORDER

**AND NOW,** this 14th day of July, 2008, upon consideration of Defendant Andrew McLean's Motion to Dismiss (docket no. 12), Plaintiff Rosita Jaipaul's Response (docket no. 14), Defendant McLean's Reply (docket no. 15), Plaintiff Jaipaul's Surreply (docket no. 16), and Defendant McLean's Response to the Surreply (docket no. 17), and for the reasons stated in the

2008 U.S. Dist. LEXIS 53915, *15

accompanying Memorandum, it is **ORDERED** that the Motion is **GRANTED.** Accordingly, Defendant Andrew McLean is **DISMISSED** as a party to this action.

**BY THE COURT:**

**/s/ Bruce W. Kauffman**

**BRUCE W. KAUFFMAN, J.**

**End of Document**