

**User Name:** Rebecca Wolfe
**Date and Time:** Dec 15, 2016 12:02
**Job Number:** 40894251

## Document (1)

1. Tann v. United States Steel Corp., 2015 U.S. Dist. LEXIS 73828
    **Client/Matter:** -None-
    **Search Terms:** 2015 U.S. Dist. LEXIS 73828
    **Search Type:** Natural Language

| About LexisNexis | Privacy Policy | Terms & Conditions | Copyright © 2016 LexisNexis
Rebecca Wolfe

Cited
As of: December 15, 2016 12:02 PM EST

# *Tann v. United States Steel Corp.*

United States District Court for the Western District of Pennsylvania

June 8, 2015, Filed

Civil Action No. 15-3

**Reporter**
2015 U.S. Dist. LEXIS 73828 *; 2015 WL 3609913

JAMON TANN, Plaintiff, vs UNITED STATES STEEL CORPORATION, et al., Defendants.

## Core Terms

personal jurisdiction, individuals, contacts, alleges, discriminatory, retaliation, resident, minimum contact, activities, general jurisdiction, non-resident, employees, Customer, domicile, courts, phone, individual defendant, substantial justice, headquarters, continuous, systematic, contends, training, Sales

**Counsel:** [*1] For JAMON TANN, Plaintiff: Alexander H. Lindsay , Jr., LEAD ATTORNEY, Lindsay, Jackson & Martin, Butler, PA; James K. Paulick, LEAD ATTORNEY, Law Office of James K. Paulick, Pittsburgh, PA; Lisa M. Henry, LEAD ATTORNEY, The Lindsay Law Firm, Butler, Pa.

For UNITED STATES STEEL CORPORATION, DEBORAH GRABE, KATHLEEN SPRAY, TIFFANY DEMOS, MATTHEW PENNEY, Defendants: Rodney M. Torbic, United States Steel Corporation, Law Department, Pittsburgh, PA.

**Judges:** ROBERT C. MITCHELL, United States Magistrate Judge.

**Opinion by:** ROBERT C. MITCHELL

## Opinion

### MEMORANDUM AND ORDER

Plaintiff, Jamon Tann, brings this action against Defendants, his former employer, United States Steel Corporation ("U.S. Steel") and four U.S. Steel managers (Deborah Grabe, Kathleen Spray, Tiffany Demos and Matthew Penney), alleging claims under Title VII of the Civil Rights Act of 1964, *42 U.S.C. §§ 2000e to 2000e-17* (Title VII), and the Pennsylvania Human Relations Act, *43 P.S. §§ 951-63* (PHRA). Plaintiff asserts that he was subjected to acts of racial and religious discrimination, a hostile work environment and incidents of retaliation, both at U.S. Steel's headquarters in Pittsburgh, Pennsylvania and later at U.S. Steel's sales office in Detroit, Michigan, ultimately culminating in his termination [*2] from employment on March 13, 2013. Presently pending before the Court is a motion to dismiss, brought by Demos and

Penney, who contend that personal jurisdiction cannot be asserted over them because they are residents of the state of Michigan.[1] For the reasons that follow, the motion will be denied.

### Facts

Plaintiff began working as a Management Associate ("MA") in the Customer Service/Sales Department at U.S. Steel's Headquarters in Pittsburgh, Pennsylvania, on May 9, 2011. (Compl. ¶¶ 14, 19.)[2] Of the incoming class of MAs, he was the only Asiatic, black, Muslim man of Asian, African, and Middle Eastern descent. (Id. ¶ 21.)

During his employment in Pittsburgh, he allegedly did not receive the same amount of responsibility as his white, non-Muslim counterparts, and was not able to

---

[1] In addition, all four individual defendants have moved to dismiss the Title VII claims asserted against them on the ground that individual liability does not exist under this statute, a point Plaintiff has conceded in his response (ECF No. 24 at 11). Therefore, no further discussion of this issue is required and the motion will be granted in this respect.

[2] ECF No. 1. Plaintiff's Complaint is very lengthy and detailed and Defendants have summarized its contents and cited only to those facts pertinent to their motion. Plaintiff accepts the summary with three exceptions, and [*3] the Court will do the same.

2:16-cv-03686-DCN    Date Filed 12/15/16    Entry Number 22-8    Page 3 of 10

Page 2 of 9
2015 U.S. Dist. LEXIS 73828, *3

deal directly with U.S. Steel's customers as quickly as those counterparts. (Id. ¶¶ 22-33.) After requesting more responsibilities from his supervisor in September of 2011, he was assigned a "trial account." (Id. ¶¶ 29, 33-34.) Plaintiff performed well on his "trial account" and received an assignment over three accounts in the Sheet Converter group by December of 2011. (Id. ¶ 34.) Soon thereafter, he was promoted to the next managerial level in the Customer Service/Sales Department as Account Representative Level 1. (Id. ¶ 45.) Plaintiff alleges that Department Manager Tony DeVito and another manager made discriminatory comments to him about Muslims after his promotion. (Id. ¶¶ 7, 51, 54.)

On August 23, 2012, Deborah Grabe, the General Manager of Customer Service, requested that Plaintiff relocate to Troy, Michigan, to manage automotive accounts at the U.S. Steel's Detroit sales office. (Id. ¶ 55.) Plaintiff was hesitant about moving from Pittsburgh, but agreed to the transfer after allegedly being [*4] told that the relocation would only last 18 to 24 months. (Id. ¶¶ 56-60.) At a going-away party in Plaintiff's honor, Grabe allegedly made racist comments to him about his family attending the party, and was critical of him wearing earrings at work. (Id. ¶¶ 67-76.)

Plaintiff alleges that, after relocating to Detroit on September 12, 2012, he found the office to be a poor place for minorities to work with U.S. Steel. (Id. ¶¶ 63-64.) His new supervisor, Andrew Palmer, allegedly refused to train him for his new position and gave him meaningless assignments. (Id. ¶¶ 77-92.) Approximately 3 weeks after Plaintiff's transfer to the Detroit office, Grabe visited from Pittsburgh and advised him to stop telling people that his assignment there was temporary. (Id. ¶¶ 93-99.)

Shortly thereafter, Tiffany Demos became Plaintiff's supervisor at the Detroit office and allegedly expressed her disappointment to him about his lack of training. (Id. ¶¶ 10, 104, 106.) Demos assigned Plaintiff to two Honda accounts based out of Canada in December of 2012. (Id. ¶ 109.) He was concerned by his new assignment and viewed the Canadian accounts as less prestigious than the American accounts. (Id. ¶¶ 109-11.) He [*5] alleges that, when he explained that he wanted to keep his American accounts, Demos became extremely angry and stated that account assignment was not optional. She then transferred the accounts to a Caucasian man named Colin Richter. (Id. ¶¶ 113-14.)

Plaintiff also alleges that working conditions for minorities worsened under Demos' supervision, and references a group meeting where she allegedly mimicked an Asian accent when discussing an Asian customer. (Id. ¶¶ 117-20.) After Plaintiff was reassigned from the American accounts, Danielle Cull, a close friend of Demos, began training him on the Canadian accounts. (Id. ¶ 124.) He alleges that Cull discriminated against him through inappropriate comments, substandard training, and unprofessional behavior. (Id. ¶¶ 125-31.)

Plaintiff reported the behavior to Matthew Penney, Director of the Detroit office, and requested to be transferred to a team away from Demos and Cull, or a transfer back to the Pittsburgh office. (Id. ¶¶ 12, 131-34.) Penney allegedly refused to address the reported behavior, and Plaintiff consequently contacted Kathleen Spray, Director of Human Resources in Pittsburgh, to raise his concerns. (Id. ¶¶ 135-49.)

Plaintiff contends [*6] that Demos, Penney, and Cull immediately began retaliating against him minutes after he sent an email to Spray documenting his report. Specifically, he states that Demos, Penney, Cull and a Caucasian employee named Nathan Campbell, an "Outside Sales Rep." whom he worked closely with, held a lengthy telephone conference during which Plaintiff could hear Penney yelling through the speaker phone, after which Penney approached his cubicle and attacked him over an insignificant matter (sending an email to a customer without sending it to Cull first) and refused to accept his apology. In addition, after this phone call, Campbell ceased to speak to Plaintiff (even though, as the outside sales rep., he needed to work closely with him) and two other upper-level managers with whom Plaintiff previously had a cordial relationship suddenly refused to interact with him at all. Then, within a week of Plaintiff's report to Human Resources, he was called into a meeting with Demos and Penney, and Penney threatened that "if anyone reports anything else, things will get ugly very quickly" and that he would "not tolerate any dissension" and that no one would be changing groups. Plaintiff understood from [*7] this meeting that if he reported any further instances of discrimination, he would be fired immediately. (Id. ¶¶ 148-74.)

On February 5, 2013, Spray met with Plaintiff and Penney in Detroit to inform Plaintiff that he would be suspended for one week due to his unfounded report against Demos concerning the comment she made against Asians. (Id. ¶¶ 175-81.) Spray also advised Plaintiff that he would be placed on a Performance

Improvement Plan ("PIP") when he returned from suspension. (Id. ¶ 182.)

Plaintiff contends that his suspension and placement on a PIP were in retaliation for his report of discrimination to Human Resources. (Id. ¶¶ 175, 183.) He also alleges that Demos and Cull sabotaged his attempts to follow the PIP to retaliate against him for his report to Human Resources. (Id. ¶¶ 194-203.)

Immediately upon his return to work on February 12, 2013, Plaintiff was pulled by Demos and Penney into a conference call with Spray in Pittsburgh; another Human Resources representative was also on the call. (Id. ¶¶ 185-86.) Over the phone, Spray presented Plaintiff with the PIP, and explained that the purpose of it was to improve his performance while his training continued in the "background." **[*8]** She stated that his duties during these 30 days would be limited to those outlined in the PIP. Plaintiff notes that the duties were significantly reduced from his typical workload, limited to compiling and submitting only three reports relating to the Canadian accounts and learning how to forecast production for his new accounts. (Id. ¶¶ 187-89.)

The PIP also contained allegations of poor performance by Plaintiff, which he asserts were untrue. Therefore, he refused to sign the PIP because he did not agree with its contents. He was also concerned that the people responsible for overseeing his improvement on the PIP were the very people who he had just reported to Human Resources for discriminatory conduct, namely Demos and her close friend, Cull. (Id. ¶¶191-93.)

On February 25, 2013, Demos met with Plaintiff to discuss his performance on the PIP. (Id. ¶ 204.) As the meeting concluded, Plaintiff heard Demos refer to him as a "little towel head." (Id. ¶ 205.) Plaintiff alleges that, a few weeks later, Demos forced him to work on a report that had a looming deadline after he returned from an illness. (Id. ¶¶ 207-22.) Finally, on March 13, 2013, Demos, Spray, and Penney met with Plaintiff **[*9]** to advise him that he was discharged. (Id. ¶ 237.)

Procedural History

Plaintiff filed this action on January 5, 2015. Federal question jurisdiction is invoked based upon the Title VII claims and supplemental jurisdiction is asserted over the related PHRA claims.

On March 6, 2015, Defendants U.S. Steel, Deborah Grabe and Kathleen Spray filed an answer to the Complaint (ECF No. 12). On that same date, Grabe, Spray, Demos and Penney also filed the pending motion, seeking dismissal of the Title VII claims alleged against all four of them and the dismissal of the PHRA claims alleged against Demos and Penney on the basis of lack of personal jurisdiction. After conducting limited discovery, on May 15, 2015, Plaintiff filed a response in opposition to the motion with respect to the personal jurisdiction issue (ECF No. 24), but not the individual liability claim under Title VII. Demos and Penney filed a reply brief on May 20, 2015 (ECF No. 27).

Individual Liability

The Court of Appeals has held that "Congress did not intend to hold individual employees liable under Title VII." *Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1078 (3d Cir. 1996)* (en banc). As noted above, Plaintiff concedes this point in his response and therefore the motion to dismiss the Title **[*10]** VII claims alleged against the individual defendants will be granted.

However, the PHRA states that it is an unlawful employment practice:

> For any person, employer, employment agency, labor organization or employe, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice.

*43 P.S. § 955(e)*. Thus, the individual supervisors could still be liable under the PHRA for aiding and abetting discrimination by U.S. Steel. See *Dici v. Pennsylvania, 91 F.3d 542, 553 (3d Cir. 1996)*. However, Penney and Demos contend that the Court cannot exercise personal jurisdiction over them.

Personal Jurisdiction

"Once it is challenged, the burden rests upon the plaintiff to establish personal jurisdiction. A nexus between the defendant, the forum and the litigation is the essential foundation of in personam jurisdiction." *General Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001)* (citation omitted). "The plaintiff must sustain its burden of proof through 'sworn affidavits or other competent evidence.'" *North Penn Gas v. Corning Natural Gas Corp., 897 F.2d 687, 689 (3d Cir. 1990)*

(quoting *Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 67 n.9 (3d Cir. 1984)*). The court initially must [*11] "accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff," who only needs to establish a "prima facie case," although the court can reconsider the issue "if it appears that the facts alleged to support jurisdiction are in dispute," and can conduct an evidentiary hearing to resolve any disputed facts. *Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 142, n.1 (3d Cir. 1992)*. See also *Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004)*.

There are two alternative ways to establish personal jurisdiction, general personal jurisdiction and specific personal jurisdiction. Plaintiff asserts that both general and specific personal jurisdiction can be exercised over Penney and Demos. These defendants deny that either form of personal jurisdiction is applicable.

General Personal Jurisdiction

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile...." *Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S.Ct. 2846, 2853-54, 180 L. Ed. 2d 796 (2011)*. Pennsylvania authorizes its courts to exercise general jurisdiction over individuals pursuant to *42 Pa. C.S. § 5301(a)(1)* by showing "[p]resence in this Commonwealth at the time when process is served," "[d]omicile in this Commonwealth at the time when process is served," or "[c]onsent, to the extent authorized by the consent." Both Penney and Demos have submitted declarations stating that they are not domiciled in Pennsylvania [*12] and they clearly have not consented to the exercise of personal jurisdiction over them. (Penney Decl. ¶¶ 5-7, 10; Demos Decl. ¶¶ 5-6, 9.)[3] Plaintiff has not argued that they were present in Pennsylvania at the time process was served. Therefore, there is no basis to assert general personal jurisdiction.

The parties spend a considerable amount of time discussing whether Penney and Demos had "continuous and systematic" contacts with Pennsylvania based on their salaries, taxes, ownership of property and other factors. Unfortunately, some courts also inappropriately utilize the "systematic and continuous" standard when individuals are involved. See, e.g., *Merical v. Valor Healthcare, Inc., 2013 U.S. Dist. LEXIS 137752, 2013 WL 5408986, at \*3 (W.D. Pa. Sept. 25, 2013)*; *Nelligan v. Zaio Corp., 2011 U.S. Dist. LEXIS 28628, 2011 WL 1085525, at \*2 n.4 (D.N.J. Mar. 21, 2011)*.

This discussion is not on point as the "systematic and continuous" contacts standard applies to corporations and other similar entities, not individuals. As another district court recently summarized:

> "General jurisdiction over an individual defendant is based on the individual's presence or domicile in Pennsylvania when served or on the individual's consent to jurisdiction." *Massachusetts Sch. of Law v. American Bar Ass'n, 855 F. Supp. 108, 111 (E.D. Pa. 1994)*.... ; see also *Comerota v. Vickers, 170 F. Supp. 2d 484, 487 (M.D. Pa. 2001)* ("To assert general jurisdiction in Pennsylvania over an individual, a plaintiff bears the burden of proving the individual's [*13] presence or domicile in the Commonwealth at the time of service, or the individual's consent to suit." (citing *42 Pa. Cons. Stat. § 5301(a)(1)*)); accord *Decker v. Dyson, 165 Fed. Appx. 951, 953 (3d Cir. 2006)* ("Under Pennsylvania law, general jurisdiction arises over an individual, non-corporate defendant if the person's domicile or presence was in the state at the time of service of process, or there was consent to suit.").

*Farber v. Tennant Truck Lines, Inc., 84 F. Supp. 3d 421, 2015 U.S. Dist. LEXIS 15059, 2015 WL 518254, at \*11-12 (E.D. Pa. Feb. 9, 2015)*. When the plaintiff tried to argue that an individual (McMeen) made many business trips to Pennsylvania and thus had "continuous and systematic" contacts with the state, the court held that:

> this argument misstates the law: the Pennsylvania personal jurisdiction statute provides that the "carrying on of a continuous and systematic part of its general business" basis of jurisdiction applies to corporations, partnerships, limited partnerships, partnership associations, professional associations, unincorporated associations, or similar entities—not individuals. *42 Pa. Cons. Stat. § 5301(a)(1)-(3)*. Furthermore, the facts that the Plaintiffs put forth regarding Mr. McMeen's business travel have no bearing in the face of decisions like Mass. School of Law, Comerota, or Decker, which unequivocally permit the exercise of general jurisdiction in Pennsylvania only over a nonresident individual [*14] who (1) lives here, (2) was served here, or (3) consented to suit here. The Plaintiffs have cited no authority to the contrary, merely concluding without support that "[j]urisdiction is

---

[3] ECF No. 10 Exs. 1, 2.

proper in Pennsylvania." Jurisdiction is *not* proper in Pennsylvania.

2015 U.S. Dist. LEXIS 15059, [WL] at *12.

Penney and Demos did not consent to the exercise of personal jurisdiction, they are not domiciled in Pennsylvania and there is no evidence that they were served in Pennsylvania. Therefore, general personal jurisdiction cannot be exercised over them.

Specific Personal Jurisdiction

Specific personal jurisdiction arises from a defendant's forum related activities and may be established even where the defendant has not physically appeared in the state but has "'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (citations omitted). It is defendant specific. Rush v. Savchuk, 444 U.S. 320, 332, 100 S. Ct. 571, 62 L. Ed. 2d 516 (1980). Thus, personal jurisdiction cannot be asserted over Penney and Demos merely based on the fact that they worked for U.S. Steel, a Pennsylvania-based company. See Nicholas v. Saul Stone & Co., LLC, 224 F.3d 179, 184 (3d Cir. 2000) ("jurisdiction over the defendants does not exist simply because they are agents or employees of organizations which presumably [*15] are amenable to jurisdiction in this Court.")

As summarized by the Court of Appeals:

> The inquiry as to whether specific jurisdiction exists has three parts. First, the defendant must have "purposefully directed [its] activities" at the forum. Second, the litigation must "arise out of or relate to" at least one of those activities. Helicopteros, 466 U.S. at 414, 104 S.Ct. 1868; Grimes v. Vitalink Communications Corp., 17 F.3d 1553, 1559 (3d Cir. 1994). And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'"

O'Connor v. Shady Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007) (quoting Burger King, 471 U.S. at 472, 476) (footnote omitted).

The Federal Rules of Civil Procedure authorize a district court to assert personal jurisdiction over a non-resident to the extent permissible under the law of the state where the district court sits. Fed.R.Civ.P. 4(k)(1)(A). O'Connor, 496 F.3d at 316. Pursuant to Pennsylvania's long arm statute, 42 Pa. C.S. § 5322(a), a plaintiff can establish specific personal jurisdiction by showing that a defendant has engaged in forum related activities, including "[c]ausing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth," § 5322(a)(4).

Pennsylvania also authorizes exercise of the jurisdiction of its courts over non-residents "where the contact is sufficient under the Constitution of the United States," 42 Pa. C.S. § 5308, and "to the fullest [*16] extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. C.S. § 5322(b). See Kubik v. Letteri, 532 Pa. 10, 614 A.2d 1110, 1114 (Pa. 1992) (following Burger King analysis).

Effects Test

The Court of Appeals has indicated that, in an intentional tort case:

> we must consider whether the application of Calder v. Jones can change the outcome. Generally speaking, under Calder an intentional tort directed at the plaintiff and having sufficient impact upon it in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the "minimum contacts" prong of the Due Process test is satisfied.

IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259-60 (3d Cir. 1998) (citing Calder v. Jones, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)). See also Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 n.2 (3d Cir. 2004) (concluding that, because the traditional specific personal jurisdiction analysis applied, the court did not need to reach the issue of whether the effects test applied).

As the Court of Appeals has explained:

> This Court has determined that Calder allows a plaintiff to demonstrate personal jurisdiction if he or she shows:
>
>> (1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the

2015 U.S. Dist. LEXIS 73828, *16

plaintiff [*17] as a result of that tort; (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*IMO Indus. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998) (footnote omitted). If a plaintiff satisfies these three elements, known collectively as the "effects test," the plaintiff can demonstrate a court's jurisdiction over a defendant even when the defendant's "contacts with the forum alone ... are far too small to comport with the requirements of due process" under our traditional analysis. *Id. at 259*.

*Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007). In Marten, the court held that a Pennsylvania graduate student who alleged acts of defamation and *First Amendment* retaliation when he was accused of plagiarism and expelled from an internet-based educational program failed to demonstrate that the defendants' conduct was "expressly aimed" at Pennsylvania because no defamatory statements or materials were sent into Pennsylvania.

Penney and Demos contend that all of the alleged actions they took against Plaintiff occurred in the Detroit office. (Penney Decl. ¶ 10; Demos Decl. ¶ 9.) Plaintiff responds that these defendants had specific interactions with Pennsylvania and with the other two defendants in Pennsylvania during which acts of discrimination [*18] and/or retaliation occurred. Specifically, he cites the February 12, 2013 phone call in which Penney and Demos (who, along with Plaintiff, were in the Detroit office) acted with Spray (who was in Pittsburgh) to place him on a PIP, which he contends was done in retaliation for his having complained of acts of discrimination. Second, he notes that both Grabe and Spray participated in the decision to place him on suspension after Demos, Cull and Campbell denied that Demos had made a racist comment at a meeting on January 22, 2013. This means, he observes, that Demos must have contacted Spray in Pittsburgh. Finally, he contends that, moments after he sent an email to the Human Resources department in Pittsburgh to complain about discrimination, Demos and Penney engaged in a call with individuals in Pittsburgh in which voices were raised, following which Plaintiff was subjected to hostility over a trivial matter that, he believes, was really a response to his having complained about discrimination.

Plaintiff has submitted a declaration in which he asserts that:

I observed Defendants Penney and Demos contact U.S. Steel's Pittsburgh headquarters repeatedly after I reported their discriminatory [*19] behavior and hostile work environment to Human Resources.

a. I believe I was the topic of their discussions with headquarters.

b. The retaliatory PIP was only put in place after Penney and Demos contacted Pittsburgh HQ.

c. Demos and Penney held a conference call with U.S. Steel's Human Resource department in Pittsburgh, during which I was placed on the retaliatory PIP.

(Tann Decl. ¶ 10.)[4]

The Court finds that Defendants' citations are unpersuasive and distinguishable from the disputed facts in this case. First, they rely upon *Violanti v. Emery Worldwide A-CF Co.*, 847 F. Supp. 1251, 1256 (M.D. Pa. 1994), to support the proposition that "communications made by non-resident supervisors in their corporate capacity do not demonstrate that they purposely directed their activities at the forum state." (ECF No. 27 at 3.) As another court has observed:

[In Violanti,] the decision turned in part on an absence of allegations as to defendant's contacts with the forum. The opinion also suggests without elaboration, however, that actions taken in the capacity of an agent or employee will not support personal jurisdiction. Id. To the extent that this case holds that participation in discriminatory conduct by corporate agents will not give rise to jurisdictional [*20] contacts over them as individuals, this Court declines to follow it. See *Bishop v. Okidata, Inc.*, 864 F. Supp. 416, 422-24 (D.N.J. 1994) (criticizing Violanti).

*Wright v. Xerox Corp.*, 882 F. Supp. 399, 404 n.1 (D.N.J. 1995). As in Wright, Plaintiff contends that Penney and Demos had contacts with the forum, thereby distinguishing *Violanti*. See also *Jaipaul v. Pliant Corp.*, 2008 U.S. Dist. LEXIS 53915, 2008 WL 2746291, at *5 (E.D. Pa. July 14, 2008) (court could not exercise personal jurisdiction over a non-resident supervisor because the plaintiff did not allege that any discriminatory acts occurred during the phone calls and emails to Pennsylvania). In this case, Plaintiff has cited phone calls into Pennsylvania during which allegedly

---

[4] ECF No. 24 Ex. 1.

2:16-cv-03686-DCN     Date Filed 12/15/16     Entry Number 22-8     Page 8 of 10

Page 7 of 9
2015 U.S. Dist. LEXIS 73828, *20

discriminatory acts against him (placing him on suspension and making him submit to a PIP in retaliation for complaining about acts of discrimination) occurred. And, as observed in Bishop, the distinction between actions taken in a "corporate capacity" and an "individual capacity" is borrowed from case law concerning whether individuals were acting "under color of state law" for purposes of *§ 1983* and has no applicability to the issue of liability of private individuals working for corporations.

The Court of Appeals has also observed that:

> The general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally [*21] liable therefor; but that an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such a tort, nor for the acts of other agents, officers or employees of the corporation in committing it, unless he specifically directed the particular act to be done, or participated, or cooperated therein.

*Zubik v. Zubik, 384 F.2d 267, 275 (3d Cir. 1967)* (quoting 3 Fletcher Cyc. Corp. § 1137 (pp. 782-83) (Perm. Ed. Rev. 1965). Not only has Plaintiff alleged that Demos and Penney took part in the commission of acts in the nature of a tort, but the PHRA explicitly allows for individual liability on the part of corporate officers who "aid or abet" discrimination. *43 P.S. § 955(e)*. To allow Plaintiff to assert such claims only to dismiss them on the ground that the acts were undertaken by the individual defendants in their "corporate capacity" would vitiate the statutory provision as well as the common-law recognition that corporate individuals may be held liable for their own torts. In addition, Defendants have not explained how their "official duties" included putting Plaintiff on a PIP, suspending him or terminating his employment for discriminatory reasons, which is what the [*22] Plaintiff alleges and must be accepted as true at this stage of the litigation.

It may be that Demos and Penney are invoking the "fiduciary shield doctrine," which some courts have cited to exclude jurisdictional contacts made by individuals in their official role as corporate officers. However, "[d]istrict court decisions in this jurisdiction show a split of authority on this question ... [and the] issue has not been decided by the Court of Appeals for the Third Circuit." *McMullen v. European Adoption Consultants, Inc., 129 F. Supp. 2d 805, 811 (W.D. Pa. 2001)*. Nor has the doctrine ever been approved by the Pennsylvania Supreme Court. *Hodges v. Greiff, 2001 U.S. Dist. LEXIS 25039, 2001 WL 34368774, at *3 (E.D. Pa. Nov. 19, 2001)*. The court went on to observe that: " If the doctrine were ever viable in Pennsylvania, however, it almost certainly is no longer in light of Calder v. Jones." Id. (footnotes and citations omitted).

As another court has explained:

> In Calder, the plaintiff, a California resident, sued two employees of the National Enquirer in a California court for a libelous article. It was not disputed that the National Enquirer had minimum contacts with California, but the employees, the article's author and the magazine's editor/president, argued that jurisdiction did not extend to them because they had never gone to California for the purposes of producing the article. [*23] The Court found that personal jurisdiction did extend over the employees on the basis that they were the "primary participants in an alleged wrongdoing intentionally directed at a California resident." *465 U.S. at 790*. In other words, the fact that they acted on behalf of a corporation did not insulate them from jurisdiction. Rather, the Court found that they could "reasonably anticipate being haled into court" in California to "answer for the truth of the statements made in their article." *Id. at 790*.

*Chadwick v. St. James Smokehouse, Inc., 2015 U.S. Dist. LEXIS 38340, 2015 WL 1399121, at *7 (D.N.J. Mar. 26, 2015)*.

Thus, under a minimum contacts analysis, Demos and Penney had contacts with a Pennsylvania resident and the state of Pennsylvania during which they are alleged to have committed acts of discrimination. This is more than sufficient to establish specific personal jurisdiction over them.

Fair Play and Substantial Justice

The Court of Appeals has stated that:

> The existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." See *Burger King, 471 U.S. at 477, 105 S.Ct. 2174*; see also *Pennzoil Prods. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 207 (3d Cir. 1998)* (noting that if minimum contacts

2015 U.S. Dist. LEXIS 73828, *23

are present, then jurisdiction will be unreasonable only in "rare cases"); *Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 483 (3d Cir. 1993)* ("The burden [*24] on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy.").

*O'Connor, 496 F.3d at 324*. In O'Connor, the court held that a Barbados hotel operator that had minimum contacts based on its solicitation of a Pennsylvania resident to visit its spa, where he was injured, did not meet the heavy burden of demonstrating that litigating the case in Pennsylvania would offend notions of fair play and substantial justice.

The Supreme Court has identified several factors that courts should consider when balancing jurisdictional reasonableness:

> courts in "appropriate case[s]" may evaluate "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies."

*Burger King, 471 U.S. at 477* (quoting *World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980))*.

Penney and Demos have not argued that they would be burdened by having to travel to Pennsylvania for trial, Plaintiff's interest in convenient relief and the judicial system's interest in obtaining efficient adjudication favor a finding [*25] of reasonableness. This interests are served by having the entire case disposed of in one forum. Finally as the court noted in Wright:

> It is the last factor listed that weighs most heavily in favor of a finding that jurisdiction here is reasonable. Few policies can be characterized as more fundamental than that embodied in NJLAD. It serves the interests of New Jersey and her sister states to require racial discrimination to be litigated in the forum where the harm is suffered. Every state has an interest in protecting its citizens from this grievous social wrong when perpetrated by the non-resident managers of large corporations.

*882 F. Supp. at 410*. Similarly, the PHRA serves a fundamental policy of protecting Pennsylvania residents from acts of employment discrimination. Thus, Demos and Penney have failed to demonstrate that litigating this case in Pennsylvania would offend notions of fair play and substantial justice.

Moreover, even if the elements of traditional specific personal jurisdiction were not met, the effects test would apply in this situation: Demos and Penney are alleged to have committed an intentional tort which Plaintiff (a Pennsylvania resident) felt the brunt of in Pennsylvania and they [*26] did so while or after communicating with Spray and Grabe in Pennsylvania.

Finally, Plaintiff notes that he initially filed a charge of discrimination with the EEOC's office in Michigan, but that he received a letter from the EEOC informing him that the investigation was being moved to Pittsburgh because U.S. Steel has its headquarters here and he was told that any lawsuit filed by the agency on his behalf would take place in Pittsburgh. (Tann Decl. ¶¶ 11-15.) Plaintiff argues that this shows that the placement of the case in this jurisdiction was not solely under his control; Demos and Penney argue that this background demonstrates that even Plaintiff thought the case should be in Michigan. Neither side cites any authority for its position.

The Court observes that there is no requirement that a charge be filed with the EEOC office located in the state in which the alleged discriminatory acts occurred. *Taylor v. Rodale, Inc., 2004 U.S. Dist. LEXIS 27019, 2004 WL 3199363, at *4 (E.D. Pa. Oct. 22, 2004)*. The court noted that the regulations specifically provide that a charge may be made at any EEOC office. *29 C.F.R. § 1601.8*. "An EEOC office can also transfer a charge of discrimination to another EEOC office for investigation." Id. (citation omitted). Thus, there is no jurisdictional import to Plaintiff's [*27] filing of the charge in Michigan or the EEOC's transfer of the matter to Pittsburgh.

An appropriate order follows.

ORDER

AND NOW, this 8th day of June, 2015, for the reasons cited above,

IT IS HEREBY ORDERED that the motion to dismiss filed by Defendants Kathleen Spray, Deborah Grabe, Matthew Penney and Tiffany Demos (ECF No. 10) is granted with respect to the dismissal of the Title VII claims against these four individual defendants and denied with respect to dismissal for lack of personal jurisdiction over Defendants Matthew Penney and Tiffany Demos.

/s/ Robert C. Mitchell

ROBERT C. MITCHELL

United States Magistrate Judge

**End of Document**